1   BRIAN R. STRANGE (SBN 103252)
    *lacounsel@earthlink.net*
2   GRETCHEN CARPENTER (SBN 180525)
    *gcarpenter@strangeandcarpenter.com*
3   STRANGE & CARPENTER
    12100 Wilshire Blvd., Suite 1900
4   Los Angeles, CA 90025
    Telephone:    310-207-5055
5   Fax:          310-826-3210

6   RANDALL S. ROTHSCHILD (SBN 101301)
    *randy.rothschild@verizon.net*
7   RANDALL S. ROTHSCHILD, A P.C.
    12100 Wilshire Blvd., Suite 800
8   Los Angeles, CA 90025
    Telephone:    310-806-9245
9   Fax:          310-988-2723

10  Attorneys for Plaintiffs Vivian Fiori and Roggie Trujillo

11              **UNITED STATES DISTRICT COURT**

12          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13                  **SAN JOSE DIVISION**

14  VIVIAN FIORI and ROGGIE TRUJILLO, on          **Case No. C09 01518 JW**
    behalf of themselves and all others similarly
15  situated,                                     **PLAINTIFFS' OPPOSITION TO DELL**
                                                  **DEFENDANTS' MOTION TO DISMISS**
16              Plaintiffs,
                                                  **CLASS ACTION**
17          vs.
                                                  Date:   September 21, 2009
18  DELL INC., a corporation; BANCTEC, INC.,      Time:   9:00 a.m.
    a corporation; QUALXSERV LLC, an entity;      Ctrm.: 8
19  DELL CATALOG SALES, L.P., an entity;
    DELL PRODUCTS, L.P., an entity; DELL          Before the Honorable James Ware
20  MARKETING L.P., an entity; DELL
    MARKETING L.P., LLC, an entity; DELL          Action Filed:   April 7, 2009
21  MARKETING G.P., LLC, an entity; DELL          Trial Date:     Not scheduled
    USA, L.P., an entity; and DOES 1 Through
22  10,

23              Defendants.

24

25

26

27

28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . iv

I.      INTRODUCTION . . . . . . . . . 1

II.     BACKGROUND . . . . . . . . . 2

        A.      The Attorney General and California Appellate Actions . . 2

        B.      The FAC Allegations . . . . . . . 3

        C.      The Other Suits Against Dell . . . . . . 5

III.    THE CHOICE OF LAW PROVISION DOES NOT APPLY . . 5

        A.      Statutory Claims Are Not Covered by the Provisions at Issue . 6

        B.      *Brazil* and *Dajani* Involved a Completely Different Choice of Law
                Provision . . . . . . . . 8

        C.      The Terms and Conditions Do Not Even Apply In Any Event . 9

                1.      There is No Choice of Law Provision in the Service
                        Contracts at Issue . . . . . . 9

                2.      The Terms Sent After the Sale Do Not Apply as a Matter
                        of Law . . . . . . . 10

                3.      The Terms and Conditions Lack Mutuality and are Illusory
                        in Any Event . . . . . . . 11

        D.      Dell's Selective Attempt to Enforce its Choice of Law Provision
                is Improper . . . . . . . . 11

IV.     THE PROVISION IS ALSO VOID AS AGAINST PUBLIC POLICY . 12

        A.      Dell Cannot Simply Exempt Itself From California's Regulatory
                Scheme . . . . . . . . 12

        B.      Dell Cannot Force a Waiver of Unwaivable Statutory Consumer
                Rights . . . . . . . . 14

        C.      Application of Texas Law Would Impair Statutorily Protected
                Rights . . . . . . . . 15

        D.      California's Interests are Greater Than Texas' Interests . . 17

        E.      *Brazil* and *Dajani* Are Inapposite . . . . . 18

V.      THE DISCOVERY RULE APPLIES TO ALL OF PLAINTIFFS' CLAIMS 18

VI.     PLAINTIFFS' CLAIMS ARE SUFFICIENTLY PLED UNDER RULE 9(b) 22

VII.    IN ANY CASE, LEAVE TO AMEND, NOT DISMISSAL, IS PROPER . 24

1

VIII.    CONCLUSION          .          .          .          .          .          .          .          .          25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C09 01518 JW – Plaintiffs' Opposition to Dell's Motion to Dismiss

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

*321 Studios v. Metropolitan Goldwyn Mayer Studios, Inc.,*
307 F. Supp. 2d 1085 (N.D. Cal. 2004) .................................................................... 24

4

5

*Adler v. Dell, Inc.,*
2008 WL 5351042 (E.D. Mich. 2008) ...................................................................... 5

6

*American Triticale, Inc. v. Nytco Services, Inc.,*
664 F.2d 1136 (9th Cir. 1981) .................................................................................. 23

7

8

*Andrews Farms v. Calcot, Ltd.,*
527 F. Supp. 2d 1239 (E.D. Cal. 2007) ................................................................... 23

9

*In re Apple & AT & TM Antitrust Litigation,*
596 F. Supp. 2d 1288 (N.D. Cal. 2008) .................................................................. 23

10

*Arsape S.A v. JDS Uniphase Corp.,*
11 2005 WL 2989296 (N.D. Cal. 2005) ........................................................................ 11

12

*Baghdasaarian v. Amazon.com, Inc.,*
— F.R.D. —, 2009 WL 2263581 (C.D. Cal. 2009) ......................................... 20, 22

13

*Benchmark Electronics, Inc. v. J.M. Huber Corp.,*
14 343 F.3d 719 (5th Cir. 2003) ............................................................................ 1, 6, 8

15

*Benson v. E. Merck,*
1995 WL 110570 (N.D. Cal. 1995) ........................................................................... 7

16

*Bly-Magee v. California,*
17 236 F.3d 1014 (9th Cir. 2001) ................................................................................. 24

18

*Brazil v. Dell Inc.,*
585 F. Supp. 2d 1158 (N.D. Cal. 2008) ................................................. 6, 8, 9, 11, 18

19

*Caton Caton v. Leach Corp.,*
20 896 F.2d 939 (5th Cir. 1990) ..................................................................................... 8

21

*Chamberlan v. Ford Motor Co.,*
369 F. Supp. 2d 1138 (N.D. Cal. 2005) .................................................................. 18

22

*Comb v. PayPal, Inc.,*
23 218 F. Supp. 2d 1165 (N.D. Cal. 2002) .................................................................. 11

24

*Dajani v. Dell Inc.,*
2009 WL 815352 (N.D. Cal. 2009) .......................................................... 6, 8, 9, 18

25

*Diamond Fruit Growers, Inc. v. Krack Corp.,*
26 794 F.2d 1440 (9th Cir. 1986) ................................................................................. 11

27

*Doe 1 v. AOL LLC,*
552 F.3d 1077 (9th Cir. 2009) .......................................................................... 15-18

28

*Falk v. General Motors Corp.*,
496 F. Supp. 2d 1088 (N.D. Cal. 2007) .......................................................... 1, 21, 23

*In re Gault South Bay Litigation*,
2008 WL 4065843 (N.D. Cal. 2008) .................................................................... 13, 14

*Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc.*,
285 F.3d 848 (9th Cir. 2002) .............................................................................. 20

*Karnes Karnes v. Fleming*,
2008 WL 4528223 (S.D. Tex. 2008) ....................................................................... 8

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......................................................................... 24

*McMillan v. Wells Fargo Bank*,
2009 WL 1035969 (N.D. Cal. 2009) .................................................................... 10

*Medical Instrument Development Laboratories v. Alcon Laboratories*,
2005 WL 1926673 (N.D. Cal. 2005) ................................................................... 1, 7

*Newport v. Dell Inc., et al.*,
2009 WL 1636248 (D. Ariz. 2009) ........................................... 2, 3, 5, 11, 19, 21-23

*Oestreicher v. Alienware Corp.*,
2009 WL 902341 (9th Cir. 2009) ......................................................................... 16

*Plascencia v. Lending 1st Mortgage*,
— F.R.D. —, 2009 WL 2569732 (N.D. Cal.) ....................................................... 16

*Plascencia v. Lending 1st Mortgage*,
583 F. Supp. 2d 1090 (N.D. Cal. 2008) ........................................................... 1, 19

*Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*,
971 F.2d 401 (9th Cir. 1992) ........................................................................ 1, 5-7

*Sweet v. Pfizer*,
232 F.R.D. 360 (C.D. Cal. 2005) .......................................................................... 6

*Textile Unlimited, Inc. v. A.BMY Co., Inc.*,
240 F.3d 781 (9th Cir. 2001) ............................................................................. 11

*U.S. ex rel. Englund v. Los Angeles County*,
2005 WL 2089216 (E.D. Cal. 2005) ..................................................................... 6

*Van Slyke v. Capital One Bank*,
503 F. Supp. 2d 1353 (N.D. Cal. 2007) .......................................................... 16-17

**STATE CASES**

*ABF Capital Corp. v. Grove Properties Co.*,
126 Cal. App. 4th 204 (2005) .............................................................................. 9

*America Online, Inc. v. Sup. Ct.*,
90 Cal. App. 4th 1 (2001) ........................................................................ 14, 15, 17

*AutoNation USA Corp. v. Leroy*,
105 S.W.3d 190 (Tex.App. 2003) ....................................................................... 17

*Brack v. Omni Loan Co., Ltd.*,
164 Cal. App. 4th 1312 (2008) .............................................. 1, 12-14, 17, 18

*Broberg v. Guardian Life Insurance Co. of America*,
171 Cal. App. 4th 912 (2009) ............................................................................ 20

*Buller v. Sutter Health*,
160 Cal. App. 4th 981 (2008) ............................................................................ 22

*Century 21 Real Estate Corp. v. Hometown Real Estate Co.*,
890 S.W.2d 118 (Tex.App. 1994) ....................................................................... 16

*Dell Inc. v. Sup. Ct.*,
159 Cal. App. 4th 911 (2008) ...................................................... 2-4, 13, 21, 23

*Discover Bank v. Sup. Ct.*,
36 Cal. 4th 148 (2005) ......................................................................................... 16

*Fidelity and Guaranty Life Insurance Co. v. Pina*,
165 S.W.3d 416 (Tex.App. 2005) ....................................................................... 15

*Greenberg Traurig of New York, P.C. v. Moody*,
161 S.W.3d 56 (Tex.App. 2004) ........................................................... 1, 14, 18

*Grinnell v. Charles Pfizer & Co.*,
274 Cal. App. 2d 424 (1969) ............................................................................. 24

*Henry Schein, Inc. v. Stromboe*,
102 S.W.3d 675 (Tex. 2002) ............................................................................... 16

*Klussman v. Cross Country Bank*,
134 Cal. App. 4th 1283 (2005) .......................................................................... 17

*Krieger v. Nick Alexander Imports, Inc.*,
234 Cal. App. 3d 205 (1991) ............................................................................. 16

*Mass. Mutual Life Insurance Co. v. Sup. Ct.*,
97 Cal. App. 4th 1282 (2002) ..................................................................... 19, 20

*Maxus Exploration Co. v. Moran Brothers, Inc.*,
817 S.W.2d 50 (Tex. 1991) ................................................................................. 18

*McKell v. Washington Mutual, Inc.*,
142 Cal. App. 4th 1457 (2006) ..................................................................... 21, 22

*Mirkin v. Wasserman*,
5 Cal. 4th 1082 (1993) ........................................................................................ 24

*Munson v. Del Taco, Inc.*,
46 Cal. 4th 661 (2009) ................................................................................................ 14

*Red Roof Inns, Inc. v. Murat Holdings, L.L.C.*,
223 S.W.3d 676 (Tex.App. 2007) ................................................................................ 8

*Roberts v. Salot*,
166 Cal. App. 2d 294 (1958) ...................................................................................... 24

*Rogers v. Dell Computer Corp.*,
138 P.3d 826 (Okla. 2005) ......................................................................................... 10

*Snapp & Associates Insurance Services, Inc. v. Malcolm Bruce Burlingame Robertson*,
96 Cal. App. 4th 884 (2002) ...................................................................................... 20

*Snow v. A.H. Robins Co.*,
165 Cal. App. 3d 120 (1985) ...................................................................................... 18

*Stier v. Reading & Bates Corp.*,
992 S.W.2d 423 (Tex. 1999) ........................................................................................ 8

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ................................................................................... 15, 16, 18

*Washington Mutual Bank, FA v. Sup. Ct.*,
24 Cal. 4th 906 (2001) .............................................................................................. 5, 7

*West Corp. v. Sup. Ct.*,
116 Cal. App. 4th 1167 (2004) ................................................................................... 17

## DOCKETED CASES

*Adler v. Dell, Inc., et al.*,
United States District Court for the Eastern District of Michigan, Case No. 08-cv-13170 ....... 5

*Newport v. Dell Inc., et al.*,
United States District Court for the District of Arizona, Case No. CIV-08-96-TUC-CKJ ....... 3

## FEDERAL STATUTE

Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ........................................................ 5

## STATE STATUTES

Cal. Bus. & Prof. Code § 17208 ........................................................................................... 16

Cal. Civil Code § 1751 ......................................................................................................... 14

Cal. Civil Code § 1780(b) ..................................................................................................... 16

Cal. Civil Code § 1790.1 ................................................................................................ 12, 14

Cal. Civil Code § 3513 ......................................................................................................... 14

Cal. Com. Code § 17.46(b)(23) ............................................................ 16

U.C.C. § 2206(1) ................................................................................ 10

U.C.C. § 2207 ........................................................................ 10, 11

Tex. Bus. & Com. Code § 17.565 ........................................................ 16

**OTHER**

Restatement (Second) of Conflict of Laws § 196 ................................... 17

Case No. C09 01518 JW – Plaintiffs' Opposition to Dell's Motion to Dismiss

1    **I.   <u>INTRODUCTION</u>**

2        The Dell Defendants' and Banctec's (collectively, "Dell") Motion to Dismiss ("Motion") is

3    mainly a rehash of previously rejected arguments.  For instance, Dell claims Texas law applies, but

4    it is well-established that Dell's choice of law provision only covers contract claims, not the non-

5    contractual statutory claims asserted here.[1]  Similarly, the case law is clear that a choice of law

6    provision can never be applied to avoid a state's regulatory and licensing scheme, as Dell attempts

7    to do here with the highly regulated onsite service contracts at issue.[2]  Further, it is equally well-

8    established that dismissal of claims on statute of limitations grounds is rarely proper at the pleading

9    stage when the delayed discovery rule is implicated.[3]  This is especially true here given the material

10   omissions, secret charges, and attempts to conceal that are present in this case.[4]

11       Most striking is what the Motion does not say.  Dell does not inform the Court that the two

12   Northern District cases it relies upon for its choice of law argument involved **<u>a completely different</u>**

13   **<u>choice of law provision than the one at issue here.</u>**[5]  Dell does not provide the Court with a copy

14   of the applicable service contract in issue, nor does it inform the Court that its separate and

15

16

---

17   [1] *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir.

18   1992)(non-contractual claims not covered); *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 WL 1926673, *3 (N.D. Cal. 2005)(UCL statutory and fraud claims not covered);

19   *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727-28 (5th Cir. 2003)(choice of law provision does not cover statutory or tort claims under Texas law).

20   [2] *Brack v. Omni Loan Co., Ltd.*, 164 Cal.App.4th 1312, 1328 (2008)(choice of law provision

21   rejected because it would interfere with California's regulatory scheme); *Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 73-74 (Tex.App. 2004)(refused to apply Texas law because

22   it would interfere with foreign state's regulatory scheme).  California's extensive regulatory scheme governing the service contracts in issue is detailed in the First Amended Complaint ("FAC"), ¶¶ 15,

23   57-60, 65-66, 73, 80, and in n. 22, *infra*.

24   [3] *Plascencia v. Lending 1st Mortgage*, 583 F.Supp.2d 1090, 1097 (N.D. Cal. 2008)(rarely

25   appropriate to grant a motion to dismiss when discovery rule is at issue; facts surrounding plaintiffs' discovery of non-disclosure claim "must be developed through discovery").

26   [4] *Falk v. General Motors Corp.*, 496 F.Supp.2d 1088, 1100 (N.D. Cal. 2007)(defendant's

27   claim in UCL/CLRA omission case that plaintiff should have known about undisclosed defect "fails at the pleading stage").

28   [5] Compare choice of law provision in n. 13, *infra*, to the provision in n. 16, *infra*.

---

independent service contract agreement does not even contain a choice of law provision.[6]  Dell also does not tell the Court that two courts have already examined and completely rejected its "one price, one sale" argument that Dell uses to justify its hidden charges and non-disclosures with respect to its first year onsite warranty repair service.  *See Dell Inc. v. Sup. Ct.*, 159 Cal.App.4th 911, 917-19, 930-31, 936 (2008)(service contract not part of sale of computer); *Newport v. Dell Inc., et al.*, 2009 WL 1636248, *2  (D. Ariz. 2009)(Dell's argument is "specious").

When one adds in the fact that 33 state attorneys general in this country banded together against Dell to stop it from engaging in its widespread consumer fraud practices,[7] the Motion's lack of merit is apparent.  Dell's Motion should be summarily denied.

## II.   BACKGROUND

### A.   The Attorney General and California Appellate Actions

Two matters are important as contextual background for this litigation.  One is the law enforcement action brought jointly by 33 states' attorney generals against Dell for its widespread consumer fraud practices, including bait and switch advertising, misleading financing and rebate practices, and deceptive business practices with respect to its onsite warranties (but not for the claims asserted in this suit).[8]  The Attorney General Action against Dell is important as it establishes a widespread pattern and practice of Dell playing "fast and loose" with its customers to increase sales and profits; the fact that Dell's practices are uniform and standard throughout the nation; and the fact that Dell concealed the deceptive scheme in issue here so well that not even the nation's state attorney generals were aware of it.

As Plaintiffs in this case allege in the FAC, the state attorney generals' law enforcement action also explains why Dell structures its Terms and Conditions as it does in order to attempt to immunize itself from liability for its wrongful, but highly profitable, acts.  Dell does so through class

---

[6] *See* Plaintiffs' Request for Judicial Notice ("RFJN"), Ex. 1.

[7] *See* RFJN, Ex. 2.

[8] Dell agreed to stop engaging in the deceptive practices that were the subject of the law enforcement action, and entered into separate voluntary assurances with each included state, including California.  *See* RFJN, Ex. 2.

1   action bans, one-sided arbitration clauses, forcing customers to use a biased arbitral forum,[9] and

2   including a Texas choice of law provision.[10]

3         The second contextually significant matter is the California Court of Appeal decision in *Dell*

4   *Inc.*, *supra*, 159 Cal.App.4th at 917-19, 930-31, 936.  This sales tax case directly involved Dell's

5   service contracts and the issue of whether the sale of the service contract and computer together

6   constituted one indivisible sale or was actually two independent transactions.  The court found the

7   latter, holding that it is really two separate and distinct transactions – one for goods and one for

8   services  –  rather than one sale where the service aspect was only "incidental" to the sale of the

9   good.  This holding was later expanded to the facts and business practices at issue here by the federal

10   district court in Arizona in *Newport v. Dell Inc., et al.*, Case No. CIV-08-96-TUC-CKJ ("Arizona

11   case"), discussed below.

12   **B.      The FAC Allegations**

13         Plaintiffs allege in the FAC as follows:  Dell sells its computers with one-year service

14   contracts promising next business day onsite repair service at a customer's home.  FAC, ¶¶ 16-17.

15   Dell's sale of its computers with onsite service contracts is a crucial aspect of its competitive

16   advantage and profits because Dell sells its computers over the internet and via telephone.  FAC, ¶

17   16. Without such a service contract, Dell customers needing repair during the warranty period would

18   have to go through the considerable hassle of boxing up the computer, mailing it to Dell for repair,

19   waiting for Dell to repair the computer, and then waiting for Dell to send the computer back by mail.

20   FAC, ¶ 26. This tedious process is understandably unattractive to most customers, and therefore puts

21   Dell at a significant competitive disadvantage to in-person stores that sell computers, such as Best

22   Buy, where the customer can take the computer for repair at no cost during the warranty period.

23   FAC, ¶ 27.

24         [9] Dell's hand-picked arbitration forum, the National Arbitration Forum ("NAF"), was
25   recently the subject of a state attorney general law enforcement action for being strongly biased
     against consumers and lacking in neutrality.  The NAF settled the charges by stipulating that it will
26   no longer adjudicate any consumer claims anywhere in the country.  *See* RFJN, Ex. 3.

27         [10] FAC, ¶ 25.  Texas is one of the states that may enforce class action bans in consumer
     adhesion forms, and, as discussed below, is generally more hostile to class actions and provides
28   significantly fewer consumer protections than states like California.

However, Dell's sale of its computers with one-year onsite service contracts actually constitutes wrongful conduct that increases its profits at the expense of its customers. Dell's conduct is wrongful because Dell secretly makes the customer pay for this service while at the same time leading the customer to believe that there is no charge for the first year of the service. FAC, ¶¶ 17-22. Dell not only fails to disclose the charge for its first year onsite service contracts, but it does not even inform its customers that the onsite service is optional in the first place. In other words, Dell does not tell the customers that they are being charged, nor that they have the option not to be charged. FAC, ¶¶ 17-18. No disclosure is ever made before, during, or after the sale. There is no disclosure in the confirmatory acknowledgment sent after the transaction takes place, nor is there any disclosure in the service contract itself. FAC, ¶¶ 17-23, 29-33, 38-43. The only place the secret charge for the service contract is evident is on Dell's <u>internal</u> invoices, which clearly show that there is a charge for the first year service contract. However, the customer is never allowed to see the internal invoices. FAC, ¶ 19.

Aiding in the scheme is the fact that Dell <u>does</u> disclose that the customer has the option to receive onsite service for additional years past the first year for an extra charge. *Dell Inc.*, *supra*, 159 Cal.App.4th at 908. The end result is that the customer is misled into believing that the first year onsite service contract is being provided with the purchase of a computer at no charge because no charge is disclosed for this service, and because the customer is never provided any option <u>not</u> to purchase the service, while the customer is simultaneously provided the option to extend the onsite service past the first year for additional consideration.

Plaintiffs here are California residents who purchased their computers through Dell's website while in California and paid for their computers at the time of the transactions. FAC, ¶¶ 7, 28, 31, 37, 41. About a week later, Dell sent them acknowledgments of their purchases. FAC, ¶¶ 32-42. The back of the acknowledgments contained a number of fine print terms. FAC, ¶¶ 24-25. Further, Plaintiffs believe that shortly after their purchases, Dell sent them or made available to them the service contracts for onsite warranty repairs at their homes. FAC, ¶¶ 20, 33, 43. Neither the acknowledgments nor the service contracts disclosed that there was any charge for the service, nor

1  did either document state that the service was optional.  FAC, ¶¶ 19-20, 32-33, 42-43.  Plaintiffs

2  believed at the time of purchase that there was no charge for the onsite service, and they would not

3  have purchased the onsite service if they knew there was a charge.  FAC, ¶¶ 30-31, 35, 40-41, 45.

4  **C.      The Other Suits Against Dell**

5          There are two other lawsuits pending in federal courts in different states against Dell that are

6  based on the same underlying business practices as this matter, but on behalf of the residents of those

7  states, filed under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  The Arizona case

8  was filed in November of 2007 in state court and was removed to federal court.  Dell never

9  attempted to enforce its Texas choice of law provision in the Arizona case; instead it brought three

10  motions to dismiss, as well as objections to the Magistrate's Report and Recommendation, all under

11  Arizona state law.  *See Newport*, *supra*, 2009 WL 1636248.  The actionable claims going forward

12  in the Arizona case, to which Dell has now filed answers, are fraud, fraud by nondisclosure, breach

13  of written agreement, and violation of Arizona's consumer fraud statute.

14          The other case is pending in the Eastern District of Michigan as *Adler v. Dell, Inc., et al.*,

15  Case No. 08-cv-13170 GCS (MJH) ("Michigan case").  Dell was able to convince the Michigan

16  district court to enforce its class action ban and send the matter to the NAF for individual arbitration.

17  *Adler v. Dell, Inc.*, 2008 WL 5351042 (E.D. Mich. 2008).  Given that NAF is now subject to a

18  consent decree disqualifying it on the grounds of bias from adjudicating any consumer actions, the

19  plaintiff has filed a motion to lift the stay and move forward with the Michigan case in court, which

20  is now pending; thus, the status of the Michigan case is presently uncertain.

21                      **III.      THE CHOICE OF LAW PROVISION DOES NOT APPLY**

22          Contractual choice of law provisions are narrowly construed.  *Sutter Home*, *supra*, 971 F.2d

23  at 407.  Any ambiguity will be construed against the drafter.  *Id.* at 407.  Such a provision in a

24  consumer form agreement must be "scrutinize[d] with care" and will not be given effect if consent

25  to "its inclusion in the contract was obtained by improper means, such as by misrepresentation,

26  duress, or undue influence, or by mistake."  *Washington Mutual Bank, FA v. Sup. Ct.*, 24 Cal.4th

27  906, 918, n.6 (2001).

28

Dell has the burden of establishing that the various claims in this case fall within the scope of the contractual choice of law provision in issue. *Id.* at 916. Dell has failed to meet its burden.[11] Dell's Motion makes no attempt to discuss the various claims and how they apply to the choice of law provision in this case. Further, while the choice of law provision at issue here was limited to contractual claims, the choice of law provision in the two Northern District cases upon which Dell bases its Motion – the *Brazil* and *Dajani* cases – involved completely different language that explicitly governed tort, false advertising and statutory claims.

## A.     Statutory Claims Are Not Covered by the Provision at Issue

Dell emphasizes in its Motion that the claims in this case "sound in" fraud/fraudulent concealment. Motion at 12-13. While Dell's description overgeneralizes Plaintiffs' claims,[12] it is clear that neither Dell nor Plaintiffs dispute that Plaintiffs bring only statutory claims that are independent of any contract, do not involve the interpretation of any contract, and do not even arise from the Terms and Conditions.

Both Ninth Circuit and applicable state law are clear that contractual choice of law provisions are narrowly construed and do not cover non-contractual claims, such as statutory claims or claims sounding in tort. *See Sutter Home*, *supra*, 971 F.2d at 407 (non-contractual claims such as tort claims not covered); *Benchmark*, *supra*, 343 F.3d at 727-28 (Texas law the same).

*Sutter Home* involved a similar contractual choice of law provision to the one in this case,

---

[11] Dell cannot use its Reply papers to meet this burden or the other burdens it failed to meet here because, for fairness and due process reasons, burdens must be met in the moving papers. *See Sweet v. Pfizer*, 232 F.R.D. 360, 364, n.7 (C.D. Cal. 2005)("[T]he moving party in a motion cannot submit new information as part of its Reply."); *U.S. ex rel. Englund v. Los Angeles County*, 2005 WL 2089216, *6, n.26 (E.D. Cal. 2005)("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.") (citing *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 894-95 (1990)).

[12] Plaintiffs' claims are all based upon statues that are independent of any contract. Further, in addition to asserting a claim under the UCL for "fraudulent" behavior, Plaintiffs also allege violations of the UCL for "unfair" and "unlawful" acts. FAC, ¶¶ 78-82. Moreover, Plaintiffs' Song-Beverly Consumer Warranty Act ("Song-Beverly Act") claim arises from Dell's sale of service contracts in violation of the regulatory scheme set forth in the Song-Beverly Act ( FAC, ¶¶ 57-60), and Plaintiffs' CLRA claim arises from Dell's violation of explicit provisions thereof (FAC, ¶¶ 64-66).

and stated that the "Agreement shall be governed by the law of the State of California."[13] *Sutter Home*, *supra*, 971 F.2d at 406. The Ninth Circuit held that the choice of law provision did not apply to the unfair competition and breach of the good faith and fair dealing claims because such choice of law provisions do not apply to non-contractual claims:

> Claims arising in tort are not ordinarily controlled by a contractual choice of law provision. (Internal citations omitted.) Rather, they are decided according to the law of the forum state. *Id.* at 407.

In a case factually similar to the one at bar, *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 WL 1926673, *3 (N.D. Cal. 2005), the Northern District held that a Texas choice of law provision did not apply to California UCL statutory or fraud claims – even though the court found that they arose from the agreement in issue – because the provision did not explicitly state that non-contractual claims were covered:

> [T]he narrowly-worded choice of law provision does not explicitly control non-contractual claims that are related to the contract. (Internal citation omitted.) Therefore, the Court finds that because Plaintiff's fraud and deceit claim and its section 17200 claim are non-contractual "claims arising in tort," they are not contemplated by the Agreement's choice of law provision and should be "decided according to the law of the forum state." *Id.* at *3.

In fact, the inapplicability of the choice of law provision is even clearer in this case than in *Medical Instruments* because, unlike the claims in *Medical Instruments*, Plaintiffs' statutory claims here are independent from and do not rely on contractual issues. *See also Benson*, *supra*, 1995 WL 110570 at *5 (this Court found choice of law provision did not govern non-contractual tort claims).

Applicable state law is the same as the law in this Circuit. Texas law applies to determine the <u>scope</u> of the choice of law provision. Sitting in diversity, this Court applies California choice of law principles. *Medical Instruments*, *supra*, 2005 WL 1926673 at *3. California holds that the scope of a contractual choice of law provision is determined by the law designated in the provision under consideration. *Washington Mutual*, *supra*, 24 Cal.4th at 916, n.3; *Benson*, *supra*, 1995 WL 110570 at *5. Dell failed to even discuss Texas law on this issue, and likely for good reason, because Texas law clearly holds that contractual choice of law provisions are narrowly construed,

---

[13] The Dell choice of law provision at issue here states: "THIS AGREEMENT AND ANY SALES THERE UNDER SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO CONFLICTS OF LAWS RULES." Exs. A-B to Pape Decl.

and only apply to contract claims unless the provision explicitly states otherwise. *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423 (Tex. 1999); *Benchmark*, *supra*, 343 F.3d at 727-28.

In *Stier*, the Texas Supreme Court held that a contractual choice of law provision stating that Texas law shall apply to the interpretation and enforcement of the agreement in issue did not apply to the tort claims for personal injury since the provision did not by its terms "encompass all disputes between the parties or [ ] encompass tort claims":

> This provision, by its terms, applies only to the interpretation and enforcement of the contractual agreement. It does not purport to encompass all disputes between the parties or to encompass tort claims. *Stier*, *supra*, 992 S.W.2d at 433.

The agreement before the Fifth Circuit in *Benchmark* stated that "the Agreement shall be governed by, and construed in accordance with," New York law. *Benchmark*, *supra*, 343 F.3d at 726. The court held that, under Texas law, the provision did not as a matter of law encompass the fraud and other tort claims in issue. *Id.* at 726.[14]

**B.   *Brazil* and *Dajani* Involved a Completely Different Choice of Law Provision**

Dell leads this Court to believe that the Northern District in the *Brazil* and *Dajani* cases[15] interpreted the **identical** choice of law provision found here, and held it to encompass UCL and CLRA claims. In truth, those cases involved a completely different provision – one that explicitly covered tort, statutory, and advertising claims – unlike the one before this Court.[16] The provision

_____

[14] *Accord*: *Caton Caton v. Leach Corp.*, 896 F.2d 939, 942-43 (5th Cir. 1990)(choice of law provision does not encompass tort claims under Texas law); *Karnes Karnes v. Fleming*, 2008 WL 4528223, *4, n.6 (S.D. Tex. 2008)(well-established that agreements that are "governed" by Texas law do not encompass tort claims); *Red Roof Inns, Inc. v. Murat Holdings, L.L.C.*, 223 S.W.3d 676, 684-85 (Tex.App. 2007)(choice of law provision did not apply to tortious interference with contract claim or other torts).

[15] *Dajani v. Dell Inc.*, 2009 WL 815352 (N.D. Cal. 2009); *Brazil v. Dell Inc.*, 585 F.Supp.2d 1158 (N.D. Cal. 2008).

[16] Compare the *Brazil* and *Dajani* choice of law provision stated below to the one at issue here, set forth in n.13, *supra*:

> THE PARTIES AGREE THAT THIS AGREEMENT, ANY SALES THERE UNDER, OR ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, COMMON LAW, AND EQUITABLE CLAIMS) BETWEEN CUSTOMER AND DELL arising from or relating to this agreement, its interpretation, or the breach, termination or validity

at issue here, however, does not explicitly cover the claims in this case and therefore does not apply.[17]

## C.   The Terms and Conditions Do Not Even Apply In Any Event

Dell failed to show that its adhesive Terms and Conditions – sent at least a week after the transactions were completed – even apply here or were consented to by Plaintiffs.  Nor did Dell even submit into evidence the service contracts which it secretly charged Plaintiffs for.  The obvious reason:  the service agreements do not even contain choice of law provisions.

### 1.   There is No Choice of Law Provision in the Service Contracts at Issue

Plaintiffs allege in the FAC that Dell cheats its customers with regard to its onsite service contracts.  Dell, however, has failed to even mention the service contract that is the focal point of this case, and has relied instead on its more general Terms and Conditions.[18]  The reason is obvious:  The service contract does not even contain a choice of law provision.  *See* RFJN, Ex. 1.  Significantly, as Exhibit 1 to Plaintiffs' RFJN shows, there is nothing in the service contract stating that it is even subject to the Terms and Conditions.  Also problematic for Dell is the fact that Dell included an integration clause in its service contracts.

Dell's service contracts are separate and distinct agreements and transactions from the

_____

thereof, the relationships which result from this agreement, Dell's advertising, or any related purchase SHALL, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO CONFLICTS OF LAWS RULES.
*Dajani*, *supra*, 2009 WL 815352 at *1; *Brazil*, *supra*, 585 F.Supp.2d at 1161.

[17] In the absence of a contractual choice of law provision, California law would normally apply under the "governmental interests" approach, unless Dell could make an extraordinary showing that Texas has substantially greater interests here.  *ABF Capital Corp. v. Grove Properties Co.*, 126 Cal.App.4th 204, 215, 221-22 (2005).  Dell did not argue this point, nor did it make any showing that Texas has a substantially greater interest than California here.  As such, this is a non-issue.  In any event, it is clear that Texas has no real interest here, and its law would not even be considered but for the choice of law provision.  *See* Section IV(D), *infra*.

[18] Although Dell bears the burden of establishing a valid agreement between the parties, Plaintiffs nevertheless attach a copy to their RFJN.  Plaintiffs do not have copies of their service contracts, and therefore attach a standard service contract from another matter in which Dell did submit the service contract into evidence, *Provencher v. Dell, Inc.*, Case No. 05-878, in the United States District Court for the Central District of California.

1   computer purchase.  *See Dell, Inc.*, *supra*, 159 Cal.App.4th at 917-19, 930-31, 936; Sections II(A),

2   *supra*; V, *infra*.  As such, if any contractual terms apply to this litigation, they would be those found

3   in the service contract because the service contract is the focus of this matter.  *See McMillan v. Wells*

4   *Fargo Bank*, 2009 WL 1035969, *3 (N.D. Cal. 2009)(choice of law provision in agreement that is

5   focus of the pleadings applies in the event there is more than one potential agreement in issue).

6              **2.      The Terms Sent After the Sale Do Not Apply as a Matter of Law**

7          Dell also failed to meet its burden of establishing that the Terms and Conditions printed on

8   the back of its order acknowledgments could even apply as a matter of basic contract law.  Dell

9   provided no evidence that Plaintiffs actually consented to the Terms and Conditions, nor did Dell

10  provide any support for the notion that contractual terms provided to a party *after* a sale is completed

11  are binding.

12         Plaintiffs allege in the FAC that the Terms and Conditions were sent to Plaintiffs <u>after</u> the

13  transactions at issue took place.  FAC, ¶¶ 32, 42.  Moreover, both the Motion and the Pape

14  Declaration confirm that the Terms and Conditions were sent at least one week after Plaintiffs'

15  purchases.[19]  Dell also admits that it does not even know which version of the Terms and Conditions

16  were sent to one of the Plaintiffs.  Pape Decl., ¶¶ 3-4.

17         Here, the basic elements of a contract, that is, offer and acceptance, as well as the U.C.C.

18  provisions governing the sale of goods, dictate that the agreement to purchase the computer was

19  formed at the time Plaintiffs selected their computers online and paid for them with a credit card that

20  was accepted by Dell, and <u>not</u> one week later when Dell sent the written acknowledgment of the

21  purchase.  *See Rogers v. Dell Computer Corp.*, 138 P.3d 826, 832-33 (Okla. 2005)(contract likely

22  formed at time of purchase under U.C.C. § 2206(1); if a contract was formed at the time of order,

23  then Dell's Terms & Conditions are simply additional proposed terms under U.C.C. § 2207 and are

24          _____

25  [19] Plaintiffs allege in the FAC that they purchased the first computer on September 5, 2003
    and simultaneously paid for it with a credit card.  The acknowledgment of the sale was dated one
    week later, on September 12, 2003, and was presumably received by Plaintiffs a few days after that.
26  According to the Pape declaration, the acknowledgment contained many terms on the back, which
    are barely legible and non-conspicuous in any event.  Plaintiff Trujillo received the acknowledgment
27  and Terms and Conditions for her computer over 2 weeks after her March 23, 2004 purchase, shortly
    after April 9, 2004.  FAC, ¶¶ 28, 32, 37, 42; Ex. 2; Pape Decl., ¶ 4.

28

1   not part of the contract).

2       This Court was faced with a similar issue in *Arsape S.A v. JDS Uniphase Corp.*, 2005 WL

3   2989296 (N.D. Cal. 2005).  Although there was insufficient evidence for this Court to resolve the

4   issue, the Court held that if the purchase orders marked "Confirmation Only" were merely

5   confirmations of an earlier agreement, the purchase orders' terms and conditions – including the

6   choice of law provision – would be additional proposed terms under U.C.C. § 2207[20] and not part

7   of the parties' agreement.  *Id.* at *5.[21]

8       Tellingly, Dell recognized that terms sent after a transaction takes place do not apply and now

9   requires an internet purchaser to specifically agree and consent to the terms <u>before</u> purchasing.  *See*

10  *Brazil*, *supra*, 2007 WL 2255296 at *1.

11      **3.      The Terms and Conditions Lack Mutuality and are Illusory in Any Event**

12      The Terms and Conditions are void for another reason: Dell can unilaterally change and

13  modify the terms at any time without notice in its sole discretion.  As the terms provide: "These

14  terms and conditions are subject to change without prior written notice at any time, in Dell's sole

15  discretion."  Interpreting similar language in a 25-page online user agreement, the Northern District

16  found such language to lack mutuality.  *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165, 1174-75, 1177

17  (N.D. Cal. 2002)(court found entire user agreement and arbitration clause within the agreement to

18  be substantially unconscionable).

19  **D.    Dell's Selective Attempt to Enforce its Choice of Law Provision is Improper**

20      In the Arizona case, Dell brought three motions to dismiss under Arizona substantive law,

21  never once asserting that Texas law applied, apparently because Arizona law was more favorable to

22  its defense strategy in that case than Texas law.  *See Newport*, *supra*, 2009 WL 1636248 at **4-5.

23  Certainly, Dell should not be able to selectively pick and choose when to apply its adhesive choice

24

25      [20] There is no conflict between Texas and California law in this instance because both states
    have adopted the U.C.C.

26      [21] *See also Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440, 1443-44 (9th Cir.
27  1986)(buyer not bound by disclaimer inserted by seller in purchase acknowledgment form); *Textile
    Unlimited, Inc. v. A.BMY Co., Inc.*, 240 F.3d 781, 787-89 (9th Cir. 2001)(additional terms in
28  acknowledgment invoice not part of agreement).

1    of law provision; it should therefore be estopped from asserting its choice of law provision here.

2              **IV.    THE PROVISION IS ALSO VOID AS AGAINST PUBLIC POLICY**

3    **A.    Dell Cannot Simply Exempt Itself From California's Regulatory Scheme**

4              Even if a valid contract existed and Dell could prove that the scope of its choice of law

5    provision encompassed the statutory claims here, the provision would still be unenforceable.  This

6    is because service contracts are highly regulated in California.  The choice of law provision would

7    have the effect of immunizing Dell's activities in California from the "entire regulatory scheme" and

8    thus would fundamentally conflict with California law "in a substantial manner."[22]  *Brack*, *supra*,

9    164 Cal.App.4th 1312, 1328 (choice of law provision rejected where California regulatory scheme

10   present).  Not surprisingly, and despite ample allegations in the FAC,[23] Dell avoids all mention of

11   California's regulatory scheme in its Motion.

12             The *Brack* decision controls here.  In *Brack*, the plaintiff brought a consumer class action

13   based upon lending law violations, such as failure to properly disclose interest rates and other

14   charges under consumer loans, as well as licensing violations.  164 Cal.App.4th at 1317-19.  Like

15   here, the plaintiff sued under the UCL and CLRA, as well as under the Finance Lenders Law.  The

16   trial court upheld the choice of law provision, finding that the differences between California and

17   the foreign law were not significant or fundamental, and that the regulatory issues were separate

18   issues from the issue of which law should apply.  *Id.* at 1319.

19             The California Court of Appeal reversed, holding that the regulatory scheme itself evidenced

20

21             [22] As Plaintiffs allege in the FAC, the service contracts in issue are highly regulated by the
     State of California through a complex web of statutory regulations.  Defendants, as sellers, dealers
22   and service contractors for the service contracts, are likewise regulated and are required to be
     registered here.  The statutes and regulations involved include the California Business and
23   Professions Code, the Song-Beverly Act, and Title 16 of the California Code of Regulations.  The
     California Bureau of Electronic and Appliance Repair is the agency responsible for ensuring
24   enforcement of the statutory requirements.  California also provides a number of regulatory
     provisions to protect consumers, including an extensive statutory scheme for regulation found in the
25   Song-Beverly Act (Civil Code §§ 1790, 1794.4, and 1794.41); Bus. & Prof. Code § 9855.5 (service
     contractor shall comply with Song-Beverly).  These protections cannot be waived, and any attempt
26   to do so is contrary to public policy, unenforceable and void.  *See* Civil Code § 1790.1.  Plaintiffs
     allege breach of these non-waivable regulatory provisions.  FAC, ¶¶ 15, 57-60, 65-66, 73, 80.
27

28             [23] *See* FAC, ¶¶ 15, 57-60, 65-66, 73, 80.

a fundamental policy of California which cannot be defeated by a choice of law provision; to hold

otherwise would allow stronger parties to easily immunize themselves from regulatory schemes:

> Application of the choice-of-law provision in the Omni loan agreements would undermine the fundamental policy expressed in the finance Lenders Law. Contrary to the findings of the trial court, the conflict between Nevada law and California law is far wider than simply differing standards as to signage. As we have seen, operation of the Finance Lenders Law depends in large measure upon private enforcement, licensing and the considerable power the corporation's commissioner exercises over licensees. The choice-of-law provisions in Omni's loan agreements immunized Omni's activities in this state from this entire regulatory scheme and thereby conflicted with it in a substantial manner. *Id.* at 1328.

*Brack* also analyzed the interests of both states, finding California's interests to be much

stronger, with the foreign state's interest being limited to "the out-of-state activities of one of its

corporate citizens." *Id.* at 1328. The main question, according to the court, was which state would

"suffer greater impairment of its policies if the other state's law is applied." *Id.* at 1329. The

answer was clearly California, given that the defendant was a foreign corporation making consumer

loans to non-resident military personnel stationed in California. *Id.* at 1329.

In the matter of *In re Gault South Bay Litigation*, 2008 WL 4065843, *4 (N.D. Cal. 2008),

this Court faced a similar issue with a non-compete clause which was void under California law but

enforceable under the chosen state's laws. The Court found that California had placed stronger

emphasis on regulating non-compete provisions than did the foreign state because fundamental

California policy was involved. Like here, the only connection the *Gault* case had to the foreign

state is that the defendant was headquartered there and manufactured some products there.[24]

Like *Brack* and *Gault*, this matter strongly implicates California's regulatory scheme. The

first claim for relief specifically alleges breach of California's regulatory scheme for failure to

comply with the required disclosures and requirements of the Song-Berverly Act.[25] The UCL and

CLRA claims are also based in part on Dell's breach of this regulatory scheme. Under the

"unlawful" prong of the UCL, Dell's violations of the Song-Berverly Act and regulations under the

---

[24] Significantly, here, Dell has failed to provide any evidence that Plaintiffs' computers were even manufactured in Texas or that the service contracts were even sent from Texas or purchased through a server located in Texas.

[25] FAC, ¶¶ 15, 57-60, 65-66, 73, 80. The California Court of Appeal in *Dell Inc.*, *supra*, 159 Cal.App.4th at 917, n.2 also noted that Dell appears to have run afoul of this regulatory scheme.

1    California Administrative Code regulating service contracts are also actionable.  *Munson v. Del*

2    *Taco, Inc.*, 46 Cal.4th 661, 676 (2009)(violations of "state and local law may serve as the predicate

3    for an unlawful practice claim" under UCL).  *See* FAC, ¶¶ 80 (UCL) and 65 (CLRA claim).

4           In fact, this case is actually stronger than both *Brack* and *Gault*.  This case involves only

5    California residents, whereas *Brack* involved only non-residents stationed here.  *Brack*, *supra*, 164

6    Cal.App.4th at 1317.  Here, the Song-Beverly Act, one of the regulatory schemes governing

7    Plaintiffs' claims, contains an **explicit** anti-waiver provision, whereas the court in *Brack* had to

8    imply an anti-waiver provision in the lender's law at issue there.  *Id.* at 1326-27.  Here, the regulatory

9    scheme clearly requires registration by the service contract providers, whereas in *Brack*, there was

10   arguably some issue as to licensing.  *Id.* at 1317, 1329.  Further, this case involves a more extensive

11   regulatory scheme than that in *Gault*.

12          Significantly, Texas courts also acknowledge that Texas has no interest when another state's

13   regulatory scheme is implicated.  *See Greenberg Traurig*, *supra*, 161 S.W.3d at 73-74 (court refused

14   to apply Texas law where it would interfere with foreign state's regulatory scheme).

15   **B.     Dell Cannot Force a Waiver of Unwaivable Statutory Consumer Rights**

16          In addition to the existence of an extensive regulatory scheme, it is clear that the consumer

17   protection statutes asserted here represent fundamental public policy in California which cannot be

18   trampled upon.  To this effect, both the Song-Beverly Act and the CLRA contain explicit provisions

19   declaring that they cannot be waived.  Civil Code §§ 1751, 1790.1.

20          Any agreement "purporting to waive or evade" the protections offered by such statutes are

21   void.  There is no discretion in this; "the language is mandatory, unavoidable, and emphatic." *Brack*,

22   *supra*, 164 Cal.App.4th at 1323-24 and n.5 (anti-waiver provisions must be honored). *See also* Civil

23   Code § 3513 ("a law established for a public reason cannot be contravened by a private agreement").

24          In *America Online, Inc. v. Sup. Ct.*, 90 Cal.App.4th 1, 13-14 (2001), the court refused to

25   enforce a contractual choice of law and forum selection provision in the context of a CLRA claim

26   because it diminished the plaintiff's unwaivable consumer rights guaranteed by statute.  The court

27   refused to enforce the choice of law provision even though it found that the foreign law had an

28

extensive consumer protection statute of its own.  The court found that the foreign statute, however, provided cumulatively "significantly less consumer protection" than did the California consumer statutes in areas such as standards of proof in showing intent, the length of the limitations period, attorneys fees and costs, and enhanced remedies for seniors and class action remedies.  *Id.* at 15-18.

The Ninth Circuit in *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083-84  (9th Cir. 2009) followed *America Online* in refusing to enforce a choice of law and forum selection provision because the effect was to waive and diminish consumer statutory protections and remedies provided under California law.  Just as in this case, the *Doe 1* claims included claims under the CLRA, UCL, and False Advertising Law.

**C.     <u>Application of Texas Law Would Impair Statutorily Protected Rights</u>**

The consumer statutes at issue in this case provide greater consumer rights than those available under Texas law.  Besides the regulatory remedies in Song-Beverly with regard to the service contracts discussed above, there are great differences with regard the elements of reliance and  intent and statutes of limitations, among others.  (These differences are obviously the reason that Dell is attempting to apply Texas law here, while it was happy to ignore its choice of law provision in the Arizona case.  *See* Section III(D), *supra.*)

For example, the reliance requirement in class actions brought under the Texas Deceptive Trade Practices Act ("DTPA") is different than the reliance requirement in class actions brought under the UCL.  In California, only the <u>class representative</u> bringing a UCL claim is required to show minimal reliance on a defendant's misrepresentations; specific reliance on a particular representation is not even necessary.  *See In re Tobacco II Cases*, 46 Cal.4th 298, 324-28 (2009).   More importantly, under California law, unlike Texas,  <u>no showing of  reliance is even required for class members</u>.  *Id.*

In contrast, Texas imposes an individualized reliance requirement on class representatives <u>and</u> class members alike, making class actions brought under the DTPA more difficult to obtain. *Fidelity and Guar. Life Ins. Co. v. Pina*, 165 S.W.3d 416, 423-25 (Tex.App. 2005).  Consequently, Texas law regarding reliance would clearly "diminish consumer statutory protections and remedies

provided under California law." This one material difference alone would void Dell's adhesive choice of law provision under applicable Ninth Circuit law. *See Doe 1 v. AOL*, *supra*, 552 F.3d at 1083-84.

There are, however, additional major differences between Texas and California consumer protection statutes, such as the statute of limitations and the elements of intent and damages. For instance, the DPTA has a very short 2-year statute of limitations, while the statutes of limitations under both the UCL and the Song-Beverly Act are 4 years. Tex. Bus. & Com. Code § 17.565; Cal. Bus. & Prof. Code § 17208; *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal.App.3d 205, 215 (1991). Likewise, Texas requires a showing of actual intent, while California imposes a strict liability standard such that intent is irrelevant.[26] Moreover, "only the named plaintiff in UCL class actions need demonstrate injury"; individual class members are not required to prove damages in California, whereas Texas courts have reversed class certification under the DPTA because individual class members' damage inquiries did not lend themselves to classwide proof. *Plascencia*, *supra*, 2009 WL 2569732 at *10; *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 695 (Tex. 2002).[27]

Likewise, Dell's class action ban and one-sided arbitration provision (only Plaintiffs must arbitrate, not Dell) in its Terms and Conditions are void under California law, but are arguably enforceable under Texas law.[28] *Discover Bank v. Sup. Ct.*, 36 Cal.4th 148, 162 (2005)(California will not enforce class action bans in individually small damage consumer adhesion contracts);

---

[26]Compare *Century 21 Real Estate Corp. v. Hometown Real Estate Co.*, 890 S.W.2d 118, 126 (Tex.App. 1994) and Tex. Bus. & Com. Code § 17.46(b)(23) (intent must be shown) to *Plascencia v. Lending 1st Mortgage*, — F.R.D. —, 2009 WL 2569732, *10 (N.D. Cal.)("the UCL prohibits any activity that is 'likely to deceive' members of the public); *In re Tobacco II Cases*, *supra*, 46 Cal.4th at 312 (same).

[27] The CLRA also provides for enhanced remedies to senior citizens or disabled persons who have suffered damages as a result of unlawful practices. Cal. Civil Code § 1780(b).

[28] *Oestreicher v. Alienware Corp.*, 2009 WL 902341, *1 (9th Cir. 2009)(choice of law provision unenforceable due to class action waiver); *Doe 1 v. AOL*, *supra*, 552 F.3d at 1084 (same); *Van Slyke v. Capital One Bank*, 503 F.Supp.2d 1353, 1361 (N.D. Cal. 2007)(foreign law that allows for class actions but enforces class action bans creates risk that California's fundamental policy could be harmed).

*AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 200-01 (Tex.App. 2003)(class action waivers enforceable under Texas law).   The fact that Dell is trying to be clever and hold its class action ban "in reserve" (*see* Motion at 6, n.3), does not change the fact that the application of Texas law here would violate fundamental California public policy.

The foregoing establish that the numerous protections afforded to California consumers under California law would be significantly impaired if Texas law were to apply here.  These consumer protections include the same ones that required the courts in *Doe 1 v. AOL*, *supra*, 552 F.3d 1077 and *America Online*, *supra*, 90 Cal.App.4th 1, to void the choice of law provisions at issue for interfering with these protections.  Here, the choice of law provision is even more repugnant to California public policy given the additional significant differences with respect to reliance and intent elements present here that were not at issue in those other cases.

**D.    California's Interests are Greater Than Texas' Interests**

This case involves California residents bringing a California-only class on California-only statutory claims for unfair and fraudulent conduct injuring them in California and relating to service contracts regulated by this State for repair work on computers located here by Defendants' employees located in California.  California's interests are obviously greater than Texas' interests and the cases under similar circumstances are uniform in so holding.[29]

Further, with regard to service contracts, the law is clear that the place of performance controls.  *See* Restatement (Second) of Conflict of Laws § 196 (state that has most significant interests is state where the services or a major portion of the services are to be performed); *American Triticale, Inc. v. Nytco Services, Inc*., 664 F.2d 1136, 1142 (9th Cir. 1981)(applied Restatement § 196 to determine choice of law issue).

---

[29]*See Brack*, *supra*, 164 Cal.App.4th at 1328-29 (California's regulatory interests much greater than foreign state's interests); *Van Slyke*, *supra*, 503 F.Supp.2d at 1361-62 (California's own anti-deception statutes take priority over foreign law, at least in a California forum); *West Corp. v. Sup. Ct.*, 116 Cal.App.4th 1167, 1180 (2004)(California has a "legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices," as well as providing "a convenient forum" for California residents injured by nonresident corporations); *Klussman v. Cross Country Bank*, 134 Cal.App.4th 1283, 1300 (2005)("California's fundamental public policy interest in protecting its residents is materially greater than Delaware's interest in uniformity among its corporate citizens).

1    Texas' interests, on the other hand, are minimal at best. Texas would obviously have no

2    interest in service contracts sold to California residents for repair work to be done in California, and

3    which are already regulated by the State of California. *See Maxus Exploration Co. v. Moran Bros.,*

4    *Inc.*, 817 S.W.2d 50, 53 (Tex. 1991)(law of state where services are to be performed has greatest

5    interests). Nor would Texas have any interest in the fraud and deceptive practices committed by one

6    of its corporate citizens that injures consumers in another state and violates that state's statutory

7    consumer rights and regulations. *See Greenberg Traurig*, *supra*, 161 S.W.3d at 73-74 (Texas has

8    no interest in fraud occurring elsewhere; also refused to apply Texas law where it would interfere

9    with foreign law's regulatory scheme).

10   **D.    *Brazil* and *Dajani* Are Inapposite**

11   Dell again relies on *Brazil* and *Dajani,* but neither of those cases implicated an extensive

12   California regulatory scheme like the one implicated in this case, nor was a Song-Berverly Act

13   regulatory claim even asserted in *Brazil* or *Dajani*. Thus, none of the factors discussed in *Brack*

14   were even discussed or relevant in *Brazil* or *Dajani*. *Brazil* and *Dajani* also involved goods – not

15   services to be provided only in California – and were decided prior to the Ninth Circuit's opinion

16   in *Doe 1 v. AOL*, *supra*, 552 F.3d at 1083-84, so it is questionable whether they are even still good

17   law. The matters were also decided before the California Supreme Court's recent decision in *In re*

18   *Tobacco II Cases*, which made clear that reliance is not even needed for class members bringing a

19   UCL claim.[30]

20   **V.    THE DISCOVERY RULE APPLIES TO ALL OF PLAINTIFFS' CLAIMS**

21   None of Plaintiffs' claims accrued until "a reasonable person would have discovered the basis

22   for a claim." *Chamberlan v. Ford Motor Co.*, 369 F.Supp.2d 1138, 1148 (N.D. Cal. 2005); *Snow*

23   *v. A.H. Robins Co.*, 165 Cal.App.3d 120, 135 (1985)(claim commenced 7 years after injury occurred

24   when plaintiff first learned about it on television).

25   Further, it is well-established that dismissal of claims at the pleading stage on statute of

26

27   _____

     [30] Nor did the *Brazil* and *Dajani* courts consider the substantially longer statute of limitations
     under the UCL, the strict liability under the UCL, or the enhanced remedies available under the
28   CLRA,

1   limitations grounds is generally improper unless it can be definitively determined from the face of

2   the complaint that the claims are barred.  *Plascencia*, *supra*, 583 F.Supp.2d at 1097 (it is rarely

3   appropriate to grant a motion to dismiss when tolling is at issue; facts surrounding plaintiffs'

4   discovery of nondisclosure  claim "must be developed through discovery").

5        Plaintiffs have pled that they did not know of Dell's secret charges until they discovered

6   Dell's scheme as a result of an unrelated legal proceeding within the year prior to filing this case, and

7   that Dell suppressed and concealed these facts from Plaintiffs before and after the transactions at

8   issue.  FAC, ¶¶ 34, 44.  In addition, Plaintiffs allege that they, as well as all reasonable consumers,

9   expected that the charges for and option not to purchase the first year service contract would be

10   disclosed.[31]  Furthermore, Dell readily admits that it does not disclose the charges to its customers

11   as a matter of business practice.[32]  It is also established that the service contracts are optional and that

12   the charges are only listed on Dell's internal invoicing, which the customer never sees.[33]

13        Clearly, there is nothing on the face of the FAC that would entitle Dell to dismissal here, nor

14   has Dell made any showing justifying such dismissal.  Further, Dell's identical statute of limitations

15   arguments have already been considered and rejected in the Arizona case.  *Newport*, *supra*, 2008 WL

16   4347311 at *3 ("At this stage in the litigation, however, Plaintiff has met that burden by alleging that

17   she discovered her right to the opt out in the Fall of 2007 through an unrelated legal proceeding and

18   that the hidden charge for the initial warranty was never disclosed to her").[34]

19        Dell's claim that the delayed-discovery rule does not apply to the UCL is also without merit.

20   In *Mass. Mutual Life Ins. Co. v. Sup. Ct.*, 97 Cal.App.4th 1282, 1295 (2002), the court applied the

21   discovery rule in a nondisclosure case involving the UCL (as well as the CLRA), and held that the

22

23       [31] FAC ¶¶ 17-20, 29-34, 38-44.  *See also* summary of allegations in Section II(B), *supra*.

24       [32] Motion at 10:6-9.

25       [33] *Dell, Inc.*, *supra*, 159 Cal.App.4th at 917-19, 930-31.

26       [34] The Court should ignore Dell's snide and baseless broadside against Plaintiffs' attorneys
     in its Motion at 11.  Given the accusations in this matter and the Attorney General law enforcement

27   action against Dell for wide-spread consumer fraud, Dell obviously is attempting to move the
     spotlight away from its wrongful conduct.  In any case, any issues with respect to class certification

28   are premature and inappropriate on a motion to dismiss.

statute runs from discovery of the deception.  In a case decided just a few months ago, *Broberg v. Guardian Life Ins. Co. of America*, 171 Cal.App.4th 912, 920-21 (2009), the court again made clear that the discovery rule applies to UCL claims based upon deceptive conduct:

> At least in the context of unfair competition claims based on the defendant's allegedly deceptive marketing materials and sales practices, which is simply a different legal theory for challenging fraudulent conduct and where the harm from the unfair conduct will not reasonably be discovered until a future date, we believe the better view is that the time to file a section 17200 cause of action starts to run only when a reasonable person would have discovered the factual basis for a claim. *Id.* at 921.[35]

Dell also throws in a **merits** argument, declaring that there is nothing wrong with secretly charging its customers for their onsite service contracts while misleading them into believing that there is no charge for the service.  Nor, in Dell's view, is there any problem with not disclosing that the service contracts are optional and do not come standard with the computer purchase.  According to Dell, "any rational member of the general public" would know that they were being charged for the service contract and that they had the option not to be charged, even without any disclosures by Dell.

While this bald assertion is obviously not proper for resolution here, in truth, Dell has it backwards:  no rational consumer would suspect that he or she is being charged for a completely independent and optional service when the seller has never disclosed that the service is optional, and when the seller has expended great efforts to ensure that the customer never knows that he or she has even been charged for the service in the first place.  *See Baghdasaarian v. Amazon.com, Inc.*, — F.R.D. —, 2009 WL 2263581 at *3 (C.D. Cal. 2009)(UCL class certified where defendant

---

[35] The cases Dell cites to support its UCL argument are inapposite.  Dell cites to one line in *Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc.*, 285 F.3d 848 (9th Cir. 2002) for support.  That case was decided before *Mass Mutual* and *Broberg*.  It was not a concealment or nondisclosure or fraud case where the facts were hidden from the consumers, but rather, a trademark case.  Further, a "delayed discovery" rule was not even at issue; the court simply held that the UCL claim accrued at the time of the wrongful conduct, and not earlier.

The *Snapp & Associates Ins. Services, Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal.App.4th 884 (2002) case Dell also relies on was decided before *Mass Mutual* and *Broberg* as well and involved a trade secrets/misappropriation of employees and customer case, not a case based upon deceptive marketing materials and sales practices, as is the case here and as was the case in *Broberg* and *Mass Mutual*.

overcharged plaintiff with a hidden fee); *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1471-75, 1488 (2006)(bank's practice of misleading customers into believing they were being charged at cost when they were actually being charged substantially more was actionable under UCL).

Indeed, Dell attempted to convince the court of this same merits-based argument in the Arizona case. Not only was it summarily rejected, but the district court labeled it as "**specious**." *Newport*, *supra*, 2009 WL 1636248 at * 2. As the court stated:

> The Court finds Dell's semantics argument and comparisons to be specious. In walking out (or driving away) with a computer with a hard drive or a car with wheels, those subparts are necessary for the performance of the product as it is designed ... the onsite service contract, while it may increase or assist the performance of the computer, is not necessary for the computer's performance as it is designed. *Id.* at *2.

> \*                           \*                           \*

> The cases relied upon by Dell do not present a situation similar to this case where a defendant includes a charge in the standard price that is actually optional, but that option is not disclosed. *Id.* at * 7.

Dell's argument also flies in the face of California's regulatory scheme requiring certain disclosures to be made with regard to service contracts. Not surprisingly, Dell failed to make the requisite disclosures. *See, e.g.*, FAC ¶ 59; *Dell Inc.*, *supra*, 159 Cal.App.4th at 917, n.2 (California consumer law requires conspicuous disclosures of all service contract terms). In addition, Dell's argument presumes that the sale of a good and service together are one indivisible transaction. This presumption has been rejected twice now, including recently in the Arizona case. *Id.* at 917-19, 930-31, 936 (service contract represents an independent transaction for services separate and apart from the sale of the good); *Newport*, *supra*, 2009 WL 1636248 at * 2 ("Dell service contracts are not 'part of the sale' of computers").

In any case, this type of "should have known" argument is typically rejected by courts at the pleading stage, especially in omissions cases where the defendant is in control of material information and fails to disclose it. *See Falk*, *supra*, 496 F.Supp.2d at 1100 (defendant's claim that plaintiff in UCL/CLRA case should have known about undisclosed defect "fails at the pleading stage").

1    Also closely related to Dell's merits argument is its attempt to analogize its wrongful conduct

2    to a line of cases involving discretionary discounts, including *Buller v. Sutter Health*, 160

3    Cal.App.4th 981 (2008).  This comparison obviously lacks merit on its face, because this case deals

4    with optional charges that Dell secretly imposes without notice on its customers as well as regulatory

5    violations for failing to make the proper disclosures; there is nothing discretionary about the charges

6    or the regulatory requirements, nor do any of the issues here involve a complaint about discounts.

7    Again, Dell made this same argument in the Arizona case, where it was summarily rejected.

8    *Newport*, *supra*, 2009 WL 1636248 at **5-7 (discount cases do not deal with a charge in the

9    standard price which is actually optional but that option is not disclosed; Dell had exclusive

10   knowledge of facts which it failed to disclose).

11    In truth, this case is more akin to the deceptive practices depicted in *Baghdasaarian*, where

12   the online retailer misled buyers into believing that they were paying solely for the shipping and

13   handling costs of the items they were purchasing, even though they were also being charged an

14   additional commission for the sale of the item.  *Baghdasaarian*, *supra*, 2009 WL 2263581 at *3.

15   Just as in *Baghdasaarian*, Dell failed to inform its customers that they were being assessed hidden

16   charges that were secretly tacked on to the costs for items they had agreed to purchase.  *McKell* is

17   also analogous.  In *McKell*, the bank misled customers into believing they were paying at cost for

18   certain charges, even though it was actually charging them substantially more.  *McKell*, *supra*, 142

19   Cal.App.4th  at 1471-75, 1488.  Just as in *McKell*, Dell misled customers into believing that there

20   is no charge for the first year onsite service contract when in fact, Dell was actually charging them

21   for the optional service.

22   **VI.    PLAINTIFFS' CLAIMS ARE SUFFICIENTLY PLED UNDER RULE 9(b)**

23    Dell's Rule 9(b) arguments can quickly be dismissed.  Under Rule 9(b), the pleading must

24   be specific enough as to the "who," "what" and "when," in order to provide sufficient notice of the

25   "particular misconduct" so that a defendant is on notice of the claims made against it and can

26   properly defend itself.  The pleading standards are lower in omission cases, however, "on account

27   of the reduced ability in an omission suit 'to specify the time, place, and specific content' relative

28

1   to a claim involving affirmative misrepresentations."  *In re Apple & AT & TM Antitrust Litigation*,

2   596 F.Supp.2d 1288, 1310 (N.D. Cal. 2008), citing to *Falk*, *supra*, 496 F.Supp.2d at 1099; *Newport*,

3   *supra*, 2009 WL 1636248 at * 5 (rule relaxed with respect to "matters within the opposing party's

4   knowledge").

5          Here, Dell clearly has adequate notice of Plaintiffs' claim because they are based upon the

6   <u>same underlying facts and deceptive business practices</u> involved in the Arizona and Michigan cases.

7   *See* Section II(C), *supra*.  Indeed, most of Plaintiffs' allegations are either admitted by Dell (*i.e.*, that

8   Dell made no disclosure to customers of the cost of the first year service contract, even on written

9   invoices), or are established and undisputed (*i.e.*, that the first year service contract is optional and

10  the charge is listed only on Dell's internal invoicing, which the customer never sees).  Motion at

11  10:6-9; *Dell Inc.*, *supra*, 159 Cal.App.4th at 918-19, 928-29.

12          In any event, there is no question that the FAC provides Dell with adequate and specific

13  notice of what the omissions are at issue; where they were made to Plaintiffs (on Dell's website, the

14  invoices, and the service contract); who made them (Dell and the other Defendants); and the dates

15  of Plaintiffs' transactions. FAC, ¶¶ 17-20, 28-33, 37-39.  Plaintiffs adequately pled that they relied

16  on the lack of disclosures and would have acted differently if the omitted information had been

17  disclosed.  FAC, ¶¶ 31, 35, 41, 45.  The pleading also alleges that Dell concealed and suppressed the

18  true facts from Plaintiffs and that Plaintiffs had no knowledge of the true facts.  FAC, ¶¶ 17, 34, 37,

19  39, 44.  In addition, Plaintiffs allege that a reasonable consumer would expect Dell to disclose the

20  cost of the first year of onsite service if there was a charge for it, and would expect Dell to disclose

21  that the service was optional if it was.  FAC, ¶¶ 22-23, 30, 40.[36]  Nothing more is required.  *See*

22  *Andrews Farms v. Calcot, Ltd.*, 527 F.Supp.2d 1239, 1252 (E.D. Cal. 2007)(reliance need not be

23  pled with particularity).  *See also In re Apple*, *supra*, 596 F.Supp.2d at 1310; *Falk*, *supra*, 496

24  F.Supp.2d at 1099.

25          Finally, Dell raises an issue with respect to Plaintiff Trujillo's purchase.  Plaintiff Fiori, as

26  her daughter and agent, purchased Trujillo's computer on her behalf, but as alleged in the FAC,

27

28          [36] *See also* Section II(B) for a more extensive summary of the allegations.

Trujillo is the second computer's true owner. FAC ¶¶ 37, 41. With respect to this second computer, the pleading alleges agency and reliance, that both Plaintiffs were unaware of the omissions, that neither Plaintiff would have purchased the computer if they knew the true facts, that both expected such material information to be disclosed, etc. FAC ¶¶ 37-45. These allegations are sufficient, and California law dictates that the principal of an agency relationship has standing to assert a claim based on misrepresentations (or lack thereof) made to an agent.[37] Certainly, the claim on the second computer has to reside somewhere, either with Plaintiff Trujillo or Plaintiff Fiori. Given the agency arrangement and the fact the computer was bought on Plaintiff Trujillo's behalf, the law is clear that the claim belongs to Plaintiff Trujillo.

## VII.  IN ANY CASE, LEAVE TO AMEND, NOT DISMISSAL, IS PROPER

Finally, if this Court is inclined to grant Dell's Motion in whole or in part, Plaintiffs respectfully request leave to amend the complaint accordingly. "[The Ninth Circuit courts] consistently have held that leave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)(citing *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)). *See also 321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F.Supp.2d 1085, 1091-92 (N.D. Cal. 2004)(noting that amendment should be granted unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.")(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

///

///

---

[37] "A fraud worked upon [the agent] by misrepresentation or by silence was worked upon her principal and he has a right of action for redress." *Roberts v. Salot*, 166 Cal.App.2d 294, 300 (1958). *See also Mirkin v. Wasserman*, 5 Cal.4th 1082, 1097 (1993)("courts in this state have found liability under the common law for misrepresentations not actually communicated to the plaintiff"); *Grinnell v. Charles Pfizer & Co.*, 274 Cal.App.2d 424, 441 (1969)(plaintiffs, who had not read representations, could nevertheless sue for breach of express warranty because the physicians who administered the pharmaceuticals did rely on the representations and, in doing so, had acted as the plaintiffs' agents).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VIII.   <u>CONCLUSION</u>

For the above reasons, Plaintiffs respectfully request that the Court deny Dell's Motion in its entirety.

Dated: August 31, 2009                                             Respectfully submitted,

RANDALL S. ROTHSCHILD, A P.C.


By: _____/s/_____
                Randall S. Rothschild*
                Attorneys for Plaintiffs

* I, Gretchen Carpenter, am the ECF user whose ID and password are being used to file this document.  In compliance with General Order 45.X.B., I hereby attest that Randall S. Rothschild has concurred with this filing.