1   BRIAN R. STRANGE (SBN 103252)
    *lacounsel@earthlink.net*
2   GRETCHEN CARPENTER (SBN 180525)
    *gcarpenter@strangeandcarpenter.com*
3   STRANGE & CARPENTER
    12100 Wilshire Blvd., Suite 1900
4   Los Angeles, CA 90025
    Telephone:    310-207-5055
5   Fax:          310-826-3210

6   RANDALL S. ROTHSCHILD (SBN 101301)
    *randy.rothschild@verizon.net*
7   RANDALL S. ROTHSCHILD, A PC
    12100 Wilshire Blvd., Suite 800
8   Los Angeles, CA 90025
    Telephone:    310-806-9245
9   Fax:          310-988-2723

10  Attorneys for Plaintiffs

11              **UNITED STATES DISTRICT COURT**

12          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13                  **SAN JOSE DIVISION**

| | |
|---|---|
| 14  VIVIAN FIORI ARIZA, ROGGIE TRUJILLO, PAMELA NEWPORT, ROBERT DEAN, and RAUL REYES, on behalf of themselves and all others similarly situated, | **Case No. C09 01518 JW** |
| | **[PROPOSED] CONDITIONAL THIRD AMENDED COMPLAINT** |
| Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| v. | **CLASS ACTION** |
| DELL INC., a corporation; BANCTEC, INC., a corporation; WORLDWIDE TECHSERVICES, LLC, f/k/a QUALXSERV, LLC, an entity; DELL CATALOG SALES, L.P., an entity; DELL PRODUCTS, L.P., an entity; DELL MARKETING L.P., an entity; DELL MARKETING L.P., LLC, an entity; DELL MARKETING G.P., LLC, an entity; DELL USA, L.P., an entity; and DOES 1 through 10, | Assigned to the Honorable James Ware |
| | Action filed on April 7, 2009 |
| Defendants. | |

Plaintiffs Vivian Fiori Ariza, Roggie Trujillo, Pamela Newport, Robert Dean, and Raul Reyes (collectively, "Plaintiffs"), on behalf of themselves and all other similarly situated persons in the states of California and Arizona, allege the following upon information and belief based upon personal knowledge:

## NATURE OF THE CASE

1.       This suit concerns Defendants Dell Inc.; Banctec, Inc.; Worldwide TechServices, LLC; Dell Catalog Sales, L.P.; Dell Products, L.P.; Dell Marketing, L.P.; Dell Marketing L.P., LLC; Dell Marketing G.P., LLC; and Dell USA, L.P.'s (hereafter "Defendants") deceptive business practices with regard to Defendants' sale of onsite service contracts for Dell notebook and desktop computers.

2.       Plaintiffs allege that Defendants secretly charge customers for onsite service contracts for the first year after they purchase their Dell computers.  Because the hidden charges are never disclosed – except in Defendants' internal invoicing which is never shown to the customer –  customers are completely unaware they have paid for an onsite service contract they never knew they were purchasing, let alone consented to buying.

3.       Plaintiffs also allege that Defendants deceptively advertised and represented that they would provide "next business day" at-home computer repair service under their onsite service contracts, but did not, as a matter of policy, actually provide onsite service on the next business day after customers initially called Dell to report their computer problems.

4.       Class action treatment is appropriate as this matter involves a scheme to deliberately cheat large numbers of consumers out of individually small sums of money through a uniform course of conduct involving standardized business practices, common material omissions and misrepresentations, and substantially identical pre-preprinted form documentation.

## JURISDICTION

5.       This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA").  Plaintiffs and members of the proposed class are citizens of California and Arizona, whereas Defendants are incorporated and have principal places of

1  business in Texas, Delaware or Massachusetts.  As such, all Plaintiffs and class members are

2  citizens of states different from all Defendants.  The aggregate amount in controversy exceeds

3  $5,000,000.  Furthermore, Defendants have purposefully availed themselves of the benefits and

4  protections of this District and/or have had sufficient contacts with this District such that

5  maintenance of the action in this locale is consistent with traditional notions of fair play and

6  substantial justice.

7                          **INTRA-DISTRICT ASSIGNMENT**

8           6.      Pursuant to Civil Local Rule 3-2(c), this case is assigned to the San Jose Division

9  of this Court, as San Benito County was the residence of Plaintiffs Ariza and Trujillo at the time

10  of filing and where a substantial part of the events or omissions which give rise to Plaintiffs'

11  claims occurred.

12                                      **PARTIES**

13          7.      Plaintiff Roggie Trujillo was a resident of San Benito County, California at the

14  time she purchased the goods and services at issue.  She has been a resident of California at all

15  relevant times.  Plaintiff Trujillo asserts claims against all Defendants.

16          8.      Plaintiff Vivian Fiori Ariza was a resident of San Benito County, California at the

17  time she purchased the goods and services at issue.  She has been a resident of California at all

18  relevant times.  Plaintiff Ariza asserts claims against all Defendants.

19          9.      Plaintiff Pamela Newport was a resident of Arizona at the time she purchased the

20  goods and services at issue.  She has been a resident of Arizona at all relevant times.  Plaintiff

21  Newport asserts claims against only the Dell Defendants and Defendant Banctec.

22          10.     Plaintiff Robert Dean was a resident of San Francisco County, California at the

23  time he purchased the goods and services at issue.  He has been a resident of California at all

24  relevant times.  Plaintiff Dean asserts claims against only the Dell Defendants.

25          11.     Plaintiff Raul Reyes was a resident of Los Angeles County, California at the time

26  he purchased the goods and services at issue.   He has been a resident of California at all relevant

27  times.  Plaintiff Reyes asserts claims against only the Dell Defendants.

28          12.     Plaintiffs are informed and believe and thereon allege that defendant Dell Inc. is a

1    corporation organized under the laws of the State of Delaware, with its principal place of

2    business in Round Rock, Texas, and was formerly known as "Dell Computer Corporation."  Dell

3    Inc. is engaged in the business of manufacturing, marketing, selling, retailing, maintaining,

4    repairing, servicing, and providing support for computer systems and computer products.  Dell

5    Inc. is also engaged in the business of making, marketing, selling, and retailing service contracts

6    for the repair of Dell computers, including the ones involved in this case.  In addition, Dell Inc.

7    is engaged in the business of repairing, servicing, and providing support for onsite warranty

8    repair services to purchasers of Dell computer systems, including the onsite warranty repair

9    services at issue in this case.

10        13.    Plaintiffs are informed and believe and thereon allege that defendants Dell

11   Catalog Sales, L.P.; Dell Products, L.P.; Dell Marketing, L.P.; Dell Marketing L.P., LLC; Dell

12   Marketing G.P., LLC; and Dell USA, L.P. are wholly-owned subsidiaries and/or affiliates

13   through which Dell Inc. conducts its business.  Dell Inc. and the foregoing Dell defendants have

14   been or are the principals, agents, employees, representatives, partners, joint venturers and/or

15   co-conspirators of each other and, in such capacity or capacities, participated in the acts or

16   conduct alleged herein and incurred liability therefor.  Further, Plaintiffs are informed and

17   believe and thereon allege that Defendants Dell Catalog Sales, L.P.; Dell Products, L.P.; Dell

18   Marketing, L.P.; Dell Marketing L.P., LLC; Dell Marketing G.P., LLC; and Dell USA, L.P. are,

19   and at all times herein mentioned were, the alter egos of Defendant Dell Inc., and there exists,

20   and at all times herein mentioned has existed, a unity of interest and ownership between such

21   Dell defendants and Dell Inc. such that any separateness between them has ceased to exist, in

22   that Defendant Dell Inc. completely controls, dominates, manages, and operates Dell Catalog

23   Sales, L.P.; Dell Products, L.P.; Dell Marketing, L.P.; Dell Marketing L.P., LLC; Dell Marketing

24   G.P., LLC; and Dell USA, L.P. to the detriment of Plaintiffs and class members.  Adherence to

25   the fiction of the existence of Dell Catalog Sales, L.P.; Dell Products, L.P.; Dell Marketing, L.P.;

26   Dell Marketing L.P., LLC; Dell Marketing G.P., LLC; and Dell USA, L.P. as entities separate

27   and distinct from Dell Inc. would permit an abuse of corporate privileges and would sanction a

28   fraud and promote injustice.

14. Collectively, all of the Dell defendants will hereafter be referred to as "Dell" or "Dell Defendants." Thus, "Dell" or "Dell Defendants" includes Dell Inc.; Dell Catalog Sales, L.P.; Dell Products, L.P.; Dell Marketing, L.P.; Dell Marketing L.P., LLC; Dell Marketing G.P., LLC; and Dell USA, L.P.

15. Plaintiffs are informed and believe and thereon allege that defendant Banctec, Inc. ("Banctec") is a corporation organized under the laws of the State of Delaware with its principal place of business located in Irving, Texas. Banctec is engaged in the making, marketing, selling, and retailing of service contracts for the repair of Dell computers. Banctec is also engaged in the business of repairing, servicing, and providing support for onsite warranty repair services to purchasers of Dell computer systems, including the onsite warranty repair services at issue in this case. Further, Banctec, along with Dell and defendant Worldwide TechServices, LLC, sells service contracts to California and Arizona residents for the repair of Dell computers, including the ones involved in this case, and Banctec provides onsite repair services to Dell customers in California and Arizona through its employees who are located here.

16. Plaintiffs are informed and believe and thereon allege that defendant Worldwide TechServices, LLC, f/k/a QualxServ, LLC ("Worldwide TechServices") is a limited liability company organized under the laws of the State of Delaware with its principal place of business located in Tewksbury, Massachusetts. Worldwide TechServices is engaged in the making, marketing, selling, and retailing of service contracts for the repair of Dell computers. Worldwide TechServices is also engaged in the business of repairing, servicing, and providing support for onsite warranty repair services to purchasers of Dell computer systems, including the onsite warranty repair services at issue in this case. Further, Worldwide TechServices, along with Dell and Banctec, sells service contracts to California and Arizona residents for the repair of Dell computers, including the ones involved in this case, and Worldwide TechServices provides onsite repair services to Dell customers in California and Arizona through its employees who are located here.

17. Plaintiffs are informed and believe and thereon allege that with respect to the claims asserted herein, each of the Defendants has been or is the principal, agent, employee,

1 representative, partner, joint venturer and/or co-conspirator of each of the other Defendants and

2 in such capacity or capacities participated in the acts or conduct alleged herein and incurred

3 liability therefor.  Further, at all times relevant hereto, each of the Defendants has been or is the

4 agent, partner and/or joint venturer of each other Defendant with respect to the making,

5 marketing, selling, maintaining, repairing, servicing, and providing warranty services, parts and

6 labor to purchasers of Dell computer systems, including the onsite warranty repair services at

7 issue.  Each Defendant derived, accepted and retained monetary profits and benefits from the

8 sale of the service contracts in issue.  Further, each of the Defendants acted for and on behalf of

9 each other Defendant with respect to the service contracts, with actual and apparent authority to

10 act, and did so within the course and scope of their agency, partnership, joint venture and/or

11 authority.  With regard to the specific warranties, representations and agreements alleged herein,

12 each was made with the knowledge, consent, authorization, ratification and approval of each of

13 the Defendants.

14       18.     More specifically, Banctec and Worldwide TechServices participated in and

15 profited from all of the business practices and policies alleged herein with full knowledge of the

16 facts, and were fully aware of the material omissions and business practices and policies in issue

17 which were committed on their behalf as well as on behalf of Dell.

18       19.     The true names and capacities, whether individual, corporate, associate or

19 otherwise, of Defendant Does 1-10, inclusive, are unknown to Plaintiffs, who therefore sue such

20 Defendants by such fictitious names.  Plaintiffs will amend this Complaint to show such

21 Defendants' true names or capacities when the same have been ascertained.  Plaintiffs are

22 informed and believe and thereon allege that each of said fictitious named Defendants is

23 responsible in some manner for the occurrences herein alleged.

24 **California Regulation**

25       20.     The service contracts at issue that were sold in California to California residents

26 for use in California on Dell computers located here, as well as any onsite repair services

27 performed thereunder, are statutorily regulated by the State of California through Business and

28 Professions Code §§ 9800, *et seq.*, the Song-Beverly Act (Civil Code §§ 1790, *et seq.*), and Title

16 of the California Code of Regulations, Division 27.  Further, Defendants, being sellers of the service contracts as well as providers of repair services, are regulated in California by the Bureau of Electronic and Appliance Repair as "service dealers" pursuant to § 9801(f) of the California Business and Professions Code, as "service contract sellers" or "sellers" pursuant to § 9855(c) of that Code, as well as "service contractors" pursuant to § 9855(e).  Plaintiffs are informed and believe and thereon allege that as sellers of service contracts and providers of repair services in California, Defendants are required to be registered with the State of California, and that Defendants are either presently registered or have been in the past.

## GENERAL ALLEGATIONS

**A.      Defendants' Secret Charge for First-Year Onsite Service Contracts**

**Defendants' Common Practices**

21.      Dell sells desktop and laptop computers directly to consumers through its website as well as over the telephone through its sales representatives.  Independent and separate from its computers, Dell, on behalf of itself and all Defendants, also sells and markets onsite warranty repair services via service contracts to Dell computer customers.  Dell broadly advertises both its computers and service contracts throughout California and Arizona to consumers in those states through various media, including Dell's website, mail order catalogs, newspapers, television and the Internet.

22.      Dell, on behalf of itself and all Defendants, advertises and represents that warranty repairs for Dell computers are made onsite for the first year after purchase.  As a matter of business policy and practice common to all their customers, including Plaintiffs and class members, Defendants secretly charge Dell customers for this first year onsite repair service without the customer's knowledge or informed consent.  This charge is hidden from the customer and never disclosed by Defendants either prior to, at the time of, or after the sale of a Dell computer.

23.      Further, Defendants' standard policy is that the service contracts for the first year after purchase are optional and do not have to be bought by the customer.  However, in furtherance of their scheme to deceive, Defendants never disclose this standard policy or option

1   to the customer prior to, at the time of, or after the sale of a Dell computer.  As a result, the

2   customers are completely unaware they are being charged for the first year onsite repair service,

3   or even that they had the option not to be charged in the first place.

4        24.    Also in furtherance of the scheme, Defendants memorialize every computer sale

5   in writing by way of a standard Invoice or Acknowledgment (see examples attached as Exhibits

6   1-3).  These Invoices are sent to Dell customers after they purchase a computer as a matter of

7   Defendants' standard business practice.  The Invoices do not list a charge for the first year

8   service contract, nor do they disclose that the customer has been charged for a first year onsite

9   service contract.  In contrast, as a matter of Defendants' standard business practice, the charge

10  for the service contract is clearly and conspicuously listed in Defendants' <u>internal</u> invoicing that

11  is never shown to the customer.

12       25.    Similarly, Defendants, as a matter of standard business practice, make available to

13  Dell customers a copy of their standard service contract that, again, fails to disclose that there

14  was any charge for the service contract or for the onsite repair service.

15       26.    That there is a charge for the first year onsite service contract and that such

16  charge is optional are facts within the exclusive knowledge of Defendants which Defendants

17  suppress and conceal from customers.

18       27.    Aiding in their scheme is the fact that Defendants **do** disclose that the customer

19  has the option to buy extended service contracts for additional years of onsite warranty repair

20  service beyond the first year, and the fact that Defendants do itemize and specify the charges for

21  the additional years of onsite service or extended service contracts.  The end result of

22  Defendants' partial representations of some material facts and suppression of others is that

23  Defendants create the false impression, and mislead their customers into believing, that there is

24  no charge for their first year onsite warranty repair service.

25       28.    Given the foregoing practices and policies, buyers of Dell computers, as

26  reasonable consumers, reasonably believe there is no charge for first year onsite warranty repair

27  service.  As buyers and reasonable consumers, customers purchasing Dell computers would

28  reasonably expect that if Defendants, as sellers, imposed a charge for the first year onsite repair

1   service, such a cost would be clearly and conspicuously disclosed to buyers before or at the time

2   of sale.  This is especially true given the fact that Defendants disclose that service contracts

3   beyond the first year are optional and the fact that Defendants disclose the costs for service

4   contracts beyond the first year to their customers.

5           29.     In addition, as buyers and reasonable consumers, customers purchasing Dell

6   computers would reasonably expect that if they had the option and choice whether to purchase

7   onsite repair service for the first year, Defendants, as sellers, would clearly and conspicuously

8   disclose this option to them before or at the time of sale.  Taken together, customers purchasing

9   Dell computers would reasonably expect that if a charge existed for the first year onsite repair

10  service, Defendants would clearly and conspicuously disclose to them the full details of the

11  charge, as well as disclose to them their option and choice whether to incur the extra charge or

12  not.

13                     **Uniform Omissions and Standard Documentation**

14          30.     Defendants' policy and standard business practices as alleged herein are common

15  to all Dell customers.  Further, Defendants made the same uniform omissions and lack of

16  disclosures to all Dell customers, irrespective of whether the customers purchased their

17  computers on Dell's website or over the telephone from Dell's sales representatives.

18  Defendants' uniform omissions were material in inducing consumers to incur, without their

19  knowledge or consent, charges for their first year onsite repair service through the unintentional

20  purchase of a service contract.

21          31.     In addition, Defendants provided Dell customers with the same or substantially

22  the same uniform standard documentation, including substantially identical form invoices and

23  pre-printed form service contracts.  Defendants drafted all sales documentation, and are in a

24  superior bargaining position from their customers.  Customers have no input or ability to

25  negotiate any of the terms of these "take it or leave it" form adhesion documents.  Further,

26  Defendants unilaterally insert unfair terms in their form documents, such as class action bans and

27  Texas choice of law provisions, for the distinct purpose of trying to immunize themselves from

28  any material liability so that they will be free to engage in their wrongful conduct to substantially

1    increase profits without any real consequences.

2                              **Defendants' Motives**

3           32.    Plaintiffs are informed and believe and thereon allege that the reason Defendants

4    engage in the deceptive acts alleged herein is to allow them to substantially increase sales of Dell

5    computers and profits.  Plaintiffs are informed and believe and thereon allege that, since Dell has

6    no retail outlets, Defendants believe that if they did not provide their customers with onsite

7    repair service for the first year after purchase, they would be at a substantial competitive

8    disadvantage to big-box store retailers such as Best Buy which offer their customers the

9    convenience of returning a broken computer to any store for warranty service.  Defendants

10   attempt to counteract this advantage by offering to come to a customer's home to fix their

11   computer if it is broken but, to maintain high profits, they force the customer to secretly pay for

12   this service option.  Without the onsite repair service, Dell customers would be forced to

13   package their computers and mail them to a Dell repair facility for warranty repair.

14          33.    Plaintiffs are also informed and believe and thereon allege that Defendants

15   believe that if they did not conceal the charge for this onsite service, Defendants fear that

16   potential customers would find it more attractive to purchase their computers at a store where

17   warranty repair options are both free and more convenient, rather then pay a premium price for

18   Defendants' promise to fix their Dell computers onsite at some time in the future.  Plaintiffs are

19   also informed and believe and thereon allege that sales of service contracts are a high profit

20   margin business for Defendants, which provides them further incentive for the scheme.

21                              **Duty to Disclose**

22          34.    Defendants had a duty to disclose based upon their exclusive knowledge of the

23   material facts alleged above which were unknown to Dell customers, and which they could not

24   reasonably discover; namely, that the first year onsite service contracts were optional and that

25   the Defendants secretly charged their customers for the cost of the first year service contracts.

26   Defendants failed to disclose these material facts to their customers, and instead concealed and

27   suppressed such material facts as a matter of business policy and practice.  Further, Defendants'

28   act in disclosing and itemizing the cost of their onsite service contracts beyond the first year as

well as disclosing that these onsite contracts beyond the first year were optional while, at the same time, concealing and suppressing these same material facts for the first year onsite service contracts, created a false impression in their customers that there were no optional charges associated with the first year onsite service contracts.  Defendants' acts in making a partial representation of material facts while simultaneously suppressing other material facts created a duty to disclose all material facts, including the suppressed and concealed ones.

35.     Besides the foregoing, Defendants were also required under the consumer protection statutes alleged herein to disclose that their first year onsite service contracts were optional, and that they charged their customers for them.  These statutory requirements are detailed more fully below but include the following:  (1) the Song-Beverly Consumer Warranty Act, California Civil Code §§ 1790, *et seq.*, which requires all material terms, conditions and exclusions of the service contracts to be clearly and conspicuously disclosed in simple and readily understood language; (2) the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.*, which requires that a seller of goods and services such as those at issue here, may not represent that goods or services have characteristics or benefits which they do not have, may not advertise goods or services with an intent not to sell them as advertised or represent that a transaction confers or involves rights or obligations which it does not have, and may not represent a repair service is needed when it is not; and (3) the Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.*, the False Advertising Law, California Business & Professions Code §§ 17500, *et seq.*, and the Arizona Consumer Fraud Act, Arizona Revised Statutes §§ 44-1521, *et seq.*, which make actionable any business act, practice or advertising which is likely to mislead or deceive the public.

36.     In engaging in the acts and conduct alleged herein, Defendants violated the various duties to disclose they owed to Dell customers.

**B.     Defendants' Misrepresentations Regarding "Next Business Day" Service**

37.     As set forth above, because Dell has no retail outlets, Defendants also sell and market onsite warranty repair service contracts in order to counteract the substantial competitive disadvantage posed by big-box store retailers that offer customers the convenience of returning a

1  broken computer to any store for warranty service.  One aspect of these onsite service contracts

2  that Defendants had broadly advertised and marketed in order make their business model of

3  direct order sales palatable to the public is the customer's ability to receive next business day at-

4  home service.

5      38.      Defendants called this standard warranty "Next Business Day" and offered to

6  come to customers' homes to repair their computers on the next business day after a computer

7  problem arose.  Defendants also aggressively sold and marketed extensions of these next

8  business day onsite service contracts for an additional one to three years.

9      39.      Defendants made representations regarding the next business day nature of their

10 onsite service contracts in their written warranty and sales documentation, as well as on Dell's

11 website and in its mail order catalogs.  Additionally, Plaintiffs are informed and believe and

12 thereon allege that Dell sales representatives underwent extensive training to learn the most

13 effective sales techniques to sell these next business day onsite service contracts, and that Dell

14 provided written scripts for its telephone salespeople to follow, directing them to highlight to

15 customers the ability to have their computer fixed at home the next business day after it stops

16 working.

17     40.      Given the foregoing practices and policies, buyers of Dell computers, as

18 reasonable consumers, reasonably believed that they would receive at-home repair service on

19 their computers on the next business day after they called Dell to report a computer problem.

20     41.      Despite their marketing practices, Defendants made no effort to actually provide

21 next business day service.  Plaintiffs are informed and believe that Defendants had no company

22 policies pursuant to which onsite service would take place on the next business day after a

23 customer's initial request for technical service to fix a broken computer.  To the contrary, as a

24 matter of policy, Defendants did not provide next business day service as the term "next business

25 day" is commonly understood.  Plaintiffs are informed and believe and thereon allege that

26 Defendants' policy was to target not the date the customer actually called in with a problem, but

27 rather, the date Dell decided, in its sole discretion, that onsite service should take place.

28     42.      The result is that Dell customers who have received or purchased a "Next

1    Business Day" onsite service contract typically did not actually receive at-home computer

2    service until weeks, or even months, after their initial calls to Dell for service.

3                          **PLAINTIFF-SPECIFIC ALLEGATIONS**

4    **A.      Plaintiff Vivian Fiori Ariza**

5             43.     Plaintiff Ariza's claims are asserted against all Defendants.

6             44.     On or around September 5, 2003, Plaintiff Vivian Fiori Ariza purchased a Dell

7    computer for her personal, family and household use through Dell's website, and did use the

8    computer for her personal, family and household use.  She selected the computer she wanted

9    from among various different choices presented on the Dell website.  According to the written

10   representations and advertising Defendants made on the website, which Plaintiff Fiori read

11   before making her computer purchase, warranty repairs for her computer would be made onsite

12   for the first year after purchase.

13            45.     Plaintiff Ariza was provided no option to delete or eliminate the first year onsite

14   repair service.  Further, Defendants made no disclosure on the website that there was any charge

15   or cost associated with the first year onsite repair service.  Nor was there any disclosure on the

16   website giving Plaintiff the option of just purchasing the computer without the onsite repair

17   service for a lesser price.  In contrast, Defendants did disclose to Plaintiff Ariza through their

18   website and advertising that she had the option to purchase, for a specified, itemized amount,

19   additional years of onsite service beyond the first year.

20            46.     Based on the foregoing, and as a reasonable consumer, Plaintiff Ariza reasonably

21   concluded there was no charge for the first year onsite repair service.  Plaintiff Ariza reasonably

22   expected that if there was a charge for the first year onsite service, Defendants would clearly

23   disclose this cost prior to or at the time of the sale.  Further, Plaintiff Ariza reasonably expected

24   that if there was a charge or cost associated with the onsite service for the first year of purchase,

25   Defendants would have provided an option prior to or at the time of the sale for Plaintiff Ariza to

26   purchase the computer without the onsite service.  This is especially true given the fact that

27   Defendants disclosed that service contracts for onsite warranty repair service beyond the first

28   year were optional and the fact that Defendants disclosed and itemized the costs of such service

1    contracts beyond the first year.

2          47.    Relying upon the foregoing lack of disclosures, and not knowing that there

3    actually was a charge for the onsite service, Plaintiff Ariza made her purchase of the computer

4    through Dell's website on or about September 5, 2003.  She did this with a credit card payment

5    that Defendants immediately accepted.

6          48.    Defendants, pursuant to their standard business practice, sent Plaintiff Ariza a

7    written Acknowledgment Invoice dated September 12, 2003 memorializing her purchase.  (A

8    true and correct redacted copy of the front of this Invoice is attached hereto as Exhibit 1.)  The

9    Invoice, pursuant to Defendants' standard business practice, did not list a price for the initial, or

10   first year, onsite repair service, and did not indicate anywhere that she had been charged the

11   price for a service contract.  Further, and also pursuant to Defendants' established business

12   practice, nowhere on the Invoice did Defendants disclose to Plaintiff Ariza that there was a

13   charge for her first year onsite repair service or that Defendants had actually charged Plaintiff

14   Ariza for the cost of a service contract.  Nor did Defendants disclose to Plaintiff Ariza anywhere

15   on the Invoice that she had the option to purchase the computer without incurring a charge for

16   the onsite repair service and service contract.

17         49.    Plaintiff Ariza is also informed and believes and thereon alleges that, pursuant to

18   Defendants' standard business practice, Defendants made available to her a pre-printed form

19   service contract for the onsite service.  As with the Invoice, Plaintiff Ariza is informed and

20   believes and thereon alleges that nowhere on the form did Defendants disclose there was any

21   charge for the first year onsite service or that Plaintiff had the option not to have this onsite

22   service for the first year after purchase.

23         50.    Within the year before filing this action, Plaintiff Ariza discovered, as a result of

24   an unrelated legal proceeding, that Defendants had secretly charged her for onsite warranty

25   repair service during the first year after purchase through the undisclosed sale of a service

26   contract to her.  Defendants concealed and suppressed the true facts from Plaintiff Ariza and

27   never disclosed them to her before or after her computer purchase took place.  Plaintiff Ariza had

28   no knowledge that she was charged for onsite service through a service contract, and never

1   agreed or consented to this charge.

2       51.     If Defendants had disclosed the charge for the first year onsite repair service and

3   service contract prior to or at the time of sale, Plaintiff Ariza would have been aware of it, would

4   have acted differently, and would not have purchased the onsite service through the purchase of

5   a service contract.  Likewise, if Defendants had disclosed to her prior to or at the time of sale

6   that the onsite service costs extra money and that she had the option not to purchase it, Plaintiff

7   Ariza would have been aware of it, would have acted differently, and would have chosen the

8   option not to have the onsite service and service contract for the first year.

9   **B.    Plaintiff Roggie Trujillo**

10      52.     Plaintiff Trujillo's claims are asserted against all Defendants.

11      53.     On or around March 23, 2004, Plaintiff Ariza purchased through Dell's website

12  another Dell computer, this time on behalf of her mother, Plaintiff Roggie Trujillo, for her

13  mother's personal, family and household use in California.  Plaintiff Trujillo delegated to her

14  daughter, as her agent for purposes of buying the computer, full authority and discretion to buy

15  the same type or substantially similar computer as her daughter had purchased the prior year.

16  Plaintiff Trujillo wanted the computer for her personal, family and household use, and Plaintiff

17  Trujillo did use the computer for her personal, family and household use.  Prior to and at the time

18  of the purchase of her mother's computer in March, 2004 ("the Trujillo computer"), neither

19  Plaintiff Ariza nor Plaintiff Trujillo were aware that Defendants secretly charge customers for a

20  first year service contract as part of the transaction.  If they had known about the charge, they

21  would have chosen not to purchase the service contract.

22      54.     On behalf of her mother, Plaintiff Ariza selected the same type of computer she

23  had previously purchased for herself from among the various choices presented on Dell's

24  website.  According to the written representations and advertising Defendants made on the

25  website, which Plaintiff Ariza read before making the purchase of the Trujillo computer,

26  warranty repairs for the computer would be made onsite for the first year after purchase.

27      55.     In purchasing the Trujillo computer, Plaintiff Ariza was provided no option to

28  delete or eliminate the first year onsite repair service.  Further, Defendants made no disclosure

on the website that there was any charge or cost associated with the first year onsite repair service.  Nor was there any disclosure on the website giving Plaintiffs Ariza and Trujillo the option of purchasing only the computer without the onsite repair service for a lesser price.  In contrast, Defendants did disclose to Plaintiffs Ariza and Trujillo through their website and advertising that they had the option to purchase, for a specified, itemized amount, additional years of onsite service beyond the first year.

56.     Based on the foregoing, and as a reasonable consumer, Plaintiff Ariza, on behalf of herself and her mother, reasonably concluded there was no charge for the first year of onsite repair service for the Trujillo computer.  Plaintiffs Ariza and Trujillo reasonably expected that if there was a charge for the first year onsite service, Defendants would clearly disclose this cost prior to or at the time of the sale.  Further, Plaintiffs Ariza and Trujillo reasonably expected that if there was a charge or cost associated with the onsite service for the first year of purchase, Defendants would provide an option prior to or at the time of the sale for Plaintiffs to purchase the computer without the onsite service.  This is especially true given the fact that Defendants disclosed that service contracts for onsite warranty repair service beyond the first year were optional and the fact that Defendants disclosed and itemized the costs of such service contracts beyond the first year.

57.     Relying upon the foregoing lack of disclosures, and not knowing that there actually was a charge for the onsite service, Plaintiff Ariza, on behalf of her mother, purchased the Trujillo computer through Dell's website on or about March 23, 2004, and paid for it with Plaintiff Ariza's credit card.  Defendants accepted payment immediately.  Plaintiff Ariza was subsequently reimbursed by her mother for the cost of the Trujillo computer.

58.     Defendants, pursuant to their standard business practice, sent a written Acknowledgment Invoice dated April 9, 2004 memorializing the purchase of Plaintiff Trujillo's computer.  (A true and correct redacted copy of the front of the Invoice is attached hereto as Exhibit 2.)  The Invoice, pursuant to Defendants' standard business practice, did not list a price for the initial, or first year, onsite repair service, and did not indicate anywhere that the customer had been charged the price for a service contract.  Further, and also pursuant to Defendants'

1   established business practice, nowhere on the Invoice did Defendants disclose that there was a

2   charge for her first year onsite repair service or that Defendants had actually charged for the cost

3   of a service contract.  Nor did Defendants disclose anywhere on the Invoice that the customer

4   had the option to purchase the computer without incurring a charge for the onsite repair service

5   and service contract.

6        59.    Plaintiffs Ariza and Trujillo are also informed and believe and thereon allege that,

7   pursuant to Defendants' standard business practice, Defendants made available a pre-printed

8   form service contract for the onsite service.  As with the Invoice, Plaintiffs Ariza and Trujillo are

9   informed and believe and thereon allege that nowhere on the form did Defendants disclose there

10  was any charge for the first year onsite service or that the customer had the option not to have

11  this onsite service and save herself the cost of the service.

12       60.    Within the year before filing this action, Plaintiff Trujillo, as did Plaintiff Ariza,

13  discovered, as a result of an unrelated legal proceeding, that Defendants had secretly charged for

14  the first year onsite warranty repair service for the Trujillo computer.  Defendants concealed and

15  suppressed the true facts from Plaintiffs Ariza and Trujillo and never disclosed them to Plaintiffs

16  before or after the Trujillo computer purchase took place.  Neither Plaintiff Trujillo nor Plaintiff

17  Ariza had any knowledge that they were being charged for onsite service for the Trujillo

18  computer through a service contract, and neither Plaintiff ever agreed or consented to this

19  charge.

20       61.    If Defendants had disclosed to Plaintiffs Ariza and Trujillo prior to or at the time

21  of sale that there was a charge for the first year onsite repair service and service contract,

22  Plaintiffs would have been aware of it, would have acted differently, and would not have

23  purchased the onsite service.  Likewise, if Defendants had disclosed to Plaintiffs Ariza and

24  Trujillo prior to or at the time of the sale of the Trujillo computer that the onsite service costs

25  extra money and that they had the option not to purchase it, Plaintiffs would have been aware of

26  it, would have acted differently, and would have chosen the option not to have the onsite service

27  and service contract for the first year.

28  **C.     Plaintiff Pamela Newport**

1    62.    Plaintiff Newport's claims are asserted against only the Dell Defendants and

2    Defendant Banctec.

3    63.    On or about August 31, 2000, Plaintiff Newport purchased her Dell computer

4    from a Dell sales representative over the telephone.  Plaintiff Newport purchased her computer

5    as a consumer for personal, family, or household use.  Pursuant to Defendants' established

6    business practice, the Dell sales representative represented on behalf of Dell and the other

7    Defendants that the first year onsite service came standard with her computer for no additional

8    consideration, whereas an extension of this standard service contract for two years cost

9    approximately an additional $120.  The sales representative, pursuant to Defendants' standard

10   business practices, never disclosed to Plaintiff Newport that she would actually be charged for

11   the first year onsite service, and that she had the option of not having first year onsite service,

12   which could have lowered the total purchase price of her computer.

13   64.    Further, within sixty days prior to her telephone conversation with the Dell

14   representative, Plaintiff Newport had visited Dell's website and saw substantially similar

15   representations and omissions in writing regarding the onsite service contracts, including that the

16   first year onsite service came standard with her computer for no additional consideration.  In

17   addition, the website did not contain any clear and conspicuous disclosure that the first year of

18   onsite service was actually an additional cost added on to the purchase price of a computer, or

19   that customers had the option to purchase the computer for less money if they chose not to have

20   this onsite service during the first year of the warranty period.

21   65.    Relying upon the foregoing alleged representations (and not knowing about the

22   material omissions alleged above) made by Dell's sales representative and on Dell's website,

23   Plaintiff Newport, on or about August 31, 2000, orally accepted Dell's offer to sell the computer

24   and initial year of the onsite service to her.  This acceptance was communicated to the Dell sales

25   representative during her telephone call on or about August 31, 2000.  The Dell representative,

26   pursuant to Dell's standard business practice, then required Plaintiff Newport to pay for the

27   purchase during the call, which she did with a credit card.

28   66.    Defendants, pursuant to their established business practice, sent Plaintiff Newport

18

1   a written Acknowledgment Invoice dated September 1, 2000 memorializing her purchase.  (A

2   true and correct redacted copy of the Invoice is attached hereto as Exhibit 3.)  The Invoice,

3   pursuant to Defendants' standard business practice, did not list a price for the initial, or first year,

4   onsite service contract; rather, it only listed a lump sum.  Further, and also pursuant to

5   Defendants' established business practice, nowhere on the Invoice did Defendants disclose to

6   Plaintiff Newport that there was a charge for her "standard" first year onsite contract or that

7   Defendants had actually charged Plaintiff for it.  Nor did Defendants disclose to Plaintiff

8   Newport on the Invoice that she had the option to purchase the computer for less money if she

9   chose not to have this onsite service contract during the first year of the warranty period.

10          67.      Plaintiff Newport discovered sometime in the Fall of 2007 through an unrelated

11   legal proceeding that Defendants had secretly charged her for the right to have onsite service and

12   parts during the first year of the warranty period.  This hidden charge was never disclosed to her,

13   nor did Defendants disclose to her that she had the option to purchase the computer for less

14   money without the onsite service for the first year.  Plaintiff Newport also discovered at or

15   around the same time that Defendants maintain separate **internal** invoices that the customer

16   never sees or even knows about, which list separately the price of each element of a customer's

17   purchase, including the additional undisclosed charge of the first year onsite service contract.

18          68.      Also pursuant to her August 31, 2000 Dell computer purchase, Dell, on behalf of

19   itself and the Defendants, represented to Plaintiff that she was entitled to next business day

20   onsite warranty repair service with a live technician for the first year of her service contract, as

21   well as the right to have warranty replacement parts sent to her the next business day.

22   Defendants also sold Plaintiff a two year extension of this next business day onsite service

23   contract, which included the right to have next business day onsite service for an additional two

24   years.

25          69.      Beginning in or around June, 2003, and within the applicable warranty period,

26   Plaintiff notified Defendants orally and in writing of her need for next business day onsite

27   warranty repair service to fix her computer.  Defendants continued dealing with Plaintiff on her

28   warranty problems through at least November, 2003, but failed to provide next business day

1   onsite warranty repair service, despite Plaintiff's repeated efforts to obtain such service.

2   **D.     Plaintiff Robert Dean**

3          70.     Plaintiff Dean's claims are asserted against only the Dell Defendants.

4          71.     In or around October of 2005, Plaintiff Robert Dean purchased for personal,

5   family or household purposes a Dell computer with an onsite service contract that included the

6   right to have next business day onsite warranty repair service.

7          72.     Plaintiff Dean first observed Dell's representations that the computer he intended

8   to purchase came with next business day onsite repair service at a Dell kiosk at a local shopping

9   center in San Francisco.  The Dell representative at the kiosk confirmed to Plaintiff Dean that the

10  computer came with next business day onsite warranty repair service.  Plaintiff Dean then

11  observed Dell's written representation that the computer came with next business day onsite

12  service on Dell's website.

13         73.     In reliance upon these representations that onsite service would be provided on

14  the next business day, Plaintiff Dean called Dell to order his computer.  He discussed his order

15  with the Dell salesperson over the telephone, and the salesperson likewise confirmed that the

16  computer came with next business day onsite service.  Relying on the representations made to

17  him, Dean placed his order for the computer.

18         74.     Plaintiff Dean received delivery of this computer in late October of 2005, but it

19  was missing a part.  He called Dell immediately upon receipt of the computer, and Dell informed

20  him that it should have been sent with the missing part installed.  Despite numerous

21  conversations with Defendants' technical support team and written correspondence regarding

22  this issue, the part was not installed by Defendants until late December of 2005, approximately 2

23  months after Plaintiff Dean's initial call to Dell for computer repair service.

24         75.     Plaintiff Dean believes that he purchased another Dell computer for his personal

25  and household use around 2001 or 2002.  Plaintiff recalls receiving a next business day service

26  contract with the computer, and receiving such onsite service, but not on the next business day

27  after his call for service.  Like his 2005 computer, he purchased this computer after reading

28  about it on Dell's website.  On the website, he observed and relied upon Dell's representation

1  that service would be provided on the next business day.  He called Dell to place the order and

2  the Dell salesperson also informed him that the computer came with next business day service.

3  Plaintiff believes that the salesperson also convinced him to buy an extended warranty or onsite

4  service contract for additional years.  Plaintiff Dean recalls that he required onsite service for a

5  problem with his hard drive or motherboard, and that he received onsite service, but not on the

6  next business day after he called for help.

7  **E.     Plaintiff Raul Reyes**

8          76.     Plaintiff Reyes' claims are asserted against only the Dell Defendants.

9          77.     In or around October of 2007, Plaintiff Reyes purchased a Dell computer for his

10  personal, family, or household use through Dell's website.  While selecting the various

11  components of his computer purchase on Dell's website, he read that Defendants offered a next

12  business day onsite service contract for his computer.  In order to clarify the terms of the next

13  business day onsite service contract he was interested in purchasing, while he was reviewing the

14  website, he called Dell and spoke to a customer sales representative on the phone, who

15  confirmed to him in both English and Spanish that the onsite service contract indeed provided

16  for next business day onsite service.  In reliance on Dell's representations – both on its website

17  and over the telephone – that his onsite service would occur on the "next business day," Plaintiff

18  Reyes purchased three years of onsite service from Dell.

19          78.     After purchasing his computer and onsite service contract, Plaintiff Reyes

20  experienced many problems with his Dell computer, and was forced to utilize his onsite service

21  contract on many occasions.  Not once did he receive onsite service on the next business day

22  after his initial call to Dell for service.  Quite the contrary, Defendants typically provided onsite

23  service several days or weeks after Plaintiff's initial call to Dell for help.

24  **CLASS ACTION ALLEGATIONS**

25          79.     Plaintiffs bring this action on behalf of themselves and all others similarly

26  situated as representatives of the following Class:

27      All individual consumers in California and Arizona who purchased a Dell
        notebook or desktop computer with an at-home service contract directly from Dell
28      during the period from January 1, 2000 through July 31, 2010 (the "Class").

80.     Excluded from the Class are the following:  (a) Defendants, their employees, their employees' immediate family members, and agents; (b) retailers, wholesalers, and other individuals or entities that purchased Dell notebook and desktop computers for resale; (c) any businesses or entities that purchased Dell notebook and desktop computers; (d) individuals who did not purchase their computers primarily for personal, family, or household purposes; and (e) any judge to whom any of Plaintiffs' cases against any of the Defendants are or were assigned and the judge's immediate family members.

81.     This action has been brought and may properly be maintained as a class action, satisfying the numerosity, commonality, typicality, adequacy, and superiority requirements of Rule 23 of the Federal Rules of Civil Procedure.

82.     Members of the Class are so numerous that joinder of all members is impracticable.  The Class members number in the millions.

83.     There are questions of fact and law common to the Class which common questions predominate over any questions affecting only individual members.  Those common questions include whether Defendants engaged in the following conduct and whether such conduct is improper and wrongful:

    A.     Charging Plaintiffs and plaintiff Class members for onsite warranty repair service through the undisclosed sale of a service contract without their knowledge or consent.

    B.     Failing to clearly and conspicuously disclose to Plaintiffs and plaintiff Class members prior to, at the time of, and after the purchase of their Dell computers that they were being charged for the cost of their first year onsite warranty repair service through the undisclosed sale of a service contract.

    C.     Failing to clearly and conspicuously disclose to Plaintiffs and plaintiff Class members prior to, at the time of, and after the purchase of their Dell computers that they had the option not to incur the cost of their first year onsite warranty repair service and service contract.

D.  Failing to provide at-home computer repair services to Plaintiffs and plaintiff Class members on the next business day after their initial call to Dell for service.

E.  Failing to clearly and conspicuously disclose to Plaintiffs and plaintiff Class members Defendants' policy of gauging the timing of onsite service visits from the date Dell decides, in its sole discretion, that onsite service should take place.

F.  Failing to clearly and conspicuously disclose to Plaintiffs and plaintiff Class members that Defendants do not, as a business practice, gauge the timing of onsite service visits from the date the customer first reports the need for service.

G.  Carrying out schemes designed to deliberately cheat large numbers of persons out of individually small sums of money.

84.  The claims of Plaintiffs are typical of the claims of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct.

85.  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  They have no interests that conflict with or are antagonistic to the interests of the Class. Plaintiffs have retained experienced and competent attorneys who are experienced in class action litigation and who will fairly and adequately protect the interests of the Class.

86.  All Class members have the same legal rights to, and interest in, the subject matter of this action, which are substantially similar, if not identical, for Plaintiffs and plaintiff Class members.

87.  The class action is an appropriate method for fair and efficient adjudication of the controversy given the following:

A.  Common questions of law and/or fact predominate over any individual questions that may arise, such that there would be enormous economies to the courts and the parties in litigating the common issues on a classwide, instead of a repetitive individual, basis;

B.     Class members' individual damage claims are too small to make
individual litigation an economically viable alternative;

C.     Despite the relatively small size of individual Class members' claims,
their aggregate volume, coupled with the economies of scale inherent in
litigating similar claims on a common basis, will enable this case to be
litigated as a class action on a cost-effective basis, especially when
compared with repetitive individual litigation; and

D.     No unusual difficulties are likely to be encountered in the management of
this class action in that all or substantially all questions of law and fact to
be litigated are common to the Class.

88.     Class certification is fair and efficient as well because prosecution of separate actions would create a risk of adjudications with respect to individual members of the Class, which as a practical matter, may be dispositive of the interests of others members not parties to the adjudication or substantially impair or impede their ability to protect their interests.  In addition, Defendants have acted or refused to act on grounds generally applicable to all members of the Class, thereby making final injunctive relief concerning the Class as a whole appropriate.

## FIRST CAUSE OF ACTION

### FOR VIOLATION OF THE SONG-BEVERLY CONSUMER

### WARRANTY ACT, CALIFORNIA CIVIL CODE §§ 1790, *et seq.*

89.     Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs into this claim for relief with the same force and effect as though those paragraphs were set forth at length herein.  This claim is brought on behalf of California Class members.

90.     Every service contract sold to a consumer in California for services to be rendered in this State is controlled and governed by the Song-Beverly Consumer Warranty Act, California Civil Code §§ 1790, *et seq.*, including § 1794.41(a).  Any waiver of a buyer of a service contract of consumer goods falling under this Act is contrary to public policy and is unenforceable and void under California Civil Code § 1790.1.

91.     Plaintiffs and plaintiff Class members are "buyers," and the computers in issue

are "consumer goods" and "home electronic products" as these terms are defined under California Civil Code § 1791.  At all times herein alleged, Dell was a "manufacturer" and each Defendant was a "retail seller," "seller" and/or "retailer" as those terms are defined in California Civil Code § 1791.  The onsite service repair contracts at issue are "service contracts" as defined in California Civil Code § 1791, as well as a "service contract covering a home electronic product" as those terms are used in California Civil Code § 1794.41.  Further, pursuant to section 9855 of the California Business and Professions Code, each of the Defendants is a "service contract seller or seller" and "service contractor" as those terms are defined in subsections c and e, and the onsite service repair contracts at issue are "service contracts" as defined in section 9855(a).  As a result, the provisions of sections 1794.4 and 1794.41 of the Song-Beverly Consumer Warranty Act also apply to Defendants pursuant to Business and Professions Code § 9855.5.

92.     In doing the acts alleged above, Defendants have carried out a scheme designed to deliberately cheat large numbers of consumers out of individually small sums of money.  In furtherance of this scheme, Defendants breached section 1794.41(a)(1) of the Song-Beverly Consumer Warranty Act by, among other things, failing to comply with the requirements and disclosures of subsection (a) of section 1794.4 in failing to fully and conspicuously disclose the charges for the onsite repair service and service contract in issue, and that this onsite service and service contract were optional.  In addition, Defendants violated section 1794.4(c)(5)(I) by failing to accurately and completely disclose all "fees, charges, and other costs that the buyer must pay to obtain service."

93.     At all times relevant hereto, each of the Defendants has been or is the agent, partner and/or joint venturer of each other Defendant with respect to the making, marketing and selling of the service contracts, including the extended service contracts, as well as the servicing, repairing and replacing of computer parts and components under the service contracts.  Each Defendant derived, accepted and retained monetary profits and benefits resulting from the sale of the service contracts.  Further, each of the Defendants acted for and on behalf of each other Defendant with actual and apparent authority to act, and did so within the course and scope of

their agency, partnership, joint venture and/or authority.  With regard to the specific warranties alleged herein, each warranty was made with the knowledge, consent, authorization, ratification and approval of each of the Defendants.

94.     Defendants made an "express warranty" as defined by section 1791.2 of the Act in connection with the sale of consumer goods to Plaintiffs and plaintiff Class members.

95.     Defendants breached their express warranties to Plaintiffs and plaintiff Class members by failing to comply with their obligations under the express warranties by charging Plaintiffs and plaintiff Class members for onsite warranty repair service through the undisclosed sale of a service contract without their knowledge or consent, and by failing to provide next business day at-home service on the next business day after Plaintiffs and plaintiff Class members' initial calls to Dell requesting service.

96.     Further, Defendants breached the Act by, among other things, failing to comply with the requirements and disclosures of subsections (a)(1) and (a)(2) of section 1793.1, and by failing to maintain their own or independent service and repair facilities in California pursuant to section 1793.2.

97.     Plaintiffs and Class members have been damaged by Defendants' failure to comply with their obligations under the Song-Bervely Consumer Warranty Act with respect to their service contracts.

98.     As a proximate result of Defendants' actions, Plaintiffs and members of the plaintiff Class have suffered substantial monetary and non-monetary damage and are entitled to injunctive relief to stop the offensive practices in issue as well as damages for all monies unknowingly paid for the onsite repair service, plus all applicable civil penalties and attorneys' fees and costs pursuant to Civil Code § 1794.

**SECOND CAUSE OF ACTION**

**FOR VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT,**

**CALIFORNIA CIVIL CODE §§ 1750, *et seq*.**

99.     Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs into this claim for relief with the same force and effect as though those paragraphs

1    were set forth at length herein.  This claim is brought on behalf of California Class members.

2        100.    This cause of action is brought on behalf of Plaintiffs and Class members

3    pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*. (the

4    "CLRA").  The CLRA applies to Defendants' actions and conduct described herein.  Any waiver

5    by Plaintiffs and Class members of the provisions of the CLRA is contrary to public policy and

6    is unenforceable and void under Civil Code § 1751.

7        101.    Plaintiffs and Class members bought Dell computers primarily for personal,

8    family, or household use and are thus "consumers" within the meaning of California Civil Code

9    § 1761(d).  The computers that Plaintiffs and each member of the plaintiff Class bought are

10   "goods" within the meaning of California Civil Code § 1761(a), and the onsite repair service and

11   service contract in issue is a "service" within the meaning of California Civil Code § 1761(b).

12   This matter, involving the purchase of Dell computers and the unknowing purchase of service

13   contracts, constitutes a "transaction" within the meaning of California Civil Code § 1761(e).

14       102.    In doing the acts alleged herein, Defendants have carried out a scheme designed

15   to deliberately cheat large numbers of consumers out of individually small sums of money.  In

16   furtherance of this scheme, Defendants engaged in a number of proscribed practices under

17   section 1770 of the CLRA, namely sections 1770(a)(5), (9), (14) and (15).  These provisions

18   proscribe as follows:

19
20       (a)    The following unfair methods of competition and unfair or deceptive acts
               or practices undertaken by any person in a transaction intended to result or
21             which results in the sale or lease of goods or services to any consumer are
               unlawful:

22             (5)    Representing that goods or services have ... characteristics, ... [or]
                      benefits ... which they do not have ...
23
               (9)    Advertising goods or services with intent not to sell them as
24                    advertised...

25             (14)   Representing that a transaction confers or involves rights,
                      remedies, or obligations which it does not have or involve, or
26                    which are prohibited by law...

27             (15)   Representing that a part, replacement, or repair service is needed
                      when it is not.
28

103.   Defendants' material omissions in failing to disclose their charges to Plaintiffs and Class members for their first year onsite service and service contract, and their failure to disclose the customers' option not to have the onsite service and service contract in the first place, as more fully alleged above, constitute a violation of the CLRA and breach of the proscribed practices described above.  Further, these acts were likely to mislead the members of the public and reasonable consumers, including Plaintiffs and plaintiff Class members, and did mislead members of the public and reasonable consumers, including Plaintiffs and plaintiff Class members.

104.   Defendants' representations and advertising of their onsite service contracts as providing "next business day" at-home computer repair service, as more fully alleged above, also constituted a violation of the CLRA and breach of the proscribed practices described above. Further, these acts were likely to mislead the members of the public and reasonable consumers, including Plaintiffs and plaintiff Class members, and did mislead members of the public and reasonable consumers, including Plaintiffs and plaintiff Class members.

105.   Plaintiffs and Class members request that this Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged above, pursuant to California Civil Code § 1780(a)(2).  Unless Defendants are permanently enjoined from continuing to engage in these violations of the CLRA, current and future consumers of Defendants' products will be affected in the same way as have Plaintiffs and members of the Class.

106.   Further, as a direct and proximate result of the above-described deceptive practices, Plaintiffs and Class members have sustained damages in an amount to be proven at trial.

107.   Defendants' deceptive practices were also directed to Class members who are senior citizens and disabled persons, as defined in California Civil Code § 1761(f) and (g), who are substantially more vulnerable to Defendants' conduct than other members of the public and who actually suffered economic damage resulting from Defendants' conduct, and are therefore entitled to additional statutory damages pursuant to California Civil Code § 1780(b).

1   108.   As a further result of Defendants' conduct alleged above, and because Defendants

2   are guilty of fraud, malice, and/or oppression, Plaintiffs and Class members are entitled not only

3   to damages as set forth above, but also to exemplary and punitive damages in a sum not

4   presently known, but sufficient for the sake of example and by way of deterring Defendants and

5   others from further such actions.

6   109.   On August 23, 2006, Plaintiffs Robert Dean and Raul Reyes' counsel provided

7   Defendants with written notice of their and the Class's claims, and on April 7, 2009, Plaintiffs

8   Vivian Fiori Ariza and Roggie Trujillo provided Defendants with written notices of their claims

9   and the Class's claims.  These notices were sent via U.S. certified mail, return receipt requested,

10  and demanded that, within 30 days, Defendants correct, repair, replace or otherwise rectify the

11  deceptive practices complained of herein for the entire Class pursuant to California Civil Code §

12  1770.  Defendants failed to do so or agree to do so.  Therefore, Plaintiffs now seek damages for

13  such deceptive practices pursuant to California Civil Code section 1782.

14                    **THIRD CAUSE OF ACTION**

15       **FOR FALSE AND MISLEADING ADVERTISING IN VIOLATION OF**

16       **CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17500, *et seq.***

17  110.   Plaintiffs reallege and incorporate by reference all preceding and subsequent

18  paragraphs into this claim for relief with the same force and effect as though those paragraphs

19  were set forth at length herein.  This claim is brought on behalf of California Class members.

20  111.   Dell computers are broadly advertised to California consumers through various

21  media, including through Dell's website, mail order catalogs, newspapers, television and the

22  Internet.  Defendants, with full knowledge that there is a charge for first year onsite service

23  repair and that this service is optional, intentionally and deceptively misled consumers, including

24  Plaintiffs and Class members, into believing that there was no charge for first year onsite service

25  through their advertising and statements, including their invoices and service contracts.  The

26  advertising and statements fail to disclose all material and relevant information, namely, that

27  there was a charge for the onsite service for the first year of ownership, and that this onsite

28  service, which is sold through a service contract, was optional.

112.     Defendants also intentionally and deceptively misled consumers, including Plaintiffs and Class members, into believing that they would receive at-home computer repair service on the next business day after they first requested technical computer service.  The advertising and statements fail to disclose all material and relevant information, namely, that Defendants' next business day onsite service contracts did not entitle customers to at-home computer repair service on the next business day after a customer's request for service, and that rather, Defendants gauged the timeliness of at-home service from the day that Dell decided, in its sole discretion, that at-home service would be dispatched.

113.     Defendants' advertisements and statements were likely to deceive or mislead or had the capacity, likelihood or tendency to deceive or confuse the consuming public, including Plaintiffs and Class members.  As a result, Defendants' acts and conduct in making and disseminating the advertising and statements before the public in California were false and misleading within the meaning, and in violation, of California Business & Professions Code § 17500.

114.     In making and disseminating the statements alleged herein, Defendants knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§ 17500, *et seq.*

115.     The misrepresentation and non-disclosure by Defendants of the material facts detailed above constitutes false and misleading advertising and therefore constitutes a violation of California Business & Professions Code §§ 17500, *et seq.*

116.     Further, to the extent it is found that Defendants conditioned the sale of their computers with the sale of a service contract, Defendants are in breach of California Business & Professions Code § 17509(a) for failing to clearly and conspicuously disclose and list the price for the onsite service contract separate and apart from the price of the computer in their advertising and statements when soliciting purchasers for Dell computers.

117.     In doing the acts alleged above, Defendants have carried out a scheme designed to deliberately cheat large numbers of consumers out of individually small sums of money.  As a proximate result of Defendants' actions, Plaintiffs and members of the Class are entitled to

1  injunctive relief, restitution of all moneys wrongfully obtained from Plaintiffs and members of

2  the Class, and disgorgement.

3  **FOURTH CAUSE OF ACTION**

4  **FOR UNFAIR, DECEPTIVE, AND UNLAWFUL BUSINESS PRACTICES IN**

5  **VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200, *et seq.***

6  118.   Plaintiffs reallege and incorporate by reference all preceding and subsequent

7  paragraphs into this claim for relief with the same force and effect as though those paragraphs

8  were set forth at length herein.  This claim is brought on behalf of California Class members.

9  119.   Defendants' actions alleged above, including their failing to disclose the onsite

10  service contract charge or that the onsite service was optional for the first year, and their

11  misrepresenting the nature of their next business day onsite service contracts, constitute

12  unlawful, unfair, and fraudulent business practices and acts under California Business and

13  Professions Code §§ 17200, *et seq.*  These actions and business practices are forbidden by law,

14  create harm that outweighs any benefit to customers, and are likely to deceive members of the

15  public.

16  120.   In doing the acts alleged above, Defendants have carried out a scheme designed to

17  deliberately cheat large numbers of consumers out of individually small sums of money.

18  121.   Plaintiffs have suffered injury in fact and have lost money in at least the amount

19  they paid for their first year or next business day service contracts, as a result of Defendants'

20  unfair competition and deceptive advertising as defined in Business and Professions Code §§

21  17200, *et seq.*

22  122.   In addition, the acts and practices of Defendants are unlawful because they violate

23  one or more of the following statutes and regulations:

24  a)   California Business and Professions Code §§ 17500, *et seq.*, and § 9855.5.

25  as set forth above.

26  b)   Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*, as set

27  forth above.

28  c)   Song-Beverly Consumer Warranty Act, Cal. Civil Code §§ 1790, *et seq.*,

1          as set forth above.

2          d)      16 C.C.R. § 2720 of the California Administrative Code, which provides

3                  that "[n]o service dealer shall, in filling out an estimate or an invoice,

4                  withhold therefrom or insert therein any statement or information where

5                  the tendency or effect thereby is to mislead or deceive customers,

6                  prospective customers, or the consuming public."

7          123.    Defendants' acts and practices as described herein have deceived and/or are likely

8   to deceive members of the consuming public and reasonable consumers, including Plaintiffs and

9   Class members.

10         124.    Unless Defendants are enjoined from continuing to engage in the unlawful, unfair,

11  fraudulent, untrue and deceptive acts and practices described herein, Plaintiffs and members of

12  the Class will continue to be damaged by Defendants' unfair business practices.

13         125.    Defendants, through their acts of unfair competition and unfair, deceptive, untrue

14  and misleading advertising, have acquired money from Plaintiffs and Class members.  Thus,

15  Plaintiffs and plaintiff Class members request that this Court restore this money to them, enjoin

16  Defendants from continuing to violate California Business & Professions Code §§ 17200, *et seq.*,

17  and order disgorgement.

18                          **FIFTH CAUSE OF ACTION**

19                  **FOR CONSUMER FRAUD IN VIOLATION OF THE**

20                  **ARIZONA CONSUMER FRAUD ACT**

21         126.    Plaintiffs reallege and incorporate by reference all preceding and subsequent

22  paragraphs into this claim for relief with the same force and effect as though those paragraphs

23  were set forth at length herein.  This claim is brought on behalf of Arizona Class members.

24         127.    In doing the acts alleged above, Defendants have carried out a scheme designed to

25  deliberately cheat large numbers of consumers out of individually small sums of money.

26         128.    Defendants' actions, as set forth above, constitute consumer fraud in violation of

27  applicable law, including Arizona Revised Statutes §§ 44-1521, *et seq.*, which provides in A.R.S.

28  § 44-1522 in relevant part that "[t]he act, use, or employment by any person of any deception,

deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice."

129.   As a result of Defendants' conduct set forth above, Plaintiffs and members of the plaintiff Class reasonably relied upon Defendants' common material omissions and misrepresentations in purchasing their first year onsite service contracts and/or next business day service contracts, and have suffered damages.

130.   The foregoing conduct of Defendants (i) constituted the intentional misrepresentation, deceit, and/or concealment of a material fact known to the Defendants with the intention on the part of Defendants of thereby depriving Plaintiffs and plaintiff Class members of property or legal rights or otherwise causing Plaintiffs and plaintiff Class members injury; (ii) was intended by Defendants to cause injury to Plaintiffs and plaintiff Class members or was wanton and malicious conduct that was carried on by Defendants with ill-will and a willful and reckless disregard of the rights or safety of others; and/or (iii) was aggravated conduct that subjected Plaintiffs and plaintiff Class members to cruel and unjust hardship in conscious disregard of Plaintiffs and plaintiff Class members' rights so as to justify an award of punitive damages against Defendants.

## SIXTH CAUSE OF ACTION

### FOR BREACH OF WRITTEN AGREEMENT

131.   Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs into this claim for relief with the same force and effect as though those paragraphs were set forth at length herein.  This claim is brought on behalf of all Class members.

132.   At all times relevant hereto, each of the Defendants has been or is the agent, partner and/or joint venturer of each other Defendant with respect to the making, drafting, marketing and selling of the invoices and service contracts.  Each Defendant derived, accepted and retained monetary profits and benefits resulting from the sale of the service contracts.  With

respect to the specific agreements alleged herein, each of these Defendants acted for and on behalf of each other Defendant with actual and apparent authority to act, and did so within the course and scope of their agency, partnership, joint venture and/or authority.  Further, with regard to the specific agreements alleged herein, each agreement was made with the knowledge, consent, authorization, ratification and approval of each of the Defendants.

133.   At the time of the computer purchases alleged herein, and as part of those purchases, Dell, on behalf of itself and the Defendants, offered, promised and agreed to the following uniform material terms with respect to their onsite service contracts:  Defendants will provide onsite warranty service and parts for the first year for no additional consideration, and Defendants will provide "next business day" onsite service.

134.   Plaintiffs and plaintiff Class members accepted the terms of the agreement by purchasing their computers and service contracts.  Defendants uniformly offered the same terms and written documentation to each customer, including Plaintiffs and plaintiff Class members. Plaintiffs and plaintiff Class members did not and could not negotiate any term of the agreements, and had no bargaining power over their terms as they were strictly dictated by Defendants.

135.   Plaintiffs and plaintiff Class members fulfilled all of their obligations under the invoices and written agreements, including all conditions, covenants, and promises, except those that were excused as a result of Defendants' breach of their obligations thereunder.

136.   Defendants breached the agreements by secretly charging Plaintiffs and plaintiff Class members for their first year onsite warranty services, and failing to provide onsite service on the next business day after a customer's initial call to Dell requesting technical computer service.

137.   As a proximate result of Defendants' breaches, Plaintiffs and plaintiff Class members have been damaged in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

### FOR FRAUD

138.   Plaintiffs reallege and incorporate by reference all preceding and subsequent

1  paragraphs into this claim for relief with the same force and effect as though those paragraphs

2  were set forth at length herein.  This claim is brought on behalf of all Class members.

3         139.    At all times relevant hereto, Defendants have been or are the agents, partners

4  and/or joint venturers of each other with respect to the representations attributed to them with

5  regard to the service contracts, and each acted for and on behalf of each other with actual and

6  apparent authority to act, and did so within the course and scope of their partnership, joint

7  venture, agency and/or authority.  With respect to the specific representations attributed to them

8  regarding the service contracts, each representation was made with the knowledge, consent,

9  authorization, ratification and approval of each of them.  Further, these Defendants derived,

10  accepted and retained monetary profits and benefits resulting from the transactions in which the

11  representations were made.

12         140.    Defendants made the following material representations to Plaintiffs and plaintiff

13  Class members in writing:

14             A.    That there was no additional consideration required for next business day

15                    onsite warranty service and parts for the first year of the warranty period.

16             B.    That Defendants would provide next business day onsite service under its

17                    at-home service contracts.

18         141.    Defendants made substantially the same representations to Plaintiffs and to each

19  plaintiff Class member prior to, at, or around the time they purchased their computers and

20  received their service contracts.

21         142.    All of the foregoing representations were false.  In truth, Defendants secretly

22  charged Plaintiffs and plaintiff Class members for their first year onsite warranty service, and

23  Defendants' next business day onsite service contracts did not entitle customers to at-home

24  computer repair service on the next business day after a customer's request for service.

25         143.    At the time these representations were made, Defendants, and each of them, knew

26  them to be false.  Defendants, and each of them, made these representations with the intention to

27  deceive and defraud Plaintiffs and plaintiff Class members, and to induce them to act in reliance

28  on these representations by purchasing their computers and service contracts.

144.   Plaintiffs and plaintiff Class members were ignorant of the falsity of Defendants' representations at the time they were made and at the time Plaintiffs and plaintiff Class members purchased their computers and service contracts, and believed them to be true.  In reasonable reliance on these representations, Plaintiffs and plaintiff Class members were induced to and did purchase the computers and service contracts to their detriment.  Had Plaintiffs and plaintiff Class members known the true facts, they would not have taken such action.  Plaintiffs and plaintiff Class members' reliance on Defendants' representations was justified because Defendants were the ones offering the service contracts for sale, and possessed superior knowledge of the facts, as they were peculiarly within the knowledge of Defendants.

145.   Defendants made substantially these same material representations to all plaintiff Class members who received a service contract.

146.   As a result of Defendants' fraudulent conduct as alleged above, Plaintiffs and plaintiff Class members have suffered damages.

147.   The foregoing conduct of Defendants (i) constituted an intentional misrepresentation, deceit, and/or concealment of a material fact known to the Defendants with the intention on the part of Defendants of thereby depriving Plaintiffs and plaintiff Class members of property or legal rights or otherwise causing Plaintiffs and plaintiff Class members injury; (ii) was intended by Defendants to cause injury to Plaintiffs and plaintiff Class members or was wanton and malicious conduct that was carried on by Defendants with ill-will and a willful and reckless disregard of the rights or safety of others; and/or (iii) was aggravated conduct that subjected Plaintiffs and plaintiff Class members to cruel and unjust hardship in conscious disregard of Plaintiffs and plaintiff Class members' rights so as to justify an award of punitive damages against Defendants.

## EIGHTH CAUSE OF ACTION

## FOR FRAUD BY NONDISCLOSURE

148.   Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs into this claim for relief with the same force and effect as though those paragraphs were set forth at length herein.  This claim is brought on behalf of all Class members.

149.    Defendants intentionally failed and omitted to disclose to Plaintiffs and plaintiff Class members that they do not provide onsite warranty repair service and parts during the first year of the warranty period for no extra consideration, and that they do not, as a business practice, provide onsite service on the next business day after a customer's initial call to Dell for service.  These material facts were known to Defendants, and each of them, at all times herein mentioned.

150.    Defendants had a duty to Plaintiffs and plaintiff Class members to fully disclose in a clear and conspicuous manner the true facts.

151.    Defendants' representations, when coupled with Defendants' omissions, were false and misleading.  Defendants intentionally omitted and failed to disclose these facts to Plaintiffs and plaintiff Class members to induce and deceive Plaintiffs and plaintiff Class members into purchasing their computers and service contracts.

152.    Plaintiffs and plaintiff Class members were ignorant of the falsity of Defendants' representations at the time they were made and at the time they purchased their computers and service contracts, and believed them to be true.  In reasonable reliance on these representations, Plaintiffs and plaintiff Class members were induced to and did purchase the computers and service contracts to their detriment.  Had Plaintiffs and plaintiff Class members known the true facts, they would not have taken such action.  Plaintiffs and plaintiff Class members' reliance on Defendants' representations was justified because Defendants were the ones offering the service contracts for sale, and possessed superior knowledge of the facts, as they were peculiarly within the knowledge of Defendants.

153.    These material omissions were uniformly kept from Plaintiffs and plaintiff Class members.

154.    As a result of Defendants' fraudulent conduct as alleged above, Plaintiffs and plaintiff Class members have suffered damages.

155.    The foregoing conduct of Defendants (i) constituted an intentional misrepresentation, deceit, and/or concealment of a material fact known to the Defendants with the intention on the part of Defendants of thereby depriving Plaintiff and plaintiff Class members

1  of property or legal rights or otherwise causing Plaintiffs and plaintiff Class members injury; (ii)

2  was intended by Defendants to cause injury to Plaintiffs and plaintiff Class members or was

3  wanton and malicious conduct that was carried on by Defendants with ill-will and a willful and

4  reckless disregard of the rights or safety of others; and/or (iii) was aggravated conduct that

5  subjected Plaintiffs and plaintiff Class members to cruel and unjust hardship in conscious

6  disregard of Plaintiffs and plaintiff Class members' rights so as to justify an award of punitive

7  damages against Defendants.

8                                        **PRAYER**

9          **WHEREFORE,** Plaintiffs request the following relief, on behalf of themselves and on

10  behalf of the Class:

11          1.      An order confirming that this action is properly maintainable as a Class action

12  and appointing Plaintiffs and their counsel to represent the Class;

13          2.      An award of damages, restitution, punitive damages, civil penalties, and all other

14  monetary relief authorized by law or referenced herein;

15          3.      An order enjoining the conduct alleged herein;

16          4.      An award of prejudgment interest and post-judgment interest;

17          5.      An award providing for payment of costs of suit, including payment of experts'

18  fees and expenses;

19          6.      An award of reasonable attorneys' fees; and

20          7.      Such other and further relief as this Court may deem proper and just.

21  DATED: November 8, 2010                      Respectfully submitted,

22                                               STRANGE & CARPENTER

23

24                                      By:  _____/s/_____
                                                 Gretchen Carpenter
25                                               Attorneys for Plaintiffs

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2

      Plaintiffs hereby demand a trial by jury.

3

DATED: November 8, 2010                                    Respectfully submitted,

4

                                      STRANGE & CARPENTER

5

6

                            By:       /s/

7

                                     Gretchen Carpenter
                                     Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C09 01518 JW – [Proposed] Conditional Third Amended Complaint

# EXHIBIT 1



**This is your ACKNOWLEDGMENT**                                    Page: 1 of 2

FID Number: 74-2616805
Sales Rep: MICHAEL HODGKISS
For Sales: (800)695-8133
Sales Fax: (877)204-8109
For Customer Service: (800)695-8133
For Technical Support: (800)695-8133
Dell Online: http://www.dell.com

Customer Number: 034441095
Purchase Order: NAONLINECUST
Order Number: 461602352
Order Date: 09/05/03

23 01 V 01 01 N

Invoice Number: 461602352

Invoice Date: 09/12/03
Payment Terms: VISA
Shipped Via: LTL 5 DAY OR LESS
Waybill Number: ZZ307005093374

SOLD TO:
#BWNHKPV
#0344 4100 55M 00009035 1MB 0.309 01
VIVIAN FIORI
FIORI VIVIAN

SHIP TO:
VIVIAN FIORI
FIORI VIVIAN

PLEASE REVIEW IMPORTANT TERMS & CONDITIONS ON THE REVERSE SIDE OF THIS INVOICE

| Order | Shipped | Item Number | Description | Unit | Unit Price | Amount |
|---|---|---|---|---|---|---|
| 1 | 1 | 221-2530 | Dimension 4600 Series, Intel Pentium 4 Processor at 2.80GHz with HT Technology | EA | 1,494.00 | 1,494.00 |
| 1 | 1 | 311-9002 | 512MB DDR SDRAM at 400MHz | EA | 0.00 | 0.00 |
| 1 | 1 | 310-1696 | Dell Enhanced Multimedia PS/2 Keyboard | EA | 0.00 | 0.00 |
| 1 | 1 | 320-0578 | 17 in (17 in viewable) E171FPB Flat Panel Display | EA | 0.00 | 0.00 |
| 1 | 1 | 320-0735 | 128MB DDR NVidia GeForce FX 5200 graphics card | EA | 0.00 | 0.00 |
| 1 | 1 | 340-3274 | 80GB 7200 RPM Ultra ATA Hard Drive | EA | 0.00 | 0.00 |
| 1 | 1 | 340-8446 | USB Memory Key,64MB, Dimension | EA | 0.00 | 0.00 |
| 1 | 1 | 340-8688 | No Floppy Drive Requested | EA | 0.00 | 0.00 |
| 1 | 1 | 313-7222 | Dell Application Back-up CD, Factory Install | EA | 0.00 | 0.00 |
| 1 | 1 | 420-1921 | Microsoft Windows XP Home Edition,Service Pack 1,English | EA | 0.00 | 0.00 |
| 1 | 1 | 412-0409 | Generic Dimension Dell Support | EA | 0.00 | 0.00 |
| 1 | 1 | 310-4037 | Dell USB Optical Mouse | EA | 0.00 | 0.00 |
| 1 | 1 | 430-0472 | 10/100/1000 Networking Card | EA | 0.00 | 0.00 |
| 1 | 1 | 313-1313 | 56K PCI Data Fax/Modem for Windows | EA | 0.00 | 0.00 |
| 1 | 1 | 313-1476 | 48X Max Variable CD-ROM Drive, Factory Install | EA | 0.00 | 0.00 |
| 1 | 1 | 313-2758 | Integrated Audio | EA | 0.00 | 0.00 |
| 1 | 1 | 313-2198 | No Speaker Requested | EA | 0.00 | 0.00 |
| 1 | 1 | 410-0144 | Symantec Norton Antivirus 2003 CD With Documentation, Retail Version | EA | 0.00 | 0.00 |
| 1 | 1 | 365-1234 | Readyware Installation Fee | | | |
| 1 | 1 | 412-0298 | MusicMatch 7.1x Basic | EA | 0.00 | 0.00 |
| 1 | 1 | 412-0271 | Dell Picture Studio Image Expert Standard,Dimension | EA | 0.00 | 0.00 |
| 1 | 1 | 412-0273 | Dell Picture Studio Paint Shop Pro Try and Buy,Dimension | EA | 0.00 | 0.00 |
| 1 | 1 | 420-3224 | Broadband Icon for Inspiron | EA | 0.00 | 0.00 |
| 1 | 1 | 412-0445 | AOL 8.0 PUB | EA | 0.00 | 0.00 |
| 1 | 1 | 412-0360 | Real Network RealOne Player Basic,Version 6,US English | EA | 0.00 | 0.00 |
| 1 | 1 | 412-0402 | Word Perfect Office 11 | EA | 0.00 | 0.00 |
| 1 | 1 | 950-1260 | *Type 3- Third Party At Home Service, 24x7 Technical Support, Initial Year | EA | 0.00 | 0.00 |
| 1 | 1 | 950-3337 | *1 Year Limited Warranty | | | |
| 1 | 1 | 950-9797 | *No Warranty, Year 2 and 3 | EA | 0.00 | 0.00 |
| 1 | 1 | 412-0360 | Soft Contracts - Banctec | EA | 0.00 | 0.00 |
| 1 | 1 | 970-1017 | *NO WARRANTY COMPLETE CARE | EA | 0.00 | 0.00 |
| 1 | 1 | 462-1662 | 48x/24x/48x CD-RW Drive | EA | 0.00 | 0.00 |

| | | |
|---|---|---|
| Ship &/or Handling | $ | 0.00 |
| Subtotal | $ | 1,494.00 |
| Taxable: | Tax | |
| $ 1,494.00 | $ | 123.28 |
| Invoice Total | $ | 1,617.28 |
| VISA | $ | 1,617.28 |
| | $ | |
| | $ | |
| Balance Due | $ | 0.00 |

Service contract may be subject to sales tax.
..y on-site or other service covers Dell system hardware only.
..LEASE KEEP ORIGINAL BOX FOR ALL RETURNS. COMPREHENSIVE ONLINE CUSTOMER CARE
..FORMATION AND ASSISTANCE IS A CLICK AWAY AT WWW.DELL.COM/PUBLIC-ECARE TO
..NSWER A VARIETY OF QUESTIONS REGARDING YOUR DELL ORDER.

DELL

This is your ACKNOWLEDGMENT                          Page: 2 of 2

FID Number: 74-2616805
Sales Rep: MICHAEL HODGKISS
For Sales: (800)695-8133
Sales Fax: (877)204-8109
For Customer Service: (800)695-8133
For Technical Support: (800)695-8133
Dell Online: http://www.dell.com

Customer Number: 034441005
Purchase Order: NAONLINECUST
Order Number: 461602352
Order Date: 09/05/03

23 01 V 01 01 N

Invoice Number: 461602352

Invoice Date: 09/12/03
Payment Terms: VISA
Shipped Via: LTL 5 DAY OR LESS
Waybill Number: ZZ3070050933574

SOLD TO:

VIVIAN FIORI
FIORI VIVIAN

SHIP TO:
VIVIAN FIORI
FIORI VIVIAN

PLEASE REVIEW IMPORTANT TERMS & CONDITIONS ON THE REVERSE SIDE OF THIS INVOICE

| Order | Shipped | Item Number | Description | Unit | Unit Price | Amount |
|-------|---------|-------------|-------------|------|------------|--------|
| 1 | 1 | 460-9055 | DHS Instant $100 Off Discount(s) and/or coupo | EA | 0.00 | 0.00 |
|   |   | System Service Tags  B3YNG31 | | | | |



:EL Rev 9/2002)

# EXHIBIT 2

This is your **ACKNOWLEDGEMENT**

Page 1 of 2

FID Number: 74-2616805
Sales Rep: JORGE CALDERON
For Sales: (800) 695-8133
Sales Fax: (877) 204-8109
Customer Service: (800) 695-8133
Technical Support: (800) 695-8133
Dell Online: http://www.dell.com

Customer Number: 41742381
Purchase Order:
Order Number: 694349854
Order Date: 03/23/04

Invoice Number: 694349854

Invoice Date: 04/09/04
Payment Terms: VISA
Shipped Via: LTL 5 DAY OR LESS
Waybill Number: 8AT9894214207974

23 01 V 01 01 N

**SOLD TO:**
VIVIAN FIORI
VIVIAN FIORI

**SHIP TO:**
VIVIAN FIORI
VIVIAN FIORI

| Order | Shipped | Item Number | Description | Unit | Unit Price | Amount |
|---|---|---|---|---|---|---|
| 1 | 1 | 221-3725 | Dimension 4600 Series, Intel Pentium 4 Processor at 2.8GHz | EA | 770.00 | 770.00 |
| 1 | 1 | 462-1656 | 512MB DDR SDRAM at 333MHz | EA | 0.00 | 0.00 |
| 1 | 1 | 310-1582 | Dell Quiet Key Keyboard | EA | 0.00 | 0.00 |
| 1 | 1 | 462-8471 | 17 in (17 in viewable) E172FPB Flat Panel Display | EA | 0.00 | 0.00 |
| 1 | 1 | 320-2870 | Integrated Intel Extreme Graphics 2 | EA | 0.00 | 0.00 |
| 1 | 1 | 341-0834 | 80GB 7200 RPM Ultra ATA Hard Drive | EA | 0.00 | 0.00 |
| 1 | 1 | 341-0217 | USB Memory Key,64MB | EA | 0.00 | 0.00 |
| 1 | 1 | 340-8688 | No Floppy Drive Requested | EA | 0.00 | 0.00 |
| 1 | 1 | 313-7222 | Dell Application Back-up CD, Factory Install | EA | 0.00 | 0.00 |
| 1 | 1 | 420-1921 | Microsoft Windows XP Home Edition,Service Pack 1,English | EA | 0.00 | 0.00 |
| 1 | 1 | 412-0409 | Generic Dimension Dell Support | EA | 0.00 | 0.00 |
| 1 | 1 | 310-4037 | Dell USB Optical Mouse | EA | 0.00 | 0.00 |
| 1 | 1 | 430-0472 | 10/100/1000 Networking Card | EA | 0.00 | 0.00 |
| 1 | 1 | 313-2279 | 56K PCI Data Fax Modem | EA | 0.00 | 0.00 |
| 1 | 1 | 462-5817 | 48X Max CD-RW Drive | EA | 0.00 | 0.00 |
| 1 | 1 | 313-0917 | 16X DVD-Rom Drive | EA | 0.00 | 0.00 |
| 1 | 1 | 430-0594 | Cyberlink Software Decoding for DVD Drives | EA | 0.00 | 0.00 |
| 1 | 1 | 462-7810 | Info,16X DVD ROM and 48X CDRW | EA | 0.00 | 0.00 |
| 1 | 1 | 313-1932 | SoundBlaster Live! with 5.1 Support | EA | 0.00 | 0.00 |
| 1 | 1 | 313-6010 | Factory Installed Audio | EA | 0.00 | 0.00 |
| 1 | 1 | 313-2201 | AS500 Sound Bar Speaker with Power Adapter for E152,E172FP Flat Panel Display | EA | 0.00 | 0.00 |
| 1 | 1 | 365-1234 | Readyware Installation Fee | EA | 0.00 | 0.00 |
| 1 | 1 | 410-0632 | Symantec Norton Antivirus 2004 CD With Documentation,Retail Version,Factory Installed | EA | 0.00 | 0.00 |
| 1 | 1 | 412-0516 | Dell Jukebox powered by Music Match | EA | 0.00 | 0.00 |

PLEASE KEEP ORIGINAL BOX FOR ALL RETURNS. COMPREHENSIVE ONLINE CUSTOMER CARE IN
FORMATION AND ASSISTANCE IS A CLICK AWAY AT WWW.DELL.COM/PUBLIC-ECARE TO ANSWER
A VARIETY OF QUESTIONS REGARDING YOUR DELL ORDER.

| | | |
|---|---|---|
| Ship. &/or Handling | $ | 90.00 |
| Subtotal | $ | 860.00 |
| Taxable:  $        860.00 | Tax  $ | 62.33 |
| Invoice Total | $ | 922.33 |
| VISA | $ | 922.33 |
| | $ | |
| | $ | |
| Balance | $ | 0.00 |



**This is your ACKNOWLEDGEMENT**

Page 2 of 2

FID Number: 74-2616805
Sales Rep: JORGE CALDERON
For Sales: (800) 695-8133
Sales Fax: (877) 204-8109
Customer Service: (800) 695-8133
Technical Support: (800) 695-8133
Dell Online: http://www.dell.com

Customer Number: 41742381
Purchase Order:
Order Number: 694349854
Order Date: 03/23/04

Invoice Number: 694349854

Invoice Date: 04/09/04
Payment Terms: VISA
Shipped Via: LTL 5 DAY OR LESS
Waybill Number: 6AT9894214207974

23 01 V 01 01 N

SOLD TO:
VIVIAN FIORI
VIVIAN FIORI

SHIP TO:
VIVIAN FIORI
VIVIAN FIORI

PLEASE SEE IMPORTANT TERMS & CONDITIONS ON THE BACK/REVERSE SIDE OF THIS INVOICE

| Order | Shipped | Item Number | Description | Unit | Unit Price | Amount |
|-------|---------|-------------|-------------|------|-----------|--------|
| 1 | 1 | 412-0521 | Dell Photo Album Standard | EA | 0.00 | 0.00 |
| 1 | 1 | 420-3224 | Broadband Icon for Inspiron | EA | 0.00 | 0.00 |
| 1 | 1 | 412-0625 | Dell/My Way Home Page | EA | 0.00 | 0.00 |
| 1 | 1 | 412-0590 | AOL 9.0 EPP | EA | 0.00 | 0.00 |
| 1 | 1 | 412-0380 | Real Network RealOne Player Basic,Version 6,US English | EA | 0.00 | 0.00 |
| 1 | 1 | 412-0395 | Word Perfect Productivity Pack | EA | 0.00 | 0.00 |
| 1 | 1 | 412-0561 | Money 2004 Standard Version for Dimension | EA | 0.00 | 0.00 |
| 1 | 1 | 412-0555 | Microsoft Enclyclopedia,2004 for Dimension | EA | 0.00 | 0.00 |
| 1 | 1 | 950-1260 | *Type 3- Third Party At Home Service, 24x7 Technical | EA | 0.00 | 0.00 |
| | | | Support, Initial Year | EA | 0.00 | 0.00 |
| 1 | 1 | 950-3337 | *1 Year Limited Warranty | | | |
| 1 | 1 | 950-9797 | *No Warranty, Year 2 and 3 | EA | 0.00 | 0.00 |
| 1 | 1 | 412-0360 | Soft Contracts - Banctec | EA | 0.00 | 0.00 |
| 1 | 1 | 420-4125 | Turbo Tax 2003 | EA | 0.00 | 0.00 |
| 1 | 1 | 412-0518 | Dell Media Experience | EA | 0.00 | 0.00 |
| 1 | 1 | 462-1590 | DHS Instant $150 Off | EA | 0.00 | 0.00 |
| | | System Service Tags | 9WNRN41 | EA | 0.00 | 0.00 |

# EXHIBIT 3

FID Number: 74-2683839
Sales Rep: ANDREA BIRD
For Sales: (800)474-3355
Sales Fax: (800)317-3355
Customer Service: (800)624-9897
Technical Support: (800)624-9896
Dell Online: http://www.dell.com

Customer Number: 010563207
Purchase Order:
Order Date: 08/31/00

19 01 M 01 01 N

Invoice Number: |425431269       |

Invoice Date: 09/01/00
Payment Terms: MASTER CARD
Shipped Via: UNAUTHORIZED
Waybill Number: E3W5554211712418

SOLD TO:
    39.1.12804 1 AB 0.270 73288S11.OCE 1 of 2
PAM NEWPORT
NEWPORT PAM

SHIP TO:
PAM NEWPORT
NEWPORT PAM

PLEASE SEE IMPORTANT TERMS & CONDITIONS ON THE REVERSE SIDE OF THIS INVOICE

| er | Shipped | Item Number | Description | Unit | Unit Price | Amount |
|---|---|---|---|---|---|---|
| 1 | 1 | 220-7469 | Dimension 4100 Series,Pentium III Processor at 800 MHz | EA | 1,517.00 | 1,517.00 |
| 1 | 1 | 310-0801 | Microsoft Internet Keyboard Dell Edition,Factory Install | EA | 0.00 | 0.00 |
| 1 | 1 | 310-3180 | Dell Mouse Pad, included in your order.<br>Thank you for choosing Dell. | EA | 0.00 | 0.00 |
| 1 | 1 | 310-8124 | Microsoft Intellimouse, Factory Install | EA | 0.00 | 0.00 |
| 1 | 1 | 310-8890 | MicroSoft Millenium Upgrade Coupon,Factory Install | EA | 0.00 | 0.00 |
| 1 | 1 | 310-8921 | EducateU Information/TechSheet,English,Dimension,Used for<br>EducateU WEB Based Training | EA | 0.00 | 0.00 |
| 1 | 1 | 311-7001 | 128MB SDRAM at 133MHz,Factory Install | EA | 0.00 | 0.00 |
| 1 | 1 | 313-0504 | 8x/4x/32x CD-RW, Factory Install | EA | 0.00 | 0.00 |
| 1 | 1 | 313-3925 | harman/kardon HK Speakers Factory Install | EA | 0.00 | 0.00 |
| 1 | 1 | 313-6170 | Soundblaster 64V PCI Sound Card,Factory Install | EA | 0.00 | 0.00 |
| 1 | 1 | 313-8626 | Conexant V.90/56K Telephony Modem for Windows<br>Factory Install | EA | 0.00 | 0.00 |

vice contract may be subject to sales tax.
on-site or other service covers Dell system hardware only.
. CATALOG SALES COLLECTS TAX IN FL,KY,NC,NV,TN & TX.FOR OTHER STATES THE TAX
WN RELATES ONLY TO 3RD PARTY SERVICE CONTRACTS AND THE BUYER IS RESPONSIBLE
REMITTING ANY ADDITIONAL TAX DIRECTLY TO THE TAXING AUTHORITIES.



Invoice Number: 425431269
Customer Number: 010563207
Purchase Order:
Associated Order: 425431277

| Ship. &/or Handling | $ | 95.00 |
|---|---|---|
| Subtotal | $ | 1,612.00 |
| Taxable: $  233.00 | Tax: $ | 16.31 |
| Total | $ | 1,628.31 |
| MASTER CARD | $ | 1,628.31 |
|  | $ |  |
|  | $ |  |
| Balance | $ | 0.00 |

| | | | |
|---|---|---|---|
| **FID Number:** 74-2683839 | **Customer Number:** 010563207 | **Invoice Number:** |425431269 | |
| **Sales Rep:** ANDREA BIRD | **Purchase Order:** | | |
| **For Sales:** (800)474-3355 | **Order Date:** 08/31/00 | | |
| **Sales Fax:** (800)317-3355 | | **Invoice Date:** 09/01/00 | |
| **Customer Service:** (800)624-9897 | 19  01  M  01  01  N | **Payment Terms:** MASTER CARD | |
| **Technical Support:** (800)624-9896 | | **Shipped Via:** UNAUTHORIZED | |
| **Dell Online:** http://www.dell.com | | **Waybill Number:** E3W5554211712418 | |

**SOLD TO:**

39.1.12804 1 AB 0.270 73288S11.OCE 2 of 2

PAM NEWPORT
NEWPORT PAM

**SHIP TO:**

PAM NEWPORT
NEWPORT PAM

PLEASE SEE IMPORTANT TERMS & CONDITIONS ON THE REVERSE SIDE OF THIS INVOICE

| Shipped | Item Number | Description | Unit | Unit Price | Amount |
|---|---|---|---|---|---|
| 1 | 320-6888 | 17"(16.0 Viewable,.26dp) M781, Factory Install | EA | 0.00 | 0.00 |
| 1 | 320-7211 | 16MB ATI Rage 128 Pro,Factory Install | EA | 0.00 | 0.00 |
| 1 | 340-2409 | 3.5",Floppy Drive,Factory Install | EA | 0.00 | 0.00 |
| 1 | 340-9909 | 20.4GB 7200 RPM Ultra ATA Hard Drive,Factory Install | EA | 0.00 | 0.00 |
| 1 | 412-5430 | Software,Music Match 5.10, Original Equipment Manufacturer,United States, Factory Install | EA | 0.00 | 0.00 |
| 1 | 412-5620 | Norton Antivirus 2000, version 5.0 with CD & Documentation, English,Factory Install | EA | 0.00 | 0.00 |
| 1 | 412-5933 | Spire 2.0,No Media,OEM,English | EA | 0.00 | 0.00 |
| 1 | 420-0300 | Windows 98 Second Edition Factory Install | EA | 0.00 | 0.00 |
| 1 | 430-0591 | No Network Card Requested, Dell Dimension | EA | 0.00 | 0.00 |
| 1 | 460-8057 | AOL 5.0 Yearly Prepaid ISP, Factory Install | EA | 0.00 | 0.00 |
| 1 | 460-8320 | No Zip Drive Requested | EA | 0.00 | 0.00 |
| 1 | 900-1600 | *Type 3 Contract – Next Business Day Parts & Labor On-Site Response Initial Year | EA | 0.00 | 0.00 |
| 1 | 900-1602 | *Type 3 Contract – Next Business Day Parts & Labor On-Site Response 2YR Extended | EA | 0.00 | 0.00 |
| 1 | 412-2736 | MS Works Suite 2000 Standard, CD & Documentation,US English, Factory Install | EA | 0.00 | 0.00 |
| | System Service Tags | HQHC101 | | | |