Charles D. Chalmers, Esq. (State Bar No. 50263)
851 Irwin Street, Suite 200
San Rafael, California 94901
Tel: (415) 860-8134
Fax: (801) 382-2469
cchalmers@allegiancelit.com
Attorney for Objector

FILED
2011 FEB 18 A 10:01
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

VIVIAN FIORI ARIZA, et al.,

    Plaintiffs,

vs.

DELL INC., a corporation, et al.,

    Defendants.

Civil Action No. C09-01518 JW

**OBJECTIONS OF NEIL SCHEIMAN TO SETTLEMENT AND AWARD OF ATTORNEYS' FEES**

DATE: 3-21-11
TIME: 9 a.m.

I.    **INTRODUCTION**

    These objections address a single aspect of this settlement. As recognized by some courts, pure claims-made settlements such as this one, when the amount of offered compensation is very modest, present the distinct possibility of a result that fails the fairness requirement and also fails to vindicate the general purposes of consumer class actions. One district court rejected a settlement under this analysis, and Scheiman relies heavily on that decision. *Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34 (Dist. Maine 2005)("*Sylvester*") Several other courts have indicated that the appropriate response to this problem is to base an award of attorneys' fees on the compensation actually received by the class, rather than on the theoretical amount available.

Objections                                        1

Scheiman urges that, absent proof of actual claimed compensation which in total is fair, reasonable and adequate under the standard analysis, the settlement must be rejected. This settlement lacks a feature, a minimum value that if not consumed by claims is distributed under the *cy pres* doctrine, which is well recognized as a method of avoiding the worst case potential of claims-made settlements. Should the court determine to approve the settlement over this objection, the court should assess the "result achieved" factor for the fee award based on actual claims, and not upon the maximum possible value of claims.

## II. ISSUES NOT RAISED BY THIS OBJECTION

To maintain focus, Scheiman specifies those issues which are not part of his objections. He does not contend that the individual compensation is inadequate. It appears fair. He does not challenge the notice procedures, although he suggests the court needs more information about the estimate of the class size and the generation of Dell's contact list. This information may be relevant to the likelihood of an extremely low claims experience. Scheiman does not claim there has been collusion in the negotiation of the settlement. He acknowledges that the counsels for the class are experienced and have vigorously pursued the cases. He does not challenge the injunctive relief as inadequate, and acknowledges that it serves as a separate benefit relevant to the determination of an attorneys' fee award. Scheiman does not challenge the settlement release.

## III. THE ALTERNATE JUDICIAL RESPONSES TO LOW CLAIMS RATES

In *Sylvester* the court received testimony from an experienced claims administrator that "claim return rates are 10% or less in the vast majority of settlements that require filing a notice of claim." *Sylvester*, at 44. The rates in that case were 10.8 percent with nearly hundred percent deliveries of notice and compensation of $40, and then with a second notice and compensation increased to $52 it rose to 19.7 percent. *Id.* at 43-44. Scheiman's counsel just participated in a case where the available compensation was $3, the class size was approximately 3.16 million members, the email notice program appeared very effective and there were 17,400 total claims. (Declaration of Chalmers, para. 1.) That is a rate of less than 1%. In a recent Northern District case, involving a good direct notice program, compensation valued at $15.50 per claim, and 3.8 million class members the filed claims were 29,168 or less than 1%. *Yeagley v. Wells Fargo & Company*, 2008 U.S. DIST LEXIS 5040, *5 (N.D.

Cal. 2008)("*Yeagley*"), rev'd, *Yeagley v. Wells Fargo & Co.*, 2010 U.S. App. LEXIS 3584 (9TH Cir. 2010) Another recent case reports claims worth $6M against a claims-made settlement valued at $200M for a rate of 3%. *In Re TJX Companies Retail Security Breach Lit.*, 584 F. Supp. 2d 395, 401, 406 (Dist. Mass. 2008)("*TJX*"); see also, *Parker v. Time Warner Entertainment Co., L.P.*, 631 F.Supp.2d 242, 250-251 (E.D.N.Y. 2009)(Class of 7.2 million eligible for in kind compensation or $5 – 459,000 claims or about 7%)

## A. Rejection of the Settlement.

The court in *Sylvester* refused to approve the settlement, primarily because of the reversion of unclaimed funds to the defendants, the agreement of defendants not to oppose a fairly generous fee award to the class counsel (so-called "clear sailing" provision), and the low claims rate. *Sylvester*, at 47, 52.[1] Scheiman can't do the *Sylvester* court's analysis justice by excerpting quotes, and urges this court to consider the decision at length. Rejection of the present settlement is the proper course based on the same analysis, with the added factor that the claims experience here will certainly be far worse than in *Sylvester*. It is notable that *Sylvester*, as all the other decisions cited here, cites to remarks by Justice Sandra Day O'Connor.

> However, by including a clear sailing provision, plaintiffs' counsel's financial incentives are "decoupled . . . from those of the class" thereby "increasing the risk that the actual distribution will be misallocated between attorney's fees and plaintiffs' recovery." *International Precious Metals Corp. v. Waters, 530 U.S. 1223, 147 L. Ed. 2d 265, 120 S. Ct. 2237 (2000)* (Mem.) (Justice O'Connor's Statement respecting denial of writ of certiorari).

*Sylvester*, at 45-46. Justice O'Conner further explained that reversionary settlements that allow attorneys' fees to be based upon the total compensation available may "potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class" and, in turn, "could encourage the filing of needless lawsuits." *International Precious Metals Corp.*, 530 U.S. at 1223.[2]

---

[1] The *Sylvester* court subsequently approved an improved settlement. *Sylvester v. CIGNA Corp.*, 383 F. Supp. 2d 194 (D. Me., 2005)

[2] This case has involved two federal courts and one state court in years of proceedings, including appellate proceedings. If the compensation delivered to the class is trivial, the only results of this

Objections 3

**B. Awarding Attorneys' Fees Based on the Benefits Actually Claimed.**

*Yeagley*, *TJX* and *Parker* each responded to the same problem with an analysis indicating that the solution is to tie the attorneys' fee award to the amount of benefits actually received by the class. In *Yeagley* Judge Breyer substantial reduced the fee because of the low claims result. *Yeagley*, at *17-19. However, there is a strong indication that he might have followed the *Sylvester* approach but for very special circumstances. He emphasizes that he approved the essentially valueless settlement because the plaintiffs' case was extremely weak and would almost certainly have been subject to summary judgment. *Yeagley*, at *6-8, *13-14. He also states he would not have approved the settlement if the alternative was the necessity to treat the settlement as worth the full claim potential. *Yeagley*, at *22-23.

The decision in *TJX* is the best analysis supporting the concept that the solution is to tie an award of fees to the actual claims experience. *TJX*, at 406-407. As with *Sylvester*, Scheiman urges the court to consider the decision in full. A particularly important part of this decision is its rejection of four different decisions, including one by the U.S. Supreme Court, as standing for the proposition that those decision require a fee award based on the full potential claims benefit. *TJX*, at 402-403. In fact, the Supreme Court decision expressly described that it was not reaching the claims-made situation presented in *Yeagley* and here. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 480 n.5. (1980)

**C. Guidance From the Courts of Appeal is Lacking.**

Class counsel assert that a Ninth Circuit decision says "the total potential amount of benefits available to the class is used to calculate the percentage." Memo, at 22 (citing *Williams v. MGM-Pathe Communications Co.,* 129 F.3d 1026 (9th Cir. 1997). That decision does so hold in the particular circumstances of that case. That reading, as applied to a claims-made settlement, has been rejected. *Yeagley* rejects this reading of *Williams* pointing out how specifically the holding is based on the fact that the defendants, who were resisting an award based on the total potential of claims, had agreed in the settlement agreement that the fee award would be based on the total potential value. *Yeagley*, at *21-22 (citing *Williams*, at 1027.) As in *Yeagley*, the settlement agreement here does not so provide. *Williams* is also one

---

use of the courts will be the money earned by counsel, the relatively modest injunctive relief and a full release to the defendants.

of the four cases that *TJX* rejects as supporting the contention that total possible benefits must, as a matter of law, be used. *TJX*, at 402-403.

While *Williams* does not consider any of the problems with claims-made settlement that are considered in the decisions discussed here, one Court of Appeal decision does consider those problems. A Fifth Circuit decision rejects the idea that the potential value of claims that can be made is the equivalent of a "common fund" for application of the percentage approach to a fee award. *Strong v. BellSouth Telcoms.*, 137 F.3d 844, 851-852 (5th Cir. 1998)

## IV. OBSERVATIONS ON THE CLAIMS PROCESS

As it evident, Scheiman believes that the court must have the claims experience, at least to date, to properly evaluate the pending motions. There is good reason to expect a very low claims rate. The compensation is very modest – assuming that reacting to the notice and filing a claim would take no less than an hour a claimant would be valuing their time at the minimum wage or less.

We should also know how the class size estimates were developed. Nothing submitted thus far indicates how the parties could know which buyers were purchasing primarily for personal, family or household use as opposed to business use. Scheiman's counsel has reviewed some Dell interrogatory answers available on the docket that present numbers for sales to "individuals." (Decl. Chalmers, para. 2.) From this incomplete information he estimates that total sales to individuals during the class period in California and Arizona are approximately 7 million. *Id.* The parties present an estimated total of people in the three subgroups as 4.7 million. There should be a clear record of how these estimates were formed.

We also should also know a great deal more about the Dell contact list. This list contains "3,462,488 potential class members." Decl. of Jonathan Reid, P 3, Docket No. 197. The list contains approximately 1.8 million email addresses, but about 40% of these were undeliverable. *Id.* para. 4 & 6. Those without any, or a functioning, email received postcard notice. This notice makes it easier for a class member to make a claim. Otherwise the class member has to produce information which may not be available. We should know the numbers on the Dell contact list for each year in the period, and we should know how a

larger list, if available, was narrowed. We must be sure that the Dell contact list does not contain purchasers who were eliminated from total sales of around 7 million to arrive at the class estimate of 4.7 million.

Earlier purchasers, say the years 2000 to 2004, would be at a substantial disadvantage in making a claim. A rough analysis indicates this may be approximately 3 million purchasers. (Decl. Chalmers, para. 2.) Unless they are on the Dell contact list and received either the email or postcard, they are required to provide information, in Part II of the claim form, which many are unlikely to have. This includes invoice number and customer number from the invoice, as well as date of purchase. It is extremely unlikely purchasers in the earliest years even have the computer, much less the invoice. As purchasers for personal use, they have no motivation or requirement to keep such records for tax purposes. The claims form also requires all class members to remember if they received just the standard one year contract, or purchased extended coverage. Five to ten years later such memories are likely dim if not gone.

## V. A CY PRES REMEDY CAN ADDRESS THE PROBLEM

An adequate minimum amount, which if not exhausted by claims will be distributed in a manner consistent with class interests, can eliminate the problem. Class counsel are familiar with this mechanism. *Hall v. AT&T Mobility LLC*, 2010 U.S. Dist. LEXIS 109355, *30-33 (Dist. N.J. 2010); *Larson v. Sprint Nextel*, 2010 U.S. Dist. LEXIS 3270, *6 (Dist. N.J. 2010) However, such a provision can, in some circumstances, aggravate the potential for conflict between class interests and those of class counsel. The defendant in *Sylvester* acknowledged that it would have been willing to agree to a settlement that had no reverter provision, but that it would only do that for a smaller settlement total. *Sylvester*, at 49.

If class counsel can base their fee request on the potential recovery in a claims-made settlement they have an obvious motivation to do that rather than have a lower, probably substantially lower, minimum amount. See, *TJX*, at 405.

## VI. CONCLUSION

The area of concern raised by this objection needs clarification, and Scheiman hopes this case will be a step in providing it. If as a matter of law the court need only consider the individual compensation made available to class members, without regard to the potential

Objections 6

claims by the class, this settlement is fair. If the court must consider the actual or likely claims experience, more information is required to properly consider the fairness of this settlement. That information certainly includes the claim experience to date. If fairness can't properly be based solely on the individual compensation offered, it is appropriate to require counsel to describe if negotiations considered a fixed fund, or a *cy pres* remedy.

If this Court concludes that under *Williams*, or any other authority, counsel's fee may be evaluated on the theoretical maximum of potential claims, as though that number were a "common fund," the amount requested in within a range of fairness. Counsel undoubtedly spent the time in three different cases, particularly considering Dell's vigorous defense. However, acknowledging this simply serves to highlight the problem. If the pure claims-made settlement is acceptable, without regard to actual claims, defense counsel are motivated to put class counsel under maximum strain so that at some point they will be amenable to a settlement that provides them with compensation for that effort. This in turn, as noted by Justice O'Connor, and the cases discussed herein, may lead to overburdening the court system with cases that ultimately provide benefit only to both sides' counsel and to the defendant in the form of a release.

SCHEIMAN'S COUNSEL INTENDS TO APPEAR AT THE FAIRNESS HEARING.

Dated: February 16, 2011

*Charles Chalmers*
Charles D. Chalmers

## PROOF OF SERVICE

I, Charles D. Chalmers, do declare:

I am over the age of eighteen and not a party to this action. I am a resident of the county where the mailing took place. My business address is 851 Irwin Street, Suite 200, San Rafael, CA 94901. On the date stated below, I served the pleading to which this Proof of Service is attached by sending to the email addresses stated in the Notice.

| | |
|---|---|
| STRANGE & CARPENTER<br>Brian R. Strange<br>Gretchen Carpenter<br>12100 Wilshire Blvd., Suite 1900<br>Los Angeles, CA 90025<br>Telephone: (310) 207-5055<br>gcarpenter@strangeandcarpenter.com | RANDALL S. ROTHSCHILD, APC<br>Randall S. Rothschild<br>12100 Wilshire Blvd., Suite 800<br>Los Angeles, CA 90025<br>Telephone: (310) 806-9245<br>randy.rothschild@verizon.net |
| REEVES & BRIGHTWELL LLP<br>Paul Schlaud<br>221 W. 6th Street, Suite 1000<br>Austin, TX 78701<br>Telephone: (512) 334-4500<br>pschlaud@reevesbrightwell.com | ALSTON & BIRD LLP<br>Kristy McAlister Brown<br>1201 West Peachtree Street, N.W.<br>Atlanta, GA 30309<br>Telephone: (404) 881-7584<br>kmbrown@alston.com |
| ROBERTS, RASPE & BLANTON LLP<br>Michael S. Blanton<br>445 S. Figueroa Street, Suite 3200<br>Los Angeles, CA 90071<br>Telephone: (213) 430-4777<br>mblanton@rrbllp.com | |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at San Rafael, CA on February 17, 2011.

*/s/ Charles Chalmers*
Charles D. Chalmers