Charles D. Chalmers, Esq. (State Bar No. 50263)
851 Irwin Street, Suite 200
San Rafael, California 94901
Tel: (415) 860-8134
Fax: (801) 382-2469
cchalmers@allegiancelit.com
Attorney for Objector



FILED

2011 FEB 18 A 10: 01

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| VIVIAN FIORI ARIZA, et al., | Civil Action No. C09-01518 JW |
| Plaintiffs, | **DECLARATION OF CHARLES CHALMERS IN SUPPORT OF OBJECTIONS** |
| vs. | |
| DELL INC., a corporation, et al., | DATE: 3-21-11<br>TIME: 9 a.m. |
| Defendants. | |

I, Charles Chalmers, do declare:

1. I recently filed objections for class members in *In re Classmates.com Consolidated Litigation*, No. CV09-45RAJ, Western District of Washington. The proposed settlement in that case provided a portion of the class with compensation of $3.00 if the class member filed a valid claim. The defendant estimated that group was composed of approximately 3.16 million people. Shortly before the scheduled final fairness hearing the claims administrator reported to the court that 17,412 class members filed for the $3 dollar compensation. The claims administrator also reported greater than 90% success in delivering notice to class members by email. Attached as Ex. A is the first page of the Settlement Agreement and the page which contains the estimate. I copied these from the settlement

1

Decl. of Charles Chalmers In Support of Objection

website at http://www.cmemailsettlement.com/sa.pdf. Attached as Ex. B is the declaration of the administrator, without exhibits, which I downloaded through the PACER system. The court in the *Classmates* case refused to approve the settlement. It issued only a minute order to reflect that decision, saying it would issue an explanation at some future time. A copy of this minute order is attached as Ex. C.

    2.    Attached as Ex. D are two pages from interrogatory responses by Dell in this action. I have copied these from Docket No. 152 which is related to a motion to compel by plaintiffs. This shows Dell reporting 4,452,753 computers sold to "individuals" in California between 2003 and 2009. I attempted to estimate the total number of sales to individuals during the class period from this data. I added 500,000 for each of 2000, 2001 and 2002. I also added 300,000 for the seven months of 2010. That produces a total for California of 6,252,753. The 2009 population of California is approximately 37 million and for Arizona it is approximately 6.6 million. To complete the estimate I added 15% to account for Arizona sales, for a total rough estimate for both states of 7.1 million. The three groups covered by the settlement are estimated to include 4.7 million sales. It appears that if a consumer purchased a one year or extended at home service contract and requested and received the next day service, they are part of the class but are not entitled to claim any compensation. These facts present the question of an explanation for the difference between the rough estimate of 7.1 million sales to individuals and the 4.2 million estimate of those entitled to compensation. Does the difference reflect in whole or part an estimate of those who requested next day service and received it? Does it reflect an estimate of those individuals who purchased primarily for a business use, and if so, how was that estimate developed?

    3.    I have purchased computers, both laptop and desktop, repeatedly during the class period. I believe in total I purchased at least six such computers. All those purchases were made in my individual name, but they were all for business use. I have found it necessary or desirable to replace computers approximately every three years in order to have the advantages of improvements in technology such a disk space, wireless access and ability to handle updated software.

Decl. of Charles Chalmers In Support of Objection

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: February 16, 2011

*Charles Chalmers*
Charles D. Chalmers

EXHIBIT A

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Settlement Agreement") is entered into, subject to final approval of the Court and entry of final judgments of dismissal with prejudice, between lead plaintiffs Anthony Michaels and David Catapano, individually ("Lead Plaintiffs"), and the Settlement Class and Settlement Subclass, as defined below, represented by Lead Plaintiffs (collectively, "Plaintiffs"), on the one hand, and Classmates Online, Inc., Classmates Media Corporation, and United Online, Inc. (collectively, "Defendants"), on the other hand. Plaintiffs and Defendants are, at times, individually referred to herein as a "Party" and collectively as the "Parties."

### RECITALS

A. On October 30, 2008, plaintiff Anthony Michaels filed a putative class action complaint against Defendants in the Los Angeles Superior Court for the County of Los Angeles (the "Michaels Lawsuit"). The allegations in the Michaels Lawsuit are incorporated herein by reference. The Michaels Lawsuit was removed to the United States District Court for the Central District of California on December 5, 2008, and by stipulation of the parties was transferred to the United States District Court for the Western District of Washington on January 5, 2009. The Michaels Lawsuit was assigned Western District of Washington Case Number 09-cv-0045.

B. On December 19, 2008, plaintiff Xavier Vasquez filed a putative class action complaint against Defendants in King County Superior Court for the State of Washington (the "Vasquez Lawsuit"). The allegations in the Vasquez Lawsuit are incorporated herein by reference. The Vasquez Lawsuit was removed to the United States District Court for the Western District of Washington on January 23, 2009. The Vasquez Lawsuit was assigned Western District of Washington Case Number 09-cv-0104.

C. On April 30, 2009, the Honorable Richard A. Jones of the United States District Court for the Western District of Washington consolidated the Michaels Lawsuit and the Vasquez Lawsuit. The Court captioned the consolidated lawsuit *In re Classmates.com*

Judgment including any collateral attack on the Settlement Agreement or the Final Approval Order and Judgment.

## 3. DEFINITION OF THE SETTLEMENT CLASS AND THE SETTLEMENT SUBCLASS

3.1. For purposes of this Settlement Agreement only, the Parties agree to the certification, as discussed in Section 6.3 of this Settlement Agreement, of a Settlement Class and Settlement Subclass as defined below:

**"Settlement Class"**

> All Persons, excluding Settlement Subclass members, residing in the United States who were registered with or subscribed to www.classmates.com at any time between October 30, 2004 and entry of the Preliminary Approval Order.

**"Settlement Subclass"**

> All Persons residing in the United States who registered with or subscribed to www.classmates.com between January 1, 2007 and entry of the Preliminary Approval Order and who paid for a Gold Membership subscription to www.classmates.com (and did not previously receive a refund of such payment) as a result of:
>
> 1. Upgrading to a Gold Membership through the process on Classmates.com of seeking to see who visited their Guestbook; or
>
> 2. Upgrading to a Gold Membership after clicking on a link to Classmates.com in a Guestbook email, or Connections email that included a Guestbook subject line, and upgrading to a Gold Membership within the same session activated by clicking on that link or within the same day of clicking on that link; or
>
> 3. Upgrading to a Gold Membership within the same day of receiving a Guestbook email or Connections email that included a Guestbook subject line.

3.2. According to Defendants' analysis and calculations, the Settlement Subclass is expected to be comprised of approximately 3.16 million individuals. This estimated number of individuals comprising the Settlement Subclass is a material term of this Settlement Agreement.

EXHIBIT B

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE CLASSMATES.COM CONSOLIDATED LITIGATION | MASTER CASE NO. C09-45RAJ<br><br>DECLARATION OF JENNIFER M. KEOUGH REGARDING NOTICE DISSEMINATION AND SETTLEMENT ADMINISTRATION |

JENNIFER M. KEOUGH declares and states as follows:

1. I am Executive Vice President, Operations, of The Garden City Group, Inc. ("GCG"). The following statements are based on my personal knowledge and information provided by other GCG employees working under my supervision, and, if called on to do so, I could and would testify competently thereto. GCG has been providing comprehensive legal administration services for over 25 years. Our team has served as administrator for well over 1,000 cases. In the course of our history, we have mailed over 227 million notices, handled over 3 million calls, processed over 41 million claims, and distributed over $22 billion. In addition, GCG has designed hundreds of notices and claims forms, structured processes to efficiently and fairly adjudicate claims, and designed hundreds of settlement websites.

2. GCG was selected and engaged by the parties in the above-captioned action (the

-1-

DECLARATION OF JENNIFER M. KEOUGH
CASE NO. C09-45RAJ (MASTER CASE)
WEST\222792509.1

1 "Action") to serve as the Settlement Administrator as described in the proposed Class Action
2 Settlement Agreement (the "Settlement Agreement") and approved by this Court in its Order,
3 filed on April 19, 2010, preliminarily approving the Settlement Agreement (the "Preliminary
4 Approval Order"). I submit this Declaration in order to provide the Court and the Parties to the
5 Action with information regarding the implementation of the electronic mail dissemination of
6 the notices regarding the Settlement Agreement ("Email Notice" and "Supplemental Email
7 Notice"), the execution of the Publication Notice, and the establishment and maintenance of a
8 Settlement Website, in accordance with both the Court's Preliminary Approval Order and the
9 Court's Minute Order, dated September 24, 2010.

## DISSEMINATION OF EMAIL NOTICE

3. GCG was responsible for providing individual notice to all persons in the Settlement Class and Settlement Subclass in this Action. Specifically, in accordance with Paragraph 5 of the Preliminary Approval Order, the Individual Notice to the Settlement Class and the Individual Notice to the Settlement Subclass (collectively, "Notice"), in substantially the same forms as Exhibits A and B of the Settlement Agreement, were sent by electronic mail to all members of the Settlement Class or Settlement Subclass within 90 days of the entry of the Order, as instructed. Each Notice was embedded with a link to the Settlement Class Claim Form or Settlement Subclass Claim Form, as appropriate. Attached as Exhibits A and B are samples of the Notices that were electronically disseminated to the Settlement Class and Settlement Subclass.

4. In accordance with the Preliminary Approval Order, on or about May 6, 2010, Classmates provided GCG with an electronic list of the Settlement Class Members ("Settlement Class List") and Settlement Subclass Members ("Settlement Subclass List"). Included in these data lists were the most recent email address, as reflected in Classmates' reasonably available computer account records, for each member of the Settlement Class and Settlement Subclass. GCG received 125,787,128 records and was instructed to send the Email Notice to the

-2-  DECLARATION OF JENNIFER M. KEOUGH
CASE NO. C09-45RAJ (MASTER CASE)

1  56,860,107 email addresses labeled as "Active" or "Found" in the files provided by Classmates. The information received from Classmates was promptly loaded into the database created for this Action. Unique identifiers were given to all records in order to maintain the ability to track them throughout the Settlement process.

5.  In order to implement email notice campaigns effectively, GCG maintains a proprietary list of contacts at Internet Service Providers ("ISPs") that GCG communicates with when an ISP will receive large volumes of class action notice emails. Communication with ISPs in advance of email notice campaigns facilitates the email notice process and assists in the reduction of blockings, which may occur when an ISP detects unusual email activity, such as a large volume email delivery. On May 17, 2010, prior to the commencement of the Email Notice, GCG sent letters via overnight mail informing certain ISPs, which were scheduled to receive the largest volume of emails, of the Court-ordered Email Notice program (the "ISP Letter"). Through these ISP Letters, GCG apprised the ISPs that they would receive a high volume of Email Notices during the Email Notice distribution period, and, in that regard, GCG requested their assistance and cooperation with the distribution process. Each ISP Letter identified the case and contained an overview of the Email Notice program, including the approximate volume of emails each ISP would receive, the subject line and content of the email, and the domain name and IP address from which the emails would be sent. A sample of the ISP Letter is attached hereto as Exhibit C.

6.  As directed by the Preliminary Approval Order, GCG caused both the full length Individual Notice to Settlement Class and the full length Individual Notice to Settlement Subclass to be formatted for electronic distribution by email to Settlement Class Members and Settlement Subclass Members, respectively. The Email Notice gave each recipient a unique claim and control number, and directed recipients to the Settlement Website to obtain more information on how to file their Claim Form and to review additional information about the Settlement. Attached as Exhibit D are true and correct copies of the Settlement Class and

Settlement Subclass Claim Forms that could be submitted by Settlement Class or Subclass Members either electronically or by mail.

7. GCG commenced sending the Email Notice on June 3, 2010, and completed all Email Notice by July 18, 2010. In order to improve deliverability, GCG began sending the Email Notice at lower daily volumes in order to establish credibility with the ISP providers, ensuring them that the Email Notices were not spam, and then sent the Email Notices at daily volumes of not more than 3,000,000 emails per day. Over 90% of the 56,806,107 "Found" and "Active" status email addresses were not returned undeliverable or "bounced." GCG closely monitored the failed email delivery attempts throughout the Email Notice dissemination, and attempted as many as three (3) times to deliver to an email address. Ultimately, however, GCG could not deliver 5,075,679 Email Notices. Of these approximately 5 million Email Notices, GCG could not deliver 2,610,912 Email Notices because the email address no longer existed, the email account was closed, or the email address had a bad domain name or address error (collectively, "Hard Bounces"). The remaining 2,464,767 emails were not delivered after three delivery attempts due to reasons such as inactive or disabled accounts, full recipient mailboxes, recipient server network and technical auto-replies, or the recipient server was too busy or unable to deliver (collectively, "Soft Bounces").

## DISSEMINATION OF SUPPLEMENTAL EMAIL NOTICE

8. In response to the Minute Order entered by the Court on September 24, 2010, the Parties instructed GCG to provide a Supplemental Email Notice to the Settlement Class and Settlement Subclass informing them of their opportunity to object to Class Counsel's motion for fees (including the deadline for objection) as well as the reduction in the attorney fee award sought by Class Counsel, the additional *cy pres* beneficiary contribution to be made by Classmates, and the rescheduling of the Final Approval Hearing from October 27, 2010 to December 16, 2010. Attached as Exhibit E is a true and correct copy of the Supplemental

Email Notice that was electronically disseminated to the Settlement Class and Settlement Subclass.

9. In order to implement the Supplemental Email Notice effectively, on September 24, 2010 GCG sent another round of ISP Letters informing certain ISPs, which were again scheduled to receive a large volume of emails, of the Court-ordered Supplemental Email Notice program.

10. GCG commenced sending Supplemental Email Notice on September 28, 2010, and completed all Supplemental Email Notice by October 22, 2010. GCG did not attempt to send the Supplemental Email Notice to those emails addresses that were Hard Bounces from the first Email Notice or those email addresses whose account holders had, prior to the commencement of the Supplemental Email Notice campaign, requested not to receive further email from GCG. GCG attempted to send the Supplemental Email Notice to 54,155,963 email addresses. There were a total of 52,183,746 emails that were not returned undeliverable or "bounced", which reflects a delivery success rate of over 96%. Again, GCG closely monitored failed email delivery attempts and attempted as many as three (3) times to deliver to an email address. For the Supplemental Email Notice campaign, GCG could not deliver 1,972,217 emails. Of these, GCG could not deliver 859,548 emails due to Hard Bounces, and after at least three delivery attempts, 1,112,669 emails were not delivered due to Soft Bounces.

## PUBLICATION OF THE SUMMARY NOTICE

11. The Settlement Agreement and Preliminary Approval Order directed that GCG cause the Publication Notice to run once in *The Wall Street Journal*. GCG can confirm that the Publication Notice ran in *The Wall Street Journal* on June 4, 2010. A copy of the Publication Notice and confirmation of its publication is attached hereto as Exhibit F. In addition, as with the Supplemental Email Notice disseminated in response to the Minute Order entered by the Court on September 24, 2010, the Parties also instructed GCG to run once, in *The Wall Street Journal*, a Supplemental Publication Notice informing Class Members of their opportunity to

object to Class Counsel's motion for fees (including the deadline for objection) as well as the reduction in the attorney fee award sought by Class Counsel, the additional *cy pres* beneficiary contribution to be made by Classmates, and the rescheduling of the Final Approval Hearing from October 27, 2010 to December 16, 2010. A copy of the Supplemental Publication Notice, as it appeared on October 13, 2010, is attached hereto as Exhibit G.

### SETTLEMENT NOTICE

12. Pursuant to the Preliminary Approval Order, GCG established a Settlement Website dedicated exclusively to this Settlement (www.cmemailsettlement.com) on June 2, 2010. The website provides additional information to the Settlement Class Members and Subclass Members, including: (1) the Email and Supplemental Email Notices; (2) the full text of the Settlement Agreement; (3) the Preliminary Approval Order; (4) answers to frequently asked questions; (5) contact information for the Settlement Administrator; and (6) important dates and deadlines. The website address was provided in the Email and Supplemental Email Notices and the Publication and Supplemental Publication Notices. GCG continues to maintain and update the website. As of November 21, 2010, there have been 154,757 visits to the site.

### ELECTRONIC MAIL

13. Pursuant to the terms of the Preliminary Approval Order, GCG established and is maintaining two email addresses dedicated to this Settlement: claimforms@cmemailsettlement.com and exclusions@cmemailsettlement.com to provide email addresses to which Class Members could send Claim Form requests and Claim Form submissions and questions, and to which requests for exclusion could be delivered to the Settlement Administrator by electronic mail.

### CLAIMS ADMINISTRATION

14. In order to participate in the Settlement, Settlement Class Members and Settlement Subclass Members were required, no later than August 17, 2010, to submit a valid Claim Form. Settlement Class Members and Settlement Subclass Members had the option of

1  submitting their claim either online, to the dedicated email address, or by returning a hard copy Claim Form via U.S. mail. As of November 21, 2010, GCG had received a total of 50,017 Claim Forms. 17,412 Settlement Subclass Members requested to receive a cash payment of $3.00. The total value of the cash payments requested is $52,236.00. In addition, as of December 8, 2010, GCG has received 8,315 Requests for Exclusion from the Settlement Agreement. A list of Settlement Class Members and Sub Class Members submitting a Request for Exclusion is attached hereto as Exhibit H. GCG has also received or been provided by Counsel with correspondence from 142 class members that have been classified by GCG as objections. Sixteen (16) objections received constituted objections to the overall settlement, (81) objections received constituted objections to attorneys' fees, and (45) objections received constituted general objections to the Settlement and the attorneys' fees.

## REPORTS TO COUNSEL

15. GCG provides weekly reports to the Parties through Counsel and maintains regular contact with Counsel regarding the Settlement Administration. As reflected in the weekly reports, GCG promptly reviews the Claim Forms, as they are received on a daily basis, apprises the Parties of this information on a weekly basis, and supplies additional statistical information, if and when requested.

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct.

Executed on December 9, 2010, at Seattle, Washington.

*Jennifer M. Keough*

JENNIFER M. KEOUGH

EXHIBIT C