Charles D. Chalmers, Esq. (State Bar No. 50263)
851 Irwin Street, Suite 200
San Rafael, California 94901
Tel: (415) 860-8134
Fax: (801) 382-2469
cchalmers@allegiancelit.com
Attorney for Objector

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| VIVIAN FIORI ARIZA, et al., | Civil Action No. C09-01518 JW |
| Plaintiffs, | |
| vs. | **SUPPLEMENTAL DECLARATION OF CHARLES CHALMERS IN SUPPORT OF OBJECTIONS** |
| DELL INC., a corporation, et al., | **DATE: 3-21-11** <br> **TIME: 9 a.m.** |
| Defendants. | |

I, Charles Chalmers, do declare:

1.      I previously presented certain facts about a proposed class action settlement in the Classmates Litigation. Since that time Judge Richard A. Jones of the Western District Court of Washington has issued his opinion about his reasons for rejecting the settlement. The opinion is available on LEXIS and a copy is attached hereto as Exhibit A. At the fairness hearing I will argue on the merits of this proposed settlement based on this opinion.

Dated: March 2, 2011

__S/Charles D. Chalmers_____
Charles D. Chalmers

Supplemental Decl. of Charles Chalmers In Support of Objection

EXHIBIT A



3 of 6 DOCUMENTS

**IN RE CLASSMATES.COM CONSOLIDATED**

**LITIGATION**

**MASTER CASE NO. C09-45RAJ**

**UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF WASHINGTON**

*2011 U.S. Dist. LEXIS 17761*

**February 22, 2011, Decided**

**February 23, 2011, Filed**

**COUNSEL:**   [*1] For Anthony Michaels, Movant: Mark Adam Griffin, LEAD ATTORNEY, KELLER ROHRBACK, SEATTLE, WA.


For Anthony Michaels, individually and on behalf of all others similarly situated, Plaintiff: Artin Gholian, Joshua H Haffner, Richard L Kellner, LEAD ATTORNEYS, PRO HAC VICE, KABATECK BROWN KELLNER, LOS ANGELES, CA; Eric J Fierro, LEAD ATTORNEY, PRO HAC VICE, KELLER ROHRBACK PLC, PHOENIX, AZ; Amy C Williams-Derry, Mark Adam Griffin, KELLER ROHRBACK, SEATTLE, WA.


For Xavier Vasquez, individually and on behalf of all others similarly situated, Plaintiff: Clifford A Cantor, SAMMAMISH, WA; David Andrew Stampley, Scott A Kamber, PRO HAC VICE, KAMBER LAW, LLC, NEW YORK, NY.


For David Catapano, Plaintiff: Eric J Fierro, LEAD ATTORNEY, PRO HAC VICE, KELLER ROHRBACK PLC, PHOENIX, AZ; Amy C Williams-Derry, Mark Adam Griffin, KELLER ROHRBACK, SEATTLE, WA; Brian S Kabateck, PRO HAC VICE, KABATECK BROWN KELLNER LLP, LOS ANGELES, CA; Joshua H Haffner, Richard L Kellner, PRO HAC VICE, KABATECK BROWN KELLNER, LOS ANGELES, CA.

For Classmates Online, Inc., a Washington corporation, Classmates Media Corporation, a Delaware corporation, United Online, Inc., Defendants: Russell B Wuehler, LEAD ATTORNEY, Nicole M.   [*2] Tadano, Stellman Keehnel, DLA PIPER US LLP (WA), SEATTLE, WA.

For Michael Krauss, Objector: Lawrence Carl Locker, SUMMIT LAW GROUP, SEATTLE, WA; Mark Adam Griffin, KELLER ROHRBACK, SEATTLE, WA; Theodore H Frank, PRO HAC VICE, CENTER FOR CLASS ACTION FAIRNESS, WASHINGTON, DC.

Curtis J Neeley, Jr, Objector, Pro se, FAYETTEVILLE, AR.

**JUDGES:** The Honorable Richard A. Jones, United States District Judge.

**OPINION BY:** Richard A. Jones

**OPINION**

ORDER

(APPLIES TO ALL ACTIONS)

## I. INTRODUCTION

This matter comes before the court on class counsel's motion (Dkt. # 93) for attorney fees and class counsel's motion (Dkt. # 113) for final approval of a class action settlement. The court heard from the parties and several objectors at a December 16, 2010 final approval hearing. For the reasons stated below, as wells the reasons the court recited at the final approval hearing, the court DENIES the motion for final approval, and therefore DENIES the motion for attorney fees as moot.

This order also disposes of three motions that objector Curtis Neeley filed. Dkt. ## 100, 101, 124. Because Mr. Neeley is not a party, he did not have authority to file those motions, and the court accordingly directs the clerk to TERMINATE them.

## II. BACKGROUND

On **[*3]** April 19, 2010, the court gave preliminary approval to a class settlement in this dispute over Defendants' marketing and electronic privacy practices. Defendants operate the Classmates.com website, and the court refers to them collectively as "Classmates." It appears that almost every registered Classmates user, more than 50 million potential class members, received notice of that settlement. The court held a final approval hearing on December 16, 2010. It announced at that

hearing that it was unlikely to approve the settlement. On January 13, 2011, the court issued a minute order stating that it would not approve the settlement, and directing the parties to proceed with either litigating this case or negotiating a new settlement. The court stated its intention to later issue a lengthier order explaining its reasons for rejecting the settlement.

## A. The Lawsuit

This consolidated action is an amalgamation of two lawsuits, one by Anthony Michaels and David Catapano, [1] and one by Xavier Vasquez. The court long ago appointed Mr. Michaels' counsel as interim class counsel. Mr. Michaels and Mr. Catapano became not only Plaintiffs, but interim class representatives.

1   Mr. Catapano was not originally   [*4] a party. He joined as a Plaintiff when Mr. Michaels filed the consolidated complaint in September 2009.

This action has always focused on Classmates' allegedly deceptive marketing tactics. Anyone can become a registered user of Classmates for free. Classmates targets its unpaid users with emails encouraging them to upgrade to a paid membership. One tactic it uses is to suggest that one or more "friends" or other persons of interest to a user have viewed that user's online profile or signed their online "guestbook." Only by upgrading to a paid membership can a user identify who

has shown an interest in them. According to Plaintiffs, users are often disappointed to discover that, contrary to Classmates' representations, no one of interest has shown an interest in them. Classmates uses many variations of this practice.

Also at issue were allegations that Classmates embedded "cookies" in its emails that allowed users to bypass the secure login gateway to their accounts. If a user forwarded those emails to others, however, he or she would inadvertently give the recipients the same ability to bypass the gateway to the sender's account. Mr. Vasquez's complaint raised these claims. The consolidated **[*5]** complaint, which is the operative pleading in this action, makes no mention whatsoever of Classmates' electronic privacy practices. Dkt. # 59.

Since the court appointed interim class counsel in July 2009, no one has asked the court to test the merits of Plaintiffs' claims. Classmates has never filed a motion to dismiss or motion for summary judgment. Plaintiffs never moved for class certification. In November 2009, less than two months after Plaintiffs filed their consolidated complaint, the parties asked the court to suspend case management deadlines while they negotiated a settlement.

## B. The Settlement

In March 2010, the parties submitted for preliminary approval a settlement that would affect almost 55 million people. The vast majority, more than 50 million of

them, were registered users who had never spent a dime at Classmates. Classmates'
allegedly deceptive marketing tactics apparently failed to sway them. About 3 million
of the people affected by the proposed settlement had paid between $10 and $40 for a
Classmates membership.

The settlement offered all class members injunctive relief and the right to claim a
$2 coupon to use for purchasing a Classmates membership. Class members   **[*6]**
who had paid for a membership were offered the additional right to claim a $3 cash
payment in lieu of the $2 coupon. Classmates capped its total cash payout to potential
class members at $9.5 million. The injunction required Classmates to make several
disclosures about its "guestbook" feature and its privacy protections both on its
website and in its emails to users. The injunction did not require Classmates to
change the substance of its marketing emails or improve its privacy protections. In
addition, after the court questioned the adequacy of the relief the settlement offered,
Classmates agreed to make a $500,000 cy pres payment to a charitable organization
to be designated as part of the final approval of the settlement. Classmates agreed not
to oppose class counsel's request for just over a million dollars in attorney fees and
costs. Mr. Catapano and Mr. Michaels would each receive incentive payments of
$2500 for their service as class representatives.


**C. Potential Class Members React to the Settlement**

About 52 million people received email notice of the settlement. Indeed, they received notice twice, because in September 2010, the court ordered that class members be notified a   [*7] second time in light of the Ninth Circuit's August 18, 2010 ruling in *In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988 (9th Cir. 2010)*.

Of the 52 million people who received notice of the settlement, fewer than 60,000 responded to it. [2] Of those, about 8,300 people opted out of the class, 33,000 people requested the $2 coupon, and 17,000 requested the $3 cash payment. About 200 of them either formally objected to the settlement or wrote to the court to express their views. All of their views have been made part of the record. Dkt. ## 79-81, 84-87, 99, 102, 107-110, 119. Although Classmates offered to pay up to $9.5 million to class members in the settlement, it would have paid only about $52,000 to satisfy the claims that were made.

2    The court uses round numbers throughout this order. Jennifer Keough, who works for the settlement claims administrator, provided a thorough declaration that with precise data as to how many people received the settlement notice and how many responded to it. Dkt. # 112.

## D. The Final Approval Hearing

Case5:09-cv-01518-JW   Document203   Filed03/02/11   Page11 of 28

Page 9
2011 U.S. Dist. LEXIS 17761, *

On December 16, 2010, the court convened a final approval hearing. By that time, it had reviewed class counsel's motion for final approval and for attorney **[*8]** fees, and it had reviewed the submissions of every potential class member who either formally objected or otherwise wrote to the court.

The court began the final approval hearing by reviewing the timeline of this litigation, the terms of the settlement, and the reaction of potential class members. The court announced that it was unlikely to approve the settlement, stating several reasons that it believed the settlement inadequate. Class counsel and counsel for Classmates were given an opportunity to address the court's concerns. The court then heard from counsel for objector Michael Krauss and from counsel for Mr. Vasquez. Objector Christopher Langone appeared by phone, and the court heard his comments as well. Class counsel and counsel for Classmates then submitted their final remarks. Neither Mr. Michaels nor Mr. Catapano appeared at the hearing.


## III. BACKGROUND

Unlike most civil litigation, no one can settle a class action without the court's approval. Class actions implicate the rights not only of the parties, but of absent class members. The court must look out for those absent class members, a duty that is of particular importance in a settlement like this one that puts the interests **[*9]** of class counsel at odds with the class.

The absence of individual clients controlling the litigation for their own benefit creates opportunities for collusive arrangements in which defendants can pay the attorneys for the plaintiff class enough money to induce them to settle the class action for too little benefit to the class (or too much benefit to the attorneys, if the claim is weak but the risks to the defendants high).

*Zucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1327 (9th Cir. 1999).* The court's role in approving class settlements is to "assur[e] loyal performance of the [class] attorneys' fiduciary duty to the class." *Id.* The court cannot approve a settlement until it holds a hearing and finds that the settlement is "fair, reasonable, and adequate." *Fed. R. Civ. P. 23(e)(3).* Ordinarily, courts favor settlements. In the context of a class action, a court's duty to absent class members prevents it from serving as a mere cheerleader for settling parties. *Zucker, 192 F.3d at 1327* ("In a class action, substantial justice may require the court to do more than encourage settlement.").

There is no shortage of precedent addressing the court's duty in considering class action settlements.   **[*10]** The court may take numerous factors into account,

including the strength of the plaintiffs' case, the risk and expense of further litigation, the risk of certifying a class and maintaining that certification, the amount of the settlement, the extent of discovery completed, the views of counsel, and the reaction of class members. *Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003), overruled on other grounds by Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 617 (9th Cir. 2010).* Although the court has considered all of these factors, two of them drive the court's decision to reject this settlement. The relief offered in the settlement is inadequate, a finding that is bolstered by the reaction of potential class members.

## A. The Settlement Offers Inadequate Relief.

### 1. The $2 Coupon

The court begins with the $2 coupon. Even on the face of the settlement, it is hard to conceive of this as a benefit to the class. As noted, the vast majority of the class never spent a dime at Classmates. A $2 coupon in their hands will either go unused, or it will transform a non-paying registered user into a paying Classmates customer. This is the hallmark of a promotion for Classmates, not of a benefit conferred **[*11]** in a bilateral resolution of a dispute. Classmates offered no evidence that the $2 coupon would have cost it anything.

Case5:09-cv-01518-JW   Document203   Filed03/02/11   Page14 of 28

Page 12
2011 U.S. Dist. LEXIS 17761, *

At the final approval hearing, class counsel revealed that the $2 coupon was not conceived as a benefit to potential class members, but instead as a benefit to Classmates. Classmates wished to extinguish the damage claims not merely of the three million people who had paid for memberships, but of the more than 50 million non-paying users who had been the subject of its allegedly deceptive practices. Whereas class counsel contended that it would have been happy to accept a settlement consisting of injunctive relief and a cash payment to class members who had spent money at Classmates, Classmates insisted on the coupon to provide consideration for the release of the claims of class members who had never spent money. Classmates did not dispute this characterization. The court concludes that the $2 coupon is a benefit for Classmates alone.

## 2. Injunctive Relief

The injunctive relief is notable in that it does not stop *any* of the practices that led to this action. It does not require Classmates to stop sending deceptive emails. It does not require Classmates to stop compromising   **[*12]** the security of its users' accounts. Instead, it requires more disclosure, disclosure that is highly unlikely to make a difference to class members. This is a marginal benefit at best.

The court also observes that with the exception of a provision that requires Classmates to disclose (via hyperlink) more information about its "guestbook"

feature, the injunction does not address Classmates' deceptive marketing practices. It instead addresses Classmates' electronic privacy practices, practices that are not even described in Plaintiffs' consolidated complaint. An injunction primarily affecting conduct that Plaintiffs did not deem worthy of inclusion in their complaint is a questionable benefit to the class those Plaintiffs seek to represent.

### 3. $3 Cash Payment

Before considering the $3 cash payment, the court reiterates that the vast majority of the class was not offered that payment. Thus, as to a class of around 50 million people, the settlement consisted of nothing more than a coupon for Classmates' benefit and injunctive relief that does not stop Classmates from engaging in the conduct that led to this lawsuit.

In its preliminary approval order, the court observed that a $3 payment was   **[\*13]** not an unreasonable offer to settle claims focused on memberships that cost between $10 and $40. As the court will discuss in Part III.C, *infra*, there is reason to believe that class members' claims were worth substantially more. Putting that aside, however, the $3 payment provides relatively little incentive to participate in the settlement. The parties were aware of this, but nonetheless structured the settlement so that Classmates would under no circumstances pay more than $3 to any class member. They could have instead distributed a fixed pool of compensation pro rata

among all claimants entitled to cash compensation, or taken other approaches to providing a real possibility of meaningful monetary relief. It is not the court's role to design a better settlement for the parties, but the settlement the parties arrived at seems designed to ensure that Classmates would pay very little in cash compensation. [3]

3   At the final approval hearing, Classmates expressed concern that the court was seeking a settlement that would penalize Classmates. Classmates misunderstood the court. In assessing the effect of the settlement, the court noted that it was costly to Classmates because in addition   [*14] to whatever payment it made to class members, it would pay for the costs of notifying class members, the costs of its own legal defense, and class counsel's fees. In other words, the settlement would have penalized Classmates. But the court cannot focus on this implicit penalty, it must focus on the benefits the settlement made available to potential class members.

## 4. Cy Pres Payment

In some class actions, the practical difficulty of distributing meaningful cash compensation to class members justifies diverting payment to a cy pres recipient. *Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1305 (9th Cir. 1990).*

2011 U.S. Dist. LEXIS 17761, *

The cy pres recipient should be one who will use the cy pres award in a way that provides at least indirect benefit to class members, reflecting the notion that a cy pres award should be "next best" to an award directly to class members. *Id. at 1308.*

In this case, the cy pres payment was not part of the original settlement offer. The parties added it after deadlines for class members to claim settlement proceeds had expired. By that time, the parties knew that the low number of claimants meant that Classmates would have paid only about $52,000 directly to class members.   **[*15]** They added the cy pres payment, later acknowledging that they selected a charitable organization as the recipient without regard to whether its services would benefit class members. They deferred selection of the recipient until the final approval hearing.

In these circumstances, the court finds the cy pres payment is not a meaningful settlement benefit. It is part of the settlement only because the original settlement offer was insufficient to capture the interest of class members. Unlike the typical cy pres situation, where practical obstacles prevent compensating class members directly, the only hurdle to compensating class members in this case was the minimal compensation the settlement offered. As the court has already noted, nothing prevented the parties from agreeing on a fixed amount of cash compensation to be distributed pro rata among all claimants, or taking another approach that ensured distribution of meaningful compensation directly to potential class members.

## B. Class Members Reacted Unfavorably to the Settlement.

The vast majority of the people notified of the settlement, about 99.9% of them, reacted by doing nothing. What that might mean is the subject of a debate to **[*16]** which the court will soon turn. About 8,300 people asked to be excluded from the class, about 33,000 claimed the $2 coupon, and about 17,000 claimed the $3 cash payment.

Of the 200 or so people who formally objected or otherwise wrote to the court, reaction to the settlement was overwhelmingly negative. Class members mocked the $2 coupon, dismissed the $3 payment as paltry, and, almost uniformly, decried a settlement that provided them with little benefit while making more than a million dollars available for class counsel's fees. There are a few exceptions to this rule. Some objectors voiced their support for Classmates, and their distaste for either the settlement or class action settlements in general. Some people seemed confused by the terms of the settlement. But, as noted, almost all class members who took the time to share their views with the court were adamantly against this settlement. [4]

4    At the final approval hearing, the court quoted from many of the objections in the record, in addition to hearing from objectors who appeared at the hearing. The court cannot recount all of the objections in this order, although it reiterates

that it considered every one of them. The court   **[\*17]** commends all of the objectors for taking the time to express their views. The court's decision today is in many respects a result of their effort.

Of the people who took the time to object to the settlement, almost none of them mentioned the injunctive relief that class counsel repeatedly referred to as the focus of the settlement. Class counsel informed the court at the final approval hearing that Mr. Michaels and Mr. Catapano, the Plaintiffs and interim class representatives, were "delighted" with the injunctive relief. If that is the case, it is disappointing that the class representatives did not appear at the final approval hearing to share their views, nor did either of them submit a declaration to the court. The record does not contain a single favorable word from a prospective class member about the injunctive relief.

The parties urge the court not to focus on the written submissions of 200 people, who constitute only a miniscule fraction of the people who received their settlement offer. They point instead to the tens of millions of people who did not respond to the settlement offer, contending that in a case like this one, "silence is golden." They urged the court to construe   **[\*18]** the lack of response not as disapproval or indifference, but as tacit approval. Classmates went a step further, urging the court to take guidance from Third Circuit precedent, in which (as counsel described it at oral argument), the court had held that "silence constitutes tacit consent to the agreement." The court heeded counsel's suggestion. The case cited is *In re Gen. Motors Co.*

*Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768 (3d. Cir. 1995)*. It does indeed contain the quote repeated at oral argument, albeit in qualified form. *Id. at 812* ("Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'") (quoting *Bell Atl. Corp. v. Bolger, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993))*. The court then explained that "a combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *Id.* This is especially so where the cost of objecting exceeds the cost of the settlement. *Id.* In this case, the out-of-pocket cost of objecting was the cost of three postage stamps, to say nothing of the opportunity cost   **[*19]** of the time spent crafting an objection. For a settlement that offered most people no monetary benefit, and a $3 maximum, objecting to the settlement was not a cost-effective proposition. There is little reason, in this case, to assume approval from the silence of the vast majority of the class. *See also id. at 813* (ruling that district court erred by concluding that the silence of most class members weighed in favor of approving settlement).

## C. What Little the Court Knows About the Strength of Plaintiffs' Case Does Not Weigh In Favor Of Approving The Settlement.

The court may consider the strength of Plaintiffs' claims in assessing the adequacy of a settlement. It can do this, however, in only the roughest form. It is standard

practice for those seeking approval of a class settlement to state some upper range for what the class might have obtained had its representatives prevailed, and to observe that the class might have received nothing at all had the defendant prevailed. The court does not fault those who employ this practice, because there is often little more they could say. Many class settlements come before the merits of a plaintiff's claims have been tested. The best that a   **[*20]** court can do is to make a generalized assessment of the merits and ensure that the relief the settlement offers is not grossly disproportionate in light of that assessment.

Plaintiffs in this case took the same approach in their motion for final approval. Class counsel noted that those class members who had out-of-pocket damages paid between $10 and $40 to Classmates. It said little about the likelihood that class members could recover these amounts. It did so even though, as it explained, it conducted substantial formal and informal discovery in this case. Did that discovery yield information supporting the class claims? Undermining them? Class counsel did not address these questions.

Classmates, as is the custom for defendants in these circumstances, offered no view contrary to Plaintiffs' assessment of the merits of their case. At the final approval hearing, however, after the court stated its views about the inadequacy of the settlement, Classmates ended its silence, and lambasted Plaintiffs' case. Classmates contended that the case was so weak that the settlement offer it had made

was a substantial overpayment. Classmates did not explain why it was eager to overpay to resolve this   [*21] case. Putting that aside, the court is in no position to evaluate Classmates' attack on the merits. A defendant attacking the merits of claims against it without the benefit of trial must rely on a motion to dismiss or motion for summary judgment. Classmates filed no such motion. The court is in no position, based on merits challenges that Classmates did not raise until the final approval hearing, to determine that Plaintiffs' claims are weak.

The court is, however, in a position to query whether Plaintiffs' rough valuation of the claims of potential class members is adequate. Class counsel focused on the $10 to $40 that some class members paid for their Classmates memberships. Reduced to a footnote was that one of the statutory bases for the class claims, Washington's Commercial Electronic Mail Act ("CEMA"), RCW Ch. 19.190, provides statutory damages of $500 for every email that violates it. *RCW § 19.190.090(1)*. Whereas only three million people paid money in response to Classmates' allegedly deceptive emails, Plaintiffs allege that more than 50 million people received emails from Classmates that violated CEMA. There are, of course, numerous obstacles to recovering statutory damages   [*22] for a putative class as large and geographically dispersed as this one. But the possibility of a $500 award puts the settlement offer of $3 (to about 3 million people) and an offer of a weak injunction and a $2 coupon for Classmates' benefit (to about 50 million people) in a much different perspective.

Case5:09-cv-01518-JW   Document203   Filed03/02/11   Page23 of 28

Page 21
2011 U.S. Dist. LEXIS 17761, *

Moreover, the court observes that even weak claims on behalf of a class of 50 million people can have a high aggregate value. If the average class member's claim against Classmates was worth just ten cents, this settlement is worth more than $5 million to Classmates. Classmates would have spent far less in the settlement.

## D. The Parties' Counsel Favor the Settlement.

The court may consider counsel's views of the adequacy of a settlement. The court should of course expect their views to be favorable. Nonetheless, experienced counsel (like the counsel representing Classmates and the class) can offer valuable insight into their own settlement despite their natural bias in favor of it. When considering their views, however, the court must consider whether the settlement gives counsel an incentive to seek its approval that is not aligned with the interest of potential class members. *Zucker, 192 F.3d at 1327.*

Classmates   **[*23]** favors the settlement and lobbies for its approval. It has no obligation to look out for the interests of class members. It insists that the settlement represents a substantial overpayment in light of the weakness of Plaintiffs' case and the fact that the vast majority of the class suffered no out-of-pocket loss. Again, it does not address why it chose to "overpay."

Class counsel, on the other hand, does have an obligation to represent the interests of class members. That obligation is at odds with its own interest in obtaining an

attorney fee award. That divergence of interests is apparent in class counsel's motion for attorney fees, where it asks the court to compare the fee award it requests with the $9.5 million fund it allegedly created for class members. On several occasions, it suggests that this was a "common fund." It was not. Class counsel expected, based on prior experience, that 10% of class members would participate in the settlement. It thus expected class members to claim approximately $950,000 in cash compensation. The attorney fees it requested exceed that amount. There is nothing per se improper about requesting attorney fees that exceed the monetary relief to the **[*24]** class. For example, in a case where class counsel obtained significant non-monetary relief, its attorney fee request would be expected to exceed the monetary benefit to the class. But where class counsel points to an illusory $9.5 million benefit as justification for its own fee award, without acknowledging that counsel expected the benefit to be dramatically smaller, it illustrates the danger of deferring to counsel's view of a settlement that misaligns the interests of class members and class counsel.

For these reasons, although the court has considered Classmates' and class counsel's evaluation of their settlement, it has afforded that evaluation relatively little weight.

## E. Despite Its Risks, Further Litigation Is Likely to Leave Class Members No Worse Off than this Settlement.

The court may also consider the risk of ongoing litigation, including the risk that a class could not be certified or that the class could not maintain certification throughout the litigation. In assessing these risks, the court is concerned primarily with whether class members are likely to be better off with the settlement or with further litigation.

As to the more than 50 million people who registered as  [*25] Classmates users but did not spend money, they are better off without the settlement. As the court has discussed, the settlement offers them a coupon for a membership they had never previously wanted and injunctive relief that does not stop Classmates' practices. In exchange, they must abandon their claims against Classmates, including claims to $500 statutory damages based on Classmates' allegedly deceptive emails. If they were to become part of a certified class, and Classmates prevailed in defeating the claims of that class, they would be no worse off than the settlement would have left them. If the class prevailed, there is a real possibility that the resulting judgment would result in real benefits to the class members. If no class were certified, or if Classmates users who did not pay for memberships were not part of the certified class, they would at least retain their potential claims against Classmates. In no event would these class members be worse off than they would be if they were bound by this settlement.

As to the three million or so people who paid for Classmates memberships, the risk analysis is different only in that further litigation places them at risk of obtaining

[*26] less than the $3 benefit the settlement afforded them. Given that only 17,000 of them were willing to make a claim for that cash benefit, the court concludes that this is a risk that these potential class members would be willing to take.

For all of these reasons, the court declines to approve the parties' proposed settlement. The negotiations led to a settlement that would have provided substantial benefits to Classmates, to class counsel, and to the class representatives. The settlement offered very little to class members.

## F. The Court Declines to Consider the Motions of Objector Curtis Neeley.

Curtis Neeley was one of the many people who objected to the settlement. Unlike other objectors, Mr. Neeley did not confine his participation to objecting to the settlement. Mr. Neeley initially filed two motions. In one, he sought reconsideration of the court's appointment of interim class counsel and the court's preliminary approval of the settlement. In the other, he asked the court to enter an injunction against what he deemed to be Classmates' wire fraud. After the court notified the parties in January 2011 that it would not approve the settlement, Mr. Neeley filed another motion, seeking [*27] to be included in the parties' preparation of a status report.

Mr. Neeley misconstrues his role as an objector. Although he (like other objectors) served an important role in revealing the reaction to the settlement, he is not a party to this case. Only parties (or those seeking to become parties) can file motions.


## IV. CONCLUSION

For the reasons stated above, the court DENIES Plaintiffs' motion for final approval of this settlement. Dkt. # 113. The court DENIES Plaintiffs' motion for attorney fees as moot. Dkt. # 93. The clerk shall TERMINATE the motions of objector Curtis Neeley. Dkt. # 100, 101, 124.

The parties shall update the settlement website to include a hyperlink to this order. The court assumes that continuing to keep the settlement website online does not pose a hardship to the parties. If the court is mistaken, the court encourages the parties to inform the court and seek permission to take the settlement website offline.

In their most recent status report, the parties inform the court that they wish to explore the possibility of renegotiating the settlement. They have agreed that by March 4, 2011, they will inform the court of either a new settlement or their proposed schedule   **[*28]** for litigating this case. The court therefore orders the parties to submit an updated status report by March 4, 2011.

DATED this 22nd day of February, 2011.

/s/ Richard A. Jones

2011 U.S. Dist. LEXIS 17761, *

The Honorable Richard A. Jones

United States District Judge