1  BRIAN R. STRANGE (SBN 103252)
   *lacounsel@earthlink.net*
2  GRETCHEN CARPENTER (SBN 180525)
   *gcarpenter@strangeandcarpenter.com*
3  STRANGE & CARPENTER
   12100 Wilshire Blvd., Suite 1900
4  Los Angeles, CA 90025
   Telephone:     310-207-5055
5  Fax:           310-826-3210

6  RANDALL S. ROTHSCHILD (SBN 101301)
   *randy.rothschild@verizon.net*
7  RANDALL S. ROTHSCHILD, APC
   12100 Wilshire Blvd., Suite 800
8  Los Angeles, CA 90025
   Telephone:     310-806-9245
9  Fax:           310-988-2723

10  Attorneys for Plaintiffs

11              **UNITED STATES DISTRICT COURT**

12         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13                    **SAN JOSE DIVISION**

| | |
|---|---|
| 14 VIVIAN FIORI ARIZA, ROGGIE TRUJILLO, PAMELA NEWPORT, ROBERT DEAN, AND RAUL REYES, on behalf of themselves and all others similarly situated, | **Case No. C09 01518 JW** |
| | **PLAINTIFFS' CONSOLIDATED RESPONSE TO OBJECTIONS TO FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND REQUEST FOR ATTORNEYS' FEES** |
| Plaintiffs, | |
| v. | **CLASS ACTION** |
| DELL INC., a corporation; BANCTEC, INC., a corporation; WORLDWIDE TECHSERVICES, LLC, an entity; DELL CATALOG SALES, L.P., an entity; DELL PRODUCTS, L.P., an entity; DELL MARKETING L.P., an entity; DELL MARKETING L.P., LLC, an entity; DELL MARKETING G.P., LLC, an entity; DELL USA, L.P., an entity; and DOES 1 Through 10, | Date: March 21, 2011 Time: 9:00 a.m. Courtroom: 8 Assigned to the Honorable James Ware, Courtroom 8 Action filed on April 7, 2009 |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . iii

I.    INTRODUCTION . . . . . . . . 1

II.   CHALMERS' OBJECTIONS LACK MERIT . . . . 3

      A.   The Courts Have Already Rejected These Exact Same
           Objections . . . . . . . . 3

      B.   There is No claim of Collusiveness or that the Benefits are
           Unfair . . . . . . . . 9

      C.   The Objections Have No Relevance to a Lodestar Analysis . 10

      D.   The Arguments Also Lack Merit under a Percent of Benefits
           Analysis . . . . . . . . 11

      E.   Chalmers Misstates the Claims and Notice Process . . 13

III.  THE GOLDEN OBJECTIONS LACK MERIT . . . . 14

      A.   The Objections Are Untimely and Lack Standing. . . 14

      B.   No Authority is Cited for the Objections . . . 14

      C.   No Delay is Warranted . . . . . . 15

      D.   The Unlawful Restriction Claim Is Frivolous . . . 16

IV.   THE MUNOZ AND PERLE OBJECTIONS LACK MERIT . . 17

      A.   No Showing of Standing is Made . . . . 17

      B.   Paying Fees in Addition to Benefits is Entirely Proper . . 18

      C.   No Timesheets Are Required . . . . . 18

      D.   No Bar Exists on Mediator Declarations . . . 19

      E.   Palmer Added No Value to the Class . . . . 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bellows v. NCO,*
2009 WL 35468 (S.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Boyd v. Bechtel Corp.,*
485 F. Supp. 610 (D.C. Cal. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Browning v. Yahoo Inc.,*
2007 WL 4105971 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

*In re Cardinal Health, Inc. Securities Litigation,*
550 F. Supp. 2d 751 (S.D. Ohio 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.,*
221 F.R.D. 523 (C.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

*Devlin v. Scardelletti,*
536 U.S. 1 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Faigman v. AT&T,*
2011 WL 672648 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 18

*Feder v. Electronic Data Systems Corp.,*
248 Fed.Appx. 579 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Fernandez v. Victoria Secret Stores, LLC,*
2008 WL 8150856 (C.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Fischel v. Equitable Life Assur. Society of U.S.,*
307 F.3d 997 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

*Glass v. UBS Financial Services,*
2007 WL 221862 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 6, 7, 9, 10, 15, 19

*Hartless v. Clorox Co.,*
2011 WL 197542 (S.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hopson v. Hanesbrands Inc.,*
2009 WL 928133 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Jaffe v. Morgan Stanley & Co., Inc.,*
2008 WL 346417 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lobatz v. U.S. West Cellular of California, Inc.,*
222 F.3d 1142 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Lytle v. Carl*,
382 F.3d 978 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Mego Financial Corp. Securities Litigation*,
213 F.3d 454, 459 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*In re Mercury Interactive Corp. Securities Litigation*,
618 F.3d 988 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

*Parker v. Time Warner Entertainment Co., L.P.*,
631 F. Supp. 2d 242 (E.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Perdue v. Kenny A. ex rel. Winn*,
— U.S. —, 130 S. Ct. 1662 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rodriguez v. West Publishing Corp.*,
563 F.3d 948 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rosenburg v. I.B.M.*,
2007 WL 128232 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Satchell v. Federal Express Corp.*,
2007 WL 1114010 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
904 F.2d 1301 (9th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sylvester v. CIGNA Corp.*,
369 F. Supp. 2d 34 (D. Me. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

*Thieriot v. Celtic Insurance Co.*,
2011 WL 109636 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re TJX Companies Retail Sec. Breach Litigation*,
584 F. Supp. 2d 395 (D. Mass. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

*In re Wachovia Corp. Pick-a-Payment Mortgage Marketing and Sales Practice Litigation*,
2010 WL 5559767 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Wal-Mart Stores, Inc. Wage and Hour Litigation*,
2011 WL 31266 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Waters v. International Precious Metals Corp.*,
190 F.3d 1291 (11th Cir.1999), *cert. denied*, 530 U.S. 1223 (2000) . . . . . . . . . . . . . . . . . . . 12

*Williams v. MGM-Pathe Communications Co.*,
129 F.3d 1026 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 6, 7, 11, 12, 13

*Yeagley v. Wells Fargo & Co.*,
2008 WL 171083 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

*Yeagley v. Wells Fargo & Co.*,
365 Fed.Appx. 886 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

iv

*Yeagley v. Wells Fargo & Co.*,
2010 WL 2077013 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**STATE CASES**

*Cho v. Seagate Technology Holdings, Inc.*,
177 Cal. App. 4th 734 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 8, 9, 10, 12, 13, 18, 19

*In re Consumer Privacy Cases*,
175 Cal. App. 4th 545 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12, 14, 18

*In re Microsoft I-V Cases*,
135 Cal. App. 4th 706 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Wershba v. Apple Computer, Inc.*,
91 Cal. App. 4th 224 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 12, 15, 16, 18

**OTHER AUTHORITY**

A Conte & H. Newberg, <u>Newberg on Class Actions</u> (4th ed. 2002) . . . . . . . . . . . . . . . . . . . . . 10

## I.      INTRODUCTION

After notice in newspapers across two states and extensive internet exposure, a mere three objections (all by professional objectors) out of millions of class members speaks to the fairness of this Settlement and fee request.[1]  This highly positive response weighs strongly in favor of final approval here.  In re: Mego Financial Corp. Securities Litigation, 213 F.3d 454, 459 (9th Cir. 2000) (low number of objectors and opt-outs supports trial court's finding that settlement was "fair, adequate and reasonable"); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998) (low opt-outs provides "objective positive commentary as to its fairness").

The objections asserted here  – ostensibly on behalf of class members by three well-known professional objectors, attorneys Chalmers, Strong and Palmer – can quickly be dispensed with as they have all previously been rejected by the courts, including this Court.  For instance, Objectors claim that the "structure" of the Settlement is somehow deficient due to the lack of a cy pres award or minimum payment, and the fact that the agreement contains the commonly-used "clear-sailing" attorneys' fee provision.  But these identical objections were recently made in another case and rejected by the court for lacking any support whatsoever.  Cho v. Seagate Technology Holdings, Inc., 177 Cal.App.4th 734, 743 (2009) ("[Objector] provides us no authority to support his contention, and we have found none").  Indeed, this Court also recently rejected these same objections when they were presented by attorney Palmer and others in The Nvidia GPU Litigation, Case No. 08-04312 JW.  Request for Judicial Notice ("RFJN"), Ex. A (objected to no minimum payment or cy pres award and "illusory settlement benefits"); Johnson Obj., Dkt. No. 293 (reversion).

As the Seagate and the Nvidia matters attest, courts routinely approve settlements and attorneys' fee awards in cases where no cy pres award or minimum payment is required, and where the parties have negotiated for an amount of uncontested fees for court approval.  As the courts point out, such fee provisions provide defendants with certainty on their potential exposure and facilitate, rather than hinder, settlement.  In re: Consumer Privacy Cases, 175 Cal.App.4th 545, 553-54 (2009)

---

[1] The fact that only 252 requests for opt-outs were received likewise speaks to the fairness of the Settlement.

Case No. C09 01518 JW – Response to Objections to Settlement and Request for Attnys' Fees

1   (clear-sailing provisions facilitate settlements, avoid conflicts of interests, and give defendants "a

2   predictable measure of exposure of total monetary liability").  See also Williams v. MGM-Pathe

3   Communications Co., 129 F.3d 1026, 1027 (9th Cir. 1997) (attorneys' fees awarded pursuant to

4   clear-sailing fee provision in settlement containing reversion and no minimum payment).

5       Further, the Settlement and fee request here were negotiated and "structured" with the

6   assistance and careful guidance of retired California Supreme Court Justice Panelli and nationally

7   respected mediator Antonio Piazza, both of whom have extensive experience in settling large class

8   actions and both of whom filed declarations in support of the Settlement and fee award.  Courts often

9   look to mediator involvement to "independently confirm" that the settlement agreement and

10  negotiated fee request are the product of arms-length negotiations, as such agreements are

11  considered essentially private consensual agreements in this jurisdiction that will not be disturbed

12  absent actual evidence of collusion or overreaching.  See Hanlon, supra, 150 F.3d at 1027.

13      Significantly, none of the Objectors make any claim of collusiveness or argue that the

14  settlement benefits are inadequate or unfair.  Indeed, attorney Chalmers concedes the benefits are

15  fair and that the injunctive relief is a separate and additional benefit to the Class.  Chalmers Obj. at

16  2:8-17.  Moreover, no Objector questions the appropriateness of the Release, the riskiness, difficulty,

17  novelty and complexity of the litigation, or Class Counsel's skill and competency in representing

18  the Class.  As a result, all of the factors allowing for a "presumption of fairness" to apply here have

19  been met, as have all of the Ninth Circuit "fairness factors" courts typically consider in evaluating

20  class action settlements.  Hanlon, supra, 150 F.3d at 1026 (fairness factors described); National

21  Rural Telecommunications Cooperative v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004)

22  (presumption of fairness applies if factors met).

23      Also significant is the fact that there is no challenge to the lodestar here.  This is dispositive

24  with respect to the attorneys' fee request, as the lodestar is presumed reasonable; none of the so-

25  called "structural" issues have any bearing whatsoever on a lodestar analysis, which focuses on the

26  attorney time invested in the litigation.  Fischel v. Equitable Life Assur. Society of U.S., 307 F.3d

27  997, 1006-07 (9th Cir. 2002) (strong presumption exists that lodestar "represents a reasonable fee").

28  Not only is the lodestar fully supported here, but attorney Chalmers himself acknowledges that Class

Counsel "have vigorously pursued the cases" and "undoubtedly spent the time in three different cases, particularly considering Dell's vigorous defense." Chalmers Obj. at 2:14-15; 7:7-9.

Likewise, there is no serious challenge to the reasonableness of the fee request based upon a percent of benefits analysis. Under the Ninth Circuit standard enunciated in <u>Williams</u>, <u>supra</u>, 129 F.3d at 1027, attorneys' fees are awarded on the basis of the total funds made available to the class, whether claimed or not. This has been black-letter law in this Circuit since 1997, as even Objector Strong admits. RFJN, Ex. B (attorneys' fees are based on total benefits made available to class by the settlement regardless if claimed or not claimed). As shown in Class Counsel's Fee Application, the requested fees are well below the 25% benchmark used in this Circuit. To his credit, attorney Chalmers concedes that the settlement and attorneys' fee award should be approved if the <u>Williams</u> standard applies here. Chalmers Obj. at 6:27- 7:8. Given that it clearly does, this is dispositive of the objections.

In addition to the other dispositive reasons discussed, procedural defects also bar the objections filed by attorneys Strong and Palmer. Attorney Chalmers is the only one who even attempted to comply with the evidentiary requirements of standing through his client's declaration; attorneys Strong and Palmer failed to meet even this basic requirement. Further, attorney Strong did not even bother to file his objections before the deadline; as such they are untimely and waived. Given that his objections failed to even cite one California state or federal case to support his conclusory assertions, they are completely unsupported in any event.

In short, the objections lack merit at every level of analysis. They should be summarily overruled, and final approval of the Settlement and fee award granted.

**II.    CHALMERS' OBJECTIONS LACK MERIT**

    **A.    <u>The Courts Have Already Rejected These Exact Same Objections</u>**

Chalmers is recycling the identical objections he recently made in another case.[2] There, the California Court of Appeal rejected these objections, finding they lacked any legal support

---

[2] Chalmers is a professional objector whose career is devoted to attacking class action settlements; he even runs a website soliciting objectors to aid in his cause. <u>See</u> Ex. B attached to Rothschild Decl., filed concurrently herewith. Here, Neil Scheiman attests that he was solicited by Chalmers to lend his name to Chalmers' objections. Scheiman Decl., ¶¶ 3-5. As a result, these Objections will hereafter be referred to as "the Chalmers objections."

1    whatsoever: "[Objector] provides us no authority to support his contention, and we have found

2    none."[3]  Cho v. Seagate Technology Holdings, Inc., 177 Cal.App.4th 734, 743 (2009).  The court

3    also held that none of the "structural" issues Chalmers points to "alone or in combination" are

4    problematic.  Id. at 743 (rejecting Chalmers' claim that "inferences of collusion or unfairness" can

5    be "based upon the structure and terms of the agreement").  Notably, Chalmers failed to mention this

6    highly relevant case in his papers even though California law is strongly implicated here due to the

7    fact the Settlement Agreement was made under California law, and two of the three cases at issue

8    were brought under California law.  See Settlement Agreement, Section V at ¶ 6; Fee Application

9    at 8, fn. 9.

10         Seagate involved a similar settlement as here where a claim needed to be made to obtain

11   benefits, there was no cy pres award, and any monies not claimed by class members remained with

12   the defendant.  Further, the parties had negotiated for an amount of attorneys' fees that class counsel

13   would seek and defendants would not oppose (a "clear-sailing provision").  As here, Chalmers

14   objected to the "lack of a minimal payment" as well as to the "structure" of the settlement and the

15   attorney fee provision, claiming, in practically the same language he uses here, that "the likelihood

16   of sufficient claims" for compensation from the settlement "is so low that the only way this

17   settlement can be fair to the class is with a minimum settlement amount which is distributed by cy

18   pres if not consumed by claims."  Seagate, supra, 177 Cal.App.4th at 744.  The court rejected this

19   contention:

20         [The Objector] provides us no authority to support his contention, and we have found
         none that compels the establishment of such a definite fund.  Rather, courts have
21         approve settlements, like this one, where there is no definitive monetary obligation
         imposed on a settling defendant. (Cites omitted.) We have no reason to question the
22         fairness of this settlement or inferred that it is the product of collusion just because
         it does not require defendant to incur a minimum financial obligation.  This is
23         especially so in light of the showing in support of other factors that bore upon the
         trial court's fairness determination.  Id.
24
         In supporting the settlement there, the Seagate court pointed to the same factors that are
25
     present here, namely, that the settlement was achieved through arms-length negotiation through
26
     mediation, the case had been vigorously litigated for years, class counsel (including Strange &
27

28   _____
         [3] Chalmers brought the objections in Seagate in the name of his friend Klausner whom
     Chalmers often uses for standing purposes to bring his objections.  See RFJN, Ex. D.

                                                   4
     Case No. C09 01518 JW – Response to Objections to Settlement and Request for Attnys' Fees

1    Carpenter, who are also class counsel in this case)[4] was experienced, the number of class members

2    who objected or opted out was very small, and plaintiffs "face considerable risk in proceeding to

3    trial, and the class recovery is significant in light of that risk." Id. at 744-45. **Significantly, it is**

4    **undisputed that all of these same favorable factors exist here.**

5         Moreover, rather than finding anything wrong with the "clear-sailing" attorneys' fee

6    provision Chalmers objects to, the Seagate court looked favorably upon the fact that the attorneys'

7    fees were being paid in addition to the settlement benefits, unlike a traditional common fund

8    settlement in which any attorneys' fees awarded lessen the recovery for the settlement class.  In

9    addition, the court noted that the attorneys' fee request still had to be approved by the court as

10   reasonable, so Chalmers' objections regarding "overreaching" simply lacked merit.  Id. at 744.

11        Another recently published California case Objectors ignore, In re Consumer Privacy Cases,

12   175 Cal.App.4th 545, 553-54 (2009), is also instructive.  There the court examined in detail whether

13   there is anything "structurally improper" with clear-sailing fee provisions.  The court found there

14   was not, that they were commonly and properly used, and recognized as proper by the Manual for

15   Complex Litigation, as well as by the courts throughout California and the Ninth Circuit.  Consumer

16   Privacy Cases, supra, 175 Cal.App.4th at 553 (commentators have agreed that such attorneys' fee

17   provisions are proper).  As the court stated:

18            This practice [of using clear-sailing provisions] serves to facilitate settlements and
             avoids a conflict, and yet it gives the defendant a predictable measure of exposure
19           of total monetary liability for the judgment and fees in a case.  To the extent it
             facilitates completion of settlements, this practice should not be discouraged.
20
21   Id. at 553 (citing 4 Newberg on Class Actions, § 15:34 at 112).  The alternative to these negotiated

22   provisions, according to the court, is to have the court determine fees out of the total cash benefits

23   afforded the class which then puts the attorneys and class members in a conflict of interest situation

24   as every dollar going towards attorneys' fees is a dollar taken away from the class.  Consumer

25   Privacy Cases, supra, 175 Cal.App.4th at 554.

26   _____

27        [4] Notably, this is now the second time Chalmers has filed objections to a settlement where
     Strange & Carpenter has been class counsel, the Seagate matter being the other one.  In addition,
     Chalmers has previously filed an objection to a settlement involving Strange & Carpenter's co-
28   counsel in the Seagate matter, Gutride Safier LLP.

In another important consumer class action, <u>Wershba v. Apple Computer, Inc.</u>, 91 Cal.App.4th 224 (2001), the court approved the settlement, rejecting all objections that the settlement was unfair due to an anticipated low coupon redemption rate.  It also rejected claims that final approval should be delayed until the end of the claims period so that actual redemption rates could be known, holding no such evidence was needed in awarding fees or approving the settlement. <u>Id.</u> at 246-48.  <u>See also</u> <u>In re Microsoft I-V Cases</u>, 135 Cal.App.4th 706, 721 (2006) (reversion of funds to the defendant of unclaimed settlement funds is proper).

Federal law is similar to California's and also strongly contrary to Chalmers' position.  For instance, the settlement in the seminal case of <u>Williams v. MGM-Pathe Communications Co.</u>, 129 F.3d 1026, 1027 (9th Cir. 1997), had the same basic structure and terms Chalmers attacks here, including a requirement that class members had to submit a claim to receive cash benefits, a reversion provision with no minimum payment feature or cy pres feature, and a clear-sailing provision in which the parties agreed the attorneys' fees would be up to $1.5 million.[5]  The district court awarded attorneys' fees based on the amount of the claims made.  The Ninth Circuit not only did not raise any problem with the settlement, it overturned the trial court's attorneys' fee award for an **abuse of discretion** for basing the fees on the cash benefits paid to the class rather than on the <u>total value</u> of the benefits made available to the class.  <u>Id.</u> at 1027.

Likewise, in <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th Cir. 1998), the Ninth Circuit approved a settlement in which there was no cash benefit and no minimum payment required, but rather a repair-and-replace remedy which class members had to make a claim to obtain. Attorneys' fees of $5 million, that were negotiated in mediation, were awarded.  The court highlighted the non-collusive nature of the settlement negotiations as a key to its finding of fairness and in approving the attorneys' fee award.  <u>Id.</u> at 1027 ("no evidence of collusion was presented to the district court or otherwise evident in the record").

In addition, the Ninth Circuit in <u>Hanlon</u> articulated a number of factors ("the <u>Hanlon</u> factors") that courts should examine to determine fairness besides examining whether the settlement

---

[5] The fact that the settlement had a clear-sailing attorneys' fee provision was noted to the Ninth Circuit in the first page of the defendants' brief.  <u>See</u> excerpt attached to RFJN as Ex. E.

negotiations were at arms-length.  One of these factors is "the amount offered in settlement," the same factor used by the Ninth Circuit in <u>Williams</u>, <u>supra</u>, 129 F.3d 1026, to evaluate the attorneys' fee award.  Significantly, the number of actual claims made for benefits is not even listed or discussed as a factor courts should consider.  <u>Hanlon</u>, <u>supra</u>, 150 F.3d at 1027.  In a recently rendered decision in a consumer class action from this district, <u>Faigman v AT&T</u>, 2011 WL 672648 (N.D. Cal.), Judge Patel approved a settlement where class members had to submit a claim to obtain a $6 credit/check benefit, and where there was no cy pres or minimum payment required of defendant.  The court awarded attorneys' fees of approximately $1.2 million based on a lodestar basis, an amount well in excess of the amount of claims paid.  In <u>Browning v. Yahoo Inc.</u>, 2007 WL 4105971 (N.D. Cal.), the court approved a consumer class action settlement consisting of no cash recovery and only in-kind relief; $2.25 million in attorneys' fees and expenses were awarded pursuant to the attorneys' fees negotiated in mediation.  In <u>Glass v. UBS Financial Services, Inc.</u>, 2007 WL 474936, *8 (N.D. Cal.), the court rejected the objector's claim that the reversion clause in the settlement agreement made the settlement improper:  "[Objector] cites no authority holding improper a settlement providing for such reversion of unclaimed or unawarded funds; indeed, there is authority suggesting to the contrary," citing to <u>Williams</u>, <u>supra</u>, 129 F.3d at 1027.

A recent large class action settlement approved by this Court in <u>The Nvidia GPU Litigation</u>, Case No. 08-04312 JW, was also "structured" similar to the one at issue except with a repair-and-replace remedy as well as a cash benefit portion; class members were required to submit a claim that required documentation to obtain benefits.  (The claim process here does not require any documentation.)  Monies not allocated to class members remained with the defendant.  The settlement also had a similar clear-sailing attorneys' fee provision as here that required fees to be paid separately and in addition to settlement benefits.  Similar to the objections here, Objector's counsel Palmer filed an objection there objecting to the lack of minimum payments, a potential low claims rate, lack of a cy pres award, "illusory damages," etc., all of which the Court rejected in approving the settlement and attorneys' fee award.  <u>See</u> RFJN, Ex. A.

As the foregoing cases clearly demonstrate, no inference of unfairness can be found from simply the structure of the settlement here, particularly where it is undisputed that the settlement

1    negotiations were conducted at arms-length.  Also undercutting Chalmers' position that a cy pres

2    award is required is the fact that when cy pres awards <u>are</u> included, professional objectors typically

3    argue they are improper on the basis that these monies should have been made available to class

4    members directly as cash benefits.  <u>See</u>  <u>Rodriguez v. West Publishing Corp.</u>, 563 F.3d 948, 966 (9th

5    Cir. 2009) ("Objectors also challenge the cy pres provision, which they point out is a disfavored

6    substitute for distribution of benefits directly to class members."); <u>In re Microsoft I-V Cases</u>, 135

7    Cal.App.4th 706, 716-29 (2006) (extensive objection made to cy pres award).

8           In short, as the court found in <u>Seagate</u>, the objections here have no legal merit.  Indeed, the

9    only California federal case Chalmers even cites for support is an unpublished district court decision

10   that was <u>reversed</u> by the Ninth Circuit.  <u>See</u> <u>Yeagley v. Wells Fargo & Co.</u>, 365 Fed.Appx. 886 (9th

11   Cir. 2010).  The case was unsupportive in any event as the settlement there had actually been

12   approved.

13          In a late submission, Chalmers attached an unpublished order from the Western District of

14   Washington, <u>In re Classmates.com Consolidated Litigation</u>, Case No. 09-45RAJ.  There the court

15   found a settlement unfair which failed to provide adequate injunctive relief to stop the offensive

16   practices in issue, and which provided a $3 cash benefit on a $500 claim to only a very small

17   fraction of the 50 million class members, yet required a <u>full</u> release from all of them.  Further, 200

18   objectors objected to the settlement, and the parties themselves admitted to the Court that the $2

19   "promotional" coupon provided to the majority of the class was of no value.  This case has little

20   relevance to the instant matter since there is no claim in this case that the release or settlement

21   benefits afforded the class are inadequate; rather, Chalmers admits they are adequate.  Chalmers Obj.

22   at 2:8-17.  If anything, the <u>Classmates</u> order actually undercuts Chalmers' position, as it is another

23   example of a court applying the <u>same established factors</u> presented in the Moving papers to

24   determine the fairness of a settlement – rather than inventing <u>new</u> criteria to apply as Chalmers

25   advocates here.   Further, in direct contravention of Chalmers' position here, the court in

26   <u>Classmates.com</u> stated, "there is nothing per se improper about requesting attorney fees that exceed

27   the monetary relief to the class."  <u>Classmates</u> Order, attached to Chalmers Decl., ¶ 1, Ex. C at 23.

28   In any event, the case contained no discussion of any "structural" problems with the settlement due

1    to reversion clauses, clear-sailing attorneys' fee provisions, lack of minimum payment requirements,

2    etc.

3           Likewise, Chalmers' heavy reliance on <u>Sylvester v. CIGNA Corp.</u>, 369 F.Supp.2d 34 (D.

4    Me. 2005), is misplaced.  That case has never once been cited by the Ninth Circuit (or any other

5    federal appellate court in the country for that matter, including the First Circuit).  Unlike here, it

6    involved a situation where the court found that the presumption of fairness did <u>not</u> apply and where

7    the attorneys' fees were negotiated by the parties themselves, raising the possibility of collusiveness.

8    Further, attorney Palmer presented the very same case to this Court in support of his "minimum

9    payment" argument in the <u>Nvidia</u> matter, which the Court rejected.  <u>See</u> RFJN, Ex. A.[6]

10          **B.       There is No Claim of Collusiveness or that the Benefits are Unfair**

11          Chalmers concedes he is not making any claim of collusiveness.  "**Scheiman does not claim**

12   **there has been collusion in the negotiation of the settlement.**"   Chalmers Obj. at 2:8-17.

13   Chalmers also admits the individual compensation provided by the Settlement **"appears fair"** and

14   that the injunctive relief "serves as a **separate benefit and is adequate**."  <u>Id.</u>  Chalmers further

15   acknowledges that there is no problem with the Release, that Class Counsel is "experienced and

16   have vigorously pursued the cases" and have "undoubtedly spent the time in three different cases,

17   particularly considering Dell's vigorous defense."  <u>Id.</u> at 2:8-17, 7:7-9.  There is no claim that the

18   discovery conducted was insufficient, that the litigation was not difficult or risky or novel, or that

19   counsel expended minimal effort pursuing "tag-along" litigation in which they simply piggy-backed

20   on the efforts of others.

21          Under well-established Ninth Circuit and California law, class action settlements are to be

22   viewed as "private consensual" agreements negotiated between the parties; they typically will not

23   be disturbed unless there is evidence of fraud or overreaching.  <u>Hanlon</u>, <u>supra</u>, 150 F.3d at 1027;

24   <u>Seagate</u>, <u>supra</u>, 177 Cal.App.4th at 743 (due regard must be given to what is essentially "a private

25

26          [6]Although Chalmers attempts to create a different impression, <u>In re: TJX Companies Retail</u>
     <u>Securities Breach Litigation</u>, 584 F.Supp.2d 395 (D. Mass. 2008) and <u>Parker v. Time Warner</u>
27   <u>Entertainment Co., L.P.</u>, 631 F.Supp.2d 242 (E.D. N.Y. 2009), also approved the settlements in issue
     as fair and reasonable even though those settlements did not have nearly the indicia of fairness found
28   here.

Case No. C09 01518 JW – Response to Objections to Settlement and Request for Attnys' Fees

consensual agreement between the parties"). Further, class action settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation." National Rural Telecommunications Cooperative v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004); 4 A Conte & H. Newberg, Newberg on Class Actions § 11.24 (4th ed. 2002); Seagate, supra, 177 Cal.App.4th at 743 (presumption of fairness arises where settlement is the "result of arm's-length negotiation, investigation and discovery that are sufficient to permit counsel and the court to act intelligently").

All of the "presumption" factors apply here, which Chalmers does not dispute. All of the Hanlon factors have likewise been satisfied such as the risk, complexity and likely duration of further litigation, the strength of the plaintiffs' case, the risk of maintaining class action status throughout trial, etc. See Hanlon, supra, 150 F.3d at 1026. Given the foregoing, the objections are entitled to no weight.

## C.   The Objections Have No Relevance to a Lodestar Analysis

Most striking about Chalmers' attack on the attorneys' fee request is that he studiously avoided mentioning the word "lodestar" even once in his over twelve pages of objections and declarations. The significance of this cannot be overstated given that it is clear that a lodestar analysis would not be affected by any of the "structural" issues Chalmers claims affect a percentage of benefit analysis, nor are minimal payments, cy pres awards, or claims rates even considered in connection with a lodestar analysis; only the time and effort invested in the litigation by the attorneys is. Fischel v. Equitable Life Assur. Society of U.S., 307 F.3d 997, 1006 (9th Cir. 2002); Wershba, supra, 91 Cal.App.4th at 254. Further, the lodestar is presumed reasonable, a fact Chalmers concedes here. Perdue v. Kenny A. ex rel. Winn, — U.S. —, 130 S.Ct. 1662, 1673 (2010) (strong presumption that the lodestar is reasonable). See Chalmers Obj. at 7:7-9 ("Counsel undoubtedly spent the time in three different cases, particularly considering Dell's vigorous defense.").

The recent decision in Faigman, supra, 2011 WL 672648, from this district, also shows that the "structural issues" Chalmers complains of are simply irrelevant to a lodestar analysis. The settlement there was a claims made settlement that had no cy pres or minimum payment required

1   of defendant.  Using a straight lodestar analysis, Judge Patel awarded fees of $1.2 million, a figure

2   much greater than the amount paid to class members up to that point in the claims process.

3   Likewise, the court in <u>Bellows v. NCO</u>, 2009 WL 35468, *7 (S.D. Cal.), used a lodestar analysis to

4   award attorneys' fees of $300,000 pursuant to a clear-sailing provision negotiated by the parties, an

5   amount much more than the amount of claims paid to class members.  The court held that the

6   number of claims "does not have any effect on the negotiated Settlement Agreement containing the

7   fees agreement," nor do fees have to be "proportional with the damages recovered."  Even <u>Yeagley</u>

8   <u>v. Wells Fargo & Co.</u>, 2008 WL 171083 (N.D. Cal.), cited by Chalmers, employed a lodestar

9   analysis on remand to determine the attorneys' fee award; no consideration was given to minimal

10  payments, revisions, or cy pres awards.  <u>See</u> <u>Yeagley v. Wells Fargo & Co.</u>, 2010 WL 2077013

11  (N.D.Cal.).

12        **D.    The Arguments Also Lack Merit under a Percent of Benefits Analysis**

13        Contrary to Chalmers' assertions, it is black-letter law in this Circuit that requires a

14  percentage of benefits analysis to be based upon the total amount made available to the class, not

15  the amount actually claimed.  <u>See</u> <u>Williams</u>, <u>supra</u>, 129 F.3d at 1027.  In <u>Williams</u>, the Ninth Circuit

16  reversed the trial court for abusing its discretion in basing an attorneys' fee award on how many

17  claims were made against a fund rather than on the **total value of the settlement benefits** that were

18  afforded to the class by the settlement.  The trial court used the amount of claims made to award

19  fees, rather than awarding the $1.5 million the parties had negotiated for under the clear-sailing

20  provision in issue there.  RFJN, Ex. E.

21         In reversing the trial court, the Ninth Circuit also pointed to its earlier decision in <u>Six (6)</u>

22  <u>Mexican Workers v. Arizona Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir.1990), where it held that

23  a percentage of benefits analysis is based on the "entire common fund" amount.  The court also

24  noted that the Supreme Court held in its decision in <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472,

25  480-81 (1980) that attorneys' fees are based upon the entire common fund created for the benefit

26  of the class even if "some class members make no claims against the fund so that money remains

27  in it that otherwise would be returned to the defendants."  <u>Williams</u>, <u>supra</u>, 129 F.3d at 1027.  Most

28  importantly, the court found that the agreement in issue "was negotiated at arms length."  As the

1  court stated: "Defendants had some responsibility to negotiate at the outset for a smaller settlement

2  fund if they wish to limit the fees." Id.

3      California federal courts strictly adhere to Williams. For example, in Hopson v.

4  Hanesbrands Inc., 2009 WL 928133, *11 (N.D. Cal.), the court stated that "the appropriate measure

5  of the fee amount is against the potential amount available to the class, not a lesser amount reflecting

6  the amount actually claimed by the members." In Glass, supra, 2007 WL 221862 at *16, the court

7  stated, "the Ninth Circuit has held, however, that the district court must award fees as a percentage

8  of the entire fund, or pursuant to the lodestar method, not on the basis of the amount of the fund

9  actually claimed by the class." In Hartless v. Clorox Co., — F.R.D. —, 2011 WL 197542 (S.D.

10 Cal.), the court, citing to Williams, rejected the objection that the attorneys' fee award should be

11 based on the amount of claims, finding it "without merit as that argument has been rejected."[7]

12     In contrast to the foregoing, the only California federal authority Chalmers cites for support

13 is the original Yeagley decision that was reversed by the Ninth Circuit. Yeagley, supra, 2008 WL

14 171083. Even before reversal, the decision was distinguishable as the court there characterized the

15     [7] Accord: In In re Wal-Mart Stores, Inc. Wage and Hour Litigation, 2011 WL 31266, *5 at

16 fn. 5 (N.D. Cal.), the court stated that attorneys' fees are based upon the entire amount of the
common fund even if unclaimed funds revert back to defendants. In Fernandez v. Victoria Secret

17 Stores, LLC, 2008 WL 8150856, *10 at fn. 39 (C.D. Cal.), the court held that the value of the total
benefits to the class must be used to base the percentage of benefit analysis "even if a portion of the

18 fund is not claimed." Fernandez involved a settlement in which class members were required to
make a claim for the coupon in issue and all unclaimed funds remained with the defendant with no

19 minimum payment or cy pres award required. The attorneys' fee provision was structured
identically to the one at issue here. In Browning, supra, 2007 WL 4105971, a case involving the

20 same type of clear-sailing attorneys' fee provision as here, the court used a lodestar analysis to
confirm the reasonableness of the attorneys' fees, with a cross check based on a percentage of

21 recovery comparison. Citing to Williams, supra, 129 F.3d 1026, it rejected an Objector's contention

22 that the percentage of benefits analysis should be based on the amount of claims paid, not on the
total value of the benefits provided to the class. Browning, 2007 WL 4105971 at *14, fn. 19.

23

       Other Circuits and California state courts are in accord. Masters v. Wilhelmina Model
24 Agency, Inc., 473 F.3d 423, 437 (2d Cir.2007) ("allocation of fees by percentage should therefore
be awarded on the basis of the total funds made available, whether claimed or not"); Waters v. Int'l

25 Precious Metals Corp., 190 F.3d 1291, 1297 (11th Cir.1999), cert. denied, 530 U.S. 1223 (2000)

26 (held attorneys' fees are to be awarded on total value of benefits, "regardless of the amount actually
claimed"); Seagate, supra, 177 Cal.App.4th at 744 (no minimum amount of claims needed);

27 Wershba, supra, 91 Cal.App.4th at 246-47 (no evidence needed of amount of redeemed claims);
Consumer Privacy Cases, supra, 175 Cal.App.4th at 557-58 (clear-sailing provisions routine and

28 proper).

matter as "a virtually worthless settlement of a meritless case." Id. at *1.[8]  Chalmer's out of state

decision, Sylvester, supra, 369 F.Supp.2d 34, was already presented to this Court in Nvidia and

found unpersuasive.  See RFJN, Ex. A.  Further, the Sylvester court did not even employ a lodestar

analysis for a cross-check or otherwise; plus, the parties had negotiated the fee award by themselves.

The other case Chalmers cites as the "best analysis" for his views, In re TJX Companies

Retail Sec. Breach Litig., 584 F.Supp.2d 395 (D. Mass. 2008), refused to apply the new approach

Chalmers advocates here, holding it would simply be "**unfair"** to impose a new rule on the parties

without providing prior notice to all the parties concerned before they negotiated – and the court

preliminary approved – the settlement.  Id. at 409.  Further, not only did the court not reduce any

of the attorneys' fees requested, but the court also awarded a multiplier, awarding attorneys' fees

of $6.5 million on a $3.3 million lodestar.  Id. at 408-09.

### E.    Chalmers Misstates the Claims and Notice Process

In contrast to what Chalmers asserts, class members receiving notice by publication are only

required to provide their name and address, just like all the other claimants.  As an optional matter,

these class members could provide whatever additional information they had, but this is not

required.  Chalmers also raises a frivolous issue as to how can defendants know whether a class

member had purchased a computer for personal use or not.  Although Dell's Response to the

Objections covers this issue, suffice it to say that Dell's contact list is composed from individual

buyers purchasing through its home/consumer division; the claimants themselves verify that their

use of the computer was for household purposes.[9]

---

[8] The Yeagley court did not apply Williams on the basis that "the monetary value of the
settlement is not anywhere described in the settlement agreement," whereas in Williams, the parties
had agreed on the value of the settlement and stated the value in their agreement.  The Settlement
Agreement here, however, contains the parties' estimated value for the cash portion of the potential
benefits.  See Settlement Agreement, Section II, ¶ 22.  Further, unlike in Yeagley, this Settlement
has real value, as Chalmers himself admits.

[9] Chalmers also makes a disingenuous request for discovery by asking the court to compel
class counsel to "describe" their confidential settlement negotiations.  There is no basis for obtaining
discovery here, and Chalmers' previous request for such discovery in Seagate was summarily
denied.  See Seagate, supra, 177 Cal.App.4th at 748.

III.     **THE GOLDEN OBJECTIONS LACK MERIT**

A.     **The Objections are Untimely and Lack Standing**

The objections filed in the name of Joel Golden ("the Golden/Strong Objections") were filed after the February 22, 2011 deadline and are therefore waived.  The late filing is inexcusable for a professional objector such as Howard Strong, especially given that the ostensible objector, Mr. Golden, also appears to be an attorney.  See Ex. A attached to Rothschild Decl.  No request to file a late objection was ever made.  It is basic for all parties, including objectors, that they have the burden of proving standing and must substantiate their class member status with admissible evidentiary facts.  See Feder v. Electronic Data Systems Corp., 248 Fed.Appx. 579, at *2 (5th Cir. 2007) ("unsupported assertions of class membership" do not suffice).

B.     **No Authority is Cited for The Objections**

Golden/Strong assert the same objections as Chalmers regarding minimal payments, cy pres awards, clear-sailing attorneys' fee provisions, excessive fees, reversions, etc., all of which the courts have soundly rejected, including this Court in Nvidia.  See Section II, supra; RFJN, Ex. A; Nakash Obj., Dkt. No. 297.  There is no need to repeat all of the reasons these objections lack merit except to point out the absolute dearth of supporting authority cited by these attorney Objectors.  Further, the only authority they do cite is not even an official publication of the Federal Judicial Center, but merely the view of the individual authors.[10]  The federal Manual for Complex Litigation itself is nowhere cited.  That Manual acknowledges that clear-sailing provisions are often used in class action settlements and are proper.  As the Consumer Privacy Cases court found in rejecting an objection to such an attorneys' fee provision:

> [Objector's] assertion that the practice has been "condemned" in the federal *Manual for Complex Litigation* is simply incorrect. ... Far from condemning the practice of separate agreement on fees, the Manual acknowledges such provisions, and merely requires that the total settlement amount, including fees, be used as a yardstick to measure the reasonableness of the fees. Similar fee agreements have been implicitly approved [by many other courts] (cites omitted).

Consumer Privacy Cases, supra, 175 Cal.App.4th at 553-554.

---

[10]As its states on the front cover: "While the Center regards the content as responsible and valuable, it does not reflect policy or recommendations of the Board of the Federal Judicial Center."

1    Golden/Strong also provide misleading and selective quotes from the Pocket Guide they do

2    quote.[11]  Equally troubling is attorney Strong's assertion here that attorneys' fees should be based

3    on actual amounts claimed rather than total amounts of benefits made available to the class.  Given

4    Williams and the law of the Circuit, this statement is obviously not accurate as a clear matter of law,

5    a fact Strong himself attested to in another recent filing in the Northern District.  See RFJN, Ex. B

6    (Strong represented to the court as class counsel that fees are awarded based upon the value of the

7    total settlement benefits made available to the class, not on amounts claimed as a matter of law).

8    In any event, such a claim is not even applicable to a lodestar analysis, as shown previously.  See

9    Section II(D), supra.  Significantly, nowhere in their brief do these Objectors even challenge the

10   lodestar here or the fact that the settlement and fee negotiations were done at arms-length; nor, for

11   that matter, do they challenge the presumption of fairness that applies here or the extensive showing

12   that the "Hanlon factors" have been met.

13   **C.    No Delay Is Warranted**

14   Golden/Strong claim that no attorneys' fees should be paid until after the claims period is

15   over.  Not one case is cited to support this contention, which is obviously just a repeat of their claim

16   that fees should be based  upon the amount claimed, not the amounts made available to the class,

17   a contention Strong admits is inaccurate.  See RFJN, Ex. B.  Nor is it the practice of this district to

18   delay a fairness hearing until after the claims period has run.  See also Wershba, supra, 91

19   Cal.App.4th 224 (no reason to delay fairness hearing until after redemption rates known).  Even

20   attorney Palmer disputes Strong's contention.  See Ex. H (structured settlement so fees funded upon

21   preliminary approval, and paid upon final approval).  In any event, this Court rejected this exact

22   claim in Nvidia.  See RFJN, Ex. A; Nakash Obj., Dkt. No. 297.

23   Golden/Strong also make the highly self-serving argument – again with no authority cited

24   _____

25   [11] In particular, Strong leaves out the portion that shows the passage was concerned with
settlements that have a limited pool of funds set aside from which both claims and attorneys' fees
26   must be satisfied, and where burdensome procedural obstacles existed on eligibility or the claims
process to deter claims.  None of these factors exist here nor does Strong claim they do.  Here, all
27   consumer class members residing in California and Arizona are entitled to make a claim through an
easy "check the box" claims procedure for which no documentation or physical signature is even
28   required, where monies are available to pay any eligible claim regardless of the number, and where
attorneys' fees are to be paid in addition to the settlement benefits.

1   – that if their objections are rejected, no fees should be paid while they tie up this matter on appeal.

2   They make no effort at showing any harm to the class if fees are paid according to the settlement

3   terms upon final approval, nor could there be as fees are being paid in addition to settlement benefits

4   here.  This Court rejected a similar contention to delay payment in the <u>Nvidia</u> matter.  <u>See</u> RFJN,

5   Ex. A; Nakash Obj., Dkt. No. 297.  <u>See also</u> <u>Wershba</u>, <u>supra</u>, 91 Cal.App.4th 224 (rejecting

6   argument to delay hearing); RFJN, Ex. H (Palmer endorses payment of attorneys' fees upon final

7   approval in his own settlement agreement).

8        Class Counsel have invested over $5 million in time and expenses over six years in this

9   litigation without receiving any payment whatsoever.  It would make no sense to allow a

10  professional objector like Strong to tie up fees for an additional year or two based simply upon the

11  filing of a canned brief and a few hundred dollars in appellate filing fees.  This would essentially

12  allow Strong to rewrite the agreement of the parties to aid his own self-interest.  There is no support

13  in the law for such a result, nor is this the common practice in this district.  <u>See also In re Cardinal</u>

14  <u>Health, Inc. Securities Litig.</u>, 550 F.Supp.2d 751, 754 (S.D. Ohio 2008) ("although [professional

15  objectors] contribute nothing to the class, they object to the settlement, thereby obstructing payment

16  to lead counsel or the class in the hope that lead plaintiff will pay them to go away").

17       **D.    The Unlawful Restriction Claim Is Frivolous**

18       As a last minute throwaway, Strong argues that the requirement that objectors file a written

19  notice in advance of their appearance at the final approval hearing is an "unlawful requirement"

20  warranting denial of final approval.  Significantly, however, Strong fails to cite a single authority

21  to support his position. He cites to <u>Devlin v. Scardelletti</u>, 536 U.S. 1 (2002), but that case addresses

22  the limited issue of whether an objector who appears at a final fairness hearing is required to

23  intervene in order to appeal the final approval of a settlement.  <u>Devlin</u> did not, as Strong would have

24  the Court believe, discuss any other prerequisites for objectors to appeal or to appear at the fairness

25  hearing.

26       To the contrary, courts routinely require objectors to file a written notice of their intent to

27

28

1    appear and/or object.[12]  This is a non-issue because the interests of efficiency require advance notice

2    of objections in order for both Class Counsel and defendants to respond to objections and for the

3    Court to prepare for the final fairness hearing and arrange its calendar accordingly.  Proceeding with

4    the final fairness hearing in the absence of written notice from the objectors simply delays the

5    settlement and appeal process.[13]

6           Moreover, Strong exaggerates the contents of the written notice required by the Settlement,

7    likely to compensate for his own failure to timely submit his objections.  Section III(B)(3)(a) of the

8    Settlement requires only the submission of basic information that may be completed by lay class

9    members without the aid of legal counsel:   the objector's contact information; signature;

10   identification as a class member; statement of objection and bases; copies of any documents and a

11   list of witnesses for the fairness hearing, if any; and a statement of intent to appear at the hearing,

12   if applicable.[14]

13   **IV.      THE MUNOZ AND PERLE OBJECTIONS LACK MERIT**

14          **A.      No Showing of Standing is Made**

15          This is now attorney Palmer's third appearance as counsel for an objector in this Courtroom

16   in under three months; his fourth appearance will be the week after this hearing in connection with

17   the Ebay settlement.  See RFJN, Ex. F.  Despite this professional objector status, his clients provided

18   no declaration or evidentiary showing to establish they have standing to object.  Without this

19   showing, the objections are barred as objectors have the burden of proving standing, and must

20   substantiate their class member status with admissible evidentiary facts.  See Feder, supra, 248

21

22          [12] See, e.g., Jaffe v. Morgan Stanley & Co., Inc., 2008 WL 346417, *15 (N.D. Cal.); Satchell
     v. Federal Express Corp., 2007 WL 1114010, *8 (N.D. Cal.); Rosenburg v. I.B.M., 2007 WL

23   128232, *7 (N.D. Cal.); Thieriot v. Celtic Ins. Co., 2011 WL 109636, *7 (N.D. Cal.); In re
     Wachovia Corp. Pick-a-Payment Mortgage Marketing and Sales Practice Litigation, 2010 WL

24   5559767, *6 (N.D. Cal.).

25          [13] See, e.g., Boyd v. Bechtel Corp., 485 F.Supp. 610, 616-17 (D.C. Cal. 1979) (after 70
     objectors appeared at the fairness hearing, many of whom failed to file written objections, "the Court

26   adjourned the fairness hearing to provide counsel for the objectors sufficient time to become
     acquainted with the case and to prepare their objections in an organized fashion").

27

28          [14] Strong/Golden's objection to the word "simultaneously" is misplaced. The context of the
     Settlement makes clear that the filing and serving of the objections need be performed on the same
     day, and in any event, the Notice does not even include the word "simultaneously."

1   Fed.Appx. 579 at *2 ("unsupported assertions of class membership" do not suffice).

2       **B.**    **Paying Fees in Addition to Benefits is Entirely Proper**

3         Objectors make the distorted claim that paying fees in addition to benefits is somehow bad

4   for the Class.  No authority is cited for this proposition.  Nor do they even challenge the arms-length

5   settlement and fee negotiations, which is really the end of the story.  See Lobatz v. U.S. West

6   Cellular of California, Inc., 222 F.3d 1142, 1148-49 (9th Cir. 2000) (separately paid fees proper as

7   a result of arms-length negotiations); Consumer Privacy Cases, supra, 175 Cal.App.4th at 554 (2009)

8   (such provisions are widely used and create less of a potential conflict of interest than if settlement

9   benefits and fees had to paid from a traditional common fund); Seagate, supra, 177 Cal.App.4th at

10  744 (benefit of paying fees separately in addition to settlement benefits is that the fees paid do not

11  diminish any benefits afforded to the class).

12        Most revealing, attorney Palmer employed this exact type of attorney fee provision he now

13  attacks when he was co-counsel for a class action settlement.  RFJN, Ex. H.  This claim lacks merit.

14      **C.**    **No Timesheets Are Required**

15        Objectors make an unsupported claim that six years of timesheets should be submitted here

16  yet, despite the fact that the attorneys' fee motion contained a detailed account of practically every

17  task that took place during the six years of this litigation, Objectors do not challenge even one item.[15]

18  Nor, for that matter, do they question any aspect of the lodestar showing, nor do they claim any of

19  the hours spent or the rates charged were not justified.  Attorney Palmer himself, when acting as

20  class counsel, does not submit time records for his fee requests, but follows the general practice in

21  this State and submits a declaration summarizing his time.  RFJN, Ex. G.  So, for that matter, does

22  Attorney Strong.  RFJN, Ex. C (summary declaration only).

23        There is simply no support for this claim.  See Lytle v. Carl, 382 F.3d 978, 989 (9th Cir.

24  2004) (detailed time records not required); Faigman, supra, 2011 WL 672648 (declaration

25  sufficient); Wershba, supra, 91 Cal.App.4th at 255 ("California case law permits fee awards in the

26  absence of detailed time sheets").  Further, Palmer's reliance on In re Mercury Interactive Corp.

27

28        [15] Class Counsel also put into evidence their detailed and extensive pleadings and discovery indexes showing every court filed document, motion and piece of discovery in this case.

Case No. C09 01518 JW – Response to Objections to Settlement and Request for Attnys' Fees

1   <u>Securities Litigation</u>, 618 F.3d 988 (9th Cir. 2010) is misplaced as that case does not even mention

2   time records; rather, the case was concerned with the amount of notice needed to allow class

3   members sufficient time to object to a fee petition if they desired.

4         **D.**    **<u>No Bar Exists on Mediator Declarations</u>**

5         Objectors make the unsupported assertion that this Court cannot consider the mediators'

6   declarations even though they are clearly percipient witnesses to the settlement negoiations.

7   Attorney Palmer made this identical claim in <u>Nvidia</u>, which this Court rejected.  RFJN, Ex. A.

8   Further, the Ninth Circuit in <u>Hanlon</u> ruled that such declarations can be helpful in providing

9   "independent confirmation" of arms-length dealing.  <u>See</u> <u>Hanlon</u>, <u>supra</u>, 150 F.3d at 1029; <u>Seagate</u>,

10  <u>supra</u>, 177 Cal.App.4th at 745 (mediator's declaration considered).

11        **E.**    **<u>Palmer Added No Value to the Class</u>**

12        Obviously, professional objectors are mainly after attorneys' fees, a fact Palmer does not

13  even attempt to conceal here, unlike most of his counterparts.  His "immodest" request for attorneys'

14  fees should be summarily rejected as his filing of a canned brief without any real evidentiary or legal

15  basis does not benefit the Class in any way.  <u>See</u> <u>Lobatz</u>, <u>supra</u>, 222 F.3d at 1147-48 (labeling the

16  objector a "spoiler" who challenged attorney's fees).

17                             Respectfully Submitted,

18  DATED: March 7, 2011              STRANGE & CARPENTER

19                             By:      /s/   Gretchen   Carpenter

20                                   Gretchen Carpenter
                                     Attorneys for Plaintiffs

21  DATED: March 7, 2011              RANDALL S. ROTHSCHILD, APC

22

23                             By:      /s/   Randall S. Rothschild
                                     Randall S. Rothschild

24                                   Attorneys for Plaintiffs

25

26

27

28

Case No. C09 01518 JW – Response to Objections to Settlement and Request for Attnys' Fees

**FILER'S ATTESTATION**

Pursuant to General Order No. 45, Section X(B) regarding signatures, I, Gretchen Carpenter, attest that concurrence in the filing of this document has been obtained from Randall S. Rothschild.

By:     ___/s/   Gretchen   Carpenter___
Gretchen Carpenter